IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| John Hawkins and HawkLaw, PA, ) | C/A No.:3:21-01319-JMC |
| ) | |
| Plaintiffs, ) | **PLAINTIFFS' MEMORANDUM OF** |
| ) | **LAW IN SUPPORT OF MOTION** |
| v. ) | **TO COMPEL** |
| ) | |
| The South Carolina Commission on ) | |
| Lawyer Conduct and The South Carolina ) | |
| Office of Disciplinary Counsel, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## NATURE OF CASE

Plaintiffs filed this action after the South Carolina Office of Disciplinary Counsel (hereinafter "ODC") filed "Formal Charges" against them. In the ODC's charges, it claims Plaintiffs committed "misconduct" related to various television ads they ran. ODC does not allege any misconduct except as to the contents of the television ads which are constitutionally protected speech. In its Formal Charges, ODC sought sanctions up to and including disbarment. Defendants' actions violate Plaintiffs' constitutionally protected rights under the First and Fourteenth Amendments.

## STATEMENT OF FACTS

John Hawkins is an attorney who practices law in South Carolina. Since being admitted to the South Carolina bar in 1994 he has remained in good standing. In 2002 he started his own law firm and practices under the trade name "HawkLaw."

In 2017, a competitor complained to ODC about Mr. Hawkins' television advertisements. The specific complaint claimed Mr. Hawkins violated the Rules of Professional Conduct that govern lawyer conduct (hereinafter "RPC") by using the nickname "the Hawk" and the trade name

1

"HawkLaw." ODC opened a formal investigation related to the television ads identified in the 2017 complaint and accused Mr. Hawkins of professional misconduct based solely on the contents of the 2017 ads.

In 2018, another competitor and former associate attorney at "HawkLaw" complained to ODC about different television ads. Among other complaints was that the sound of a screeching hawk and paid actors dancing while flapping their arms like a hawk would flap its wings violates the RPC. ODC opened a second formal investigation related to these television ads and accused Mr. Hawkins of professional misconduct based solely on the contents of the 2018 ads.

In 2019, a third attorney wrote to ODC to complain about other television ads. The complaint centered around paid actors making the following statements:

> Look, I'm going to give it to you straight. A lot of these attorneys don't keep it real, they are just out to get paid. But Hawk Law is considerate, compassionate, he's genuine. He understands his clients and their differences. So do not fall for the funny money guys in suits who's just talking the talk. Make the call, 843 HawkLaw;

> and

> Look, I'm going to give it you straight. A lot of these attorneys don't keep it real, they are just out to get paid. Hawk Law is considerate, compassionate, he's genuine. He understands his clients and their differences. Champion in the community defending your dignity and respect. Doing his best to turn your pain and suffering into a check. No flex. From retired Army Major to fighting Supreme Court cases. Experience you can trust. So don't fall for the funny money guys in suits who's just talking the talk. Make the call, 843 HawkLaw.

ODC opened a third formal investigation related to these television ads. It accused Mr. Hawkins of professional misconduct based solely on the contents of the 2019 ads quoted above.

ODC investigations, in and of themselves, are serious matters. Failure to cooperate in an investigation is grounds for disbarment. In this case, Mr. Hawkins received three separate letters

from ODC via certified mail indicating ODC was investigating him for professional misconduct that could result in sanctions up to and including disbarment.

The formal investigations proved to be very serious. On April 20, 2021, ODC filed Formal Charges against Mr. Hawkins based on the three investigations outlined above. See Exhibit 1. The Formal Charges against Mr. Hawkins did not allege any type of misconduct beyond the content of his television ads which is constitutionally protected speech. Moreover, the Formal Charges against Mr. Hawkins did not allege that anything in his televisions ads was untruthful or untrue. Rather, ODC sought sanctions against Mr. Hawkins up to and including disbarment based solely on truthful advertisements that ODC and competing lawyers found distasteful and objectionable. The investigations and Formal Charges were related solely to the substance and content of Mr. Hawkins' televisions. There were no allegations of misconduct beyond Constitutionally protected speech.

On May 4, 2021, Plaintiffs filed the current action before this court. The Complaint makes facial challenges to specific advertising rules found in the South Carolina Rules of Professional Conduct. In addition, the Complaint alleges that as applied by ODC and the Commission, these Defendants are violating Mr. Hawkins' First and Fourteenth Amendment rights.

In response to the lawsuit, Defendants filed an Answer denying the material allegations of Plaintiffs' Complaint. Also, in response to the pending lawsuit, and after a four (4) year investigation that culminated in Formal Charges, ODC sought to dismiss and withdraw the Formal Charges at the Commission. On August 10, 2021, ODC filed a Notice of Voluntary Dismissal and Motion to Withdraw Formal Charges and a Notice of Dismissal. The Notice of Voluntary Dismissal dismissed with prejudice the Formal Charges related to the 2017 investigation. On

August 17, 2021, the Commission issued an Order granting ODC's Motion to withdraw the other Formal Charges without prejudice.

Procedurally, the dismissal and withdrawal of the Formal Charges does not change the Constitutional issues or Constitutional analysis in this action.  This is true for multiple reasons.  First, Plaintiffs have made facial challenges to ODC's advertising rules.  Those facial challenges are unaffected by the dismissal and withdrawal of Formal Charges.  Second, withdrawal of the remaining Formal Charges was without prejudice.  Thus, ODC can refile the same charges or alter, amend, and/or modify the charges and refile them related to the same television ads at issue in this case.  While the Formal Charges have been dismissed with prejudice with regard to the 2017 investigations, the 2018 and 2019 investigations continue.  The fact that ODC has active investigations pertaining to otherwise protected speech coupled with the fact that ODC may at any time refile Formal Charges related to the same ads creates a chilling effect going forward.  This is particularly true in this case where the underlying facts are not in dispute (i.e. the ads in question were Mr. Hawkins' ads and the content of ads themselves is not in dispute).  In essence, ODC is holding the pending investigations as a sword hanging over Mr. Hawkins' head.

On July 15, 2021, Plaintiffs served Interrogatories and Requests for Production on Defendants.  Thereafter, Plaintiffs granted Defendants a 30-day extension to respond.  On September 10, 2021, Defendants responded to written discovery.  See Exhibit 2. In their responses, Defendants objected to every single RFP and every interrogatory with the exception of two interrogatories which asked for the names of witnesses and their expected testimony.  Defendants did not produce a single document in response to the RFPs.  They also did not produce a single document in their initial disclosures.

On September 13 Plaintiffs' Counsel sent a detailed consultation letter as required under the applicable court rules. See Exhibit 3. On September 20, 2021, Defense Counsel responded with a letter that repeatedly stated "[w]e stand by the objections made…" See Exhibit 4. On September 22, 2021, Defendants sent Supplemental Discovery Responses and for the first time in this litigation produced documents. See Exhibit 5. However, most of the documents Defendants produced were the same documents Plaintiffs produced to ODC during its initial investigation. On September 23 Defendants supplemented their document production. See Exhibit 6. However, the only additional documents provided were the same documents Plaintiffs produced to ODC during its investigation.

## ARGUMENT

## LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Information within the scope of discovery "need not be admissible in evidence to be discoverable." *Fed. R. Civ. P. 26(b)(1)*. "A discovery request is relevant 'if there is any possibility that the information sought might be relevant to the subject matter of [the] action.'" *Avant v. Ahern Rentals, Inc.*, 2021 U.S. Dist. LEXIS 86137 * 3 (Citing and quoting *Wilson v. Decibels of Or., Inc.*, Case No.: 1:16-cv-00855-CL, 2017 U.S. Dist. LEXIX 71080, 2017 WL 1943955 at *5). "Relevance is not, on its own, a high bar' (*Va. Dep't of Corr v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019), and 'is construed very liberally. *Nat'l Credit Union Admin. V. First Union Capital Markets Corp.*, 189 F. R. D. 158 161 (D. Md. 1999).'" *Id.*

"While the party seeking discovery has the burden to establish its relevancy and proportionality, the party objecting has the burden of showing the discovery should not be allowed

5

and doing so through 'clarifying, explaining, and supporting its objections with competent evidence.'" *Wilson v. Decibels of Or., Inc.*, Case No.: 1:16-cv-00855-CL, 2017 U.S. Dist. LEXIX 71080, 2017 WL 1943955 at *2 (quoting *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F. R. D. 481, 485 (N. D. Cal. 2012)(internal citations omitted). "[T]he party or person resisting discovery, not the party moving to compel discovery bears the burden of persuasion." *Oppenheimer v. Episcopal Communicators, Inc.*, No. 1:19-CV-00282-MR, 2020 U.S. Dist. LEXIS 146398, 2020 WL 4732238, at 2 (W.D.N.C. August 14, 2020). "Thus, once the moving party has made 'a prima facie showing of discoverability,' the resisting party has the burden of showing either: (1) that the discovery sought is not relevant within the meaning of Rule 26(b)(1); or (2) that the discovery sought 'is of such marginal relevance that the potential hard… would outweigh the ordinary presumption of broad discovery.'" *Gilmore v. Jones*, No. 3:18-CV-00017, 2021 U.S. Dist. LEXIS 4382, 2021 WL 68684, at *3-4 (W.D. Va. Jan. 8, 2021)(quoting *Eramo v. Rollin Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016).

## DEFENDANTS' GENERAL OBJECTIONS AND DILATORY DISCOVERY TACTICS

Defendants have engaged in dilatory discovery practices which has hampered Plaintiffs' prosecution of this case. In initial disclosures, Defendants did not produce a single document. The only witness they identified was Michael Virzi. Mr. Virzi represents Mr. Hawkins related to the underlying ODC/Commission matter.

After a 30-day extension to respond to written discovery, Defendants objected to every RFP and objected to all but two interrogatories. Those two interrogatories asked for names of witnesses and a summation of their expected testimony. Defendants answered those interrogatories by referring back to their initial disclosures which named only Mr. Virzi as a

witness. Defendants have not signed the interrogatory responses as they are required to do under the applicable Rules of Civil Procedure.

Defendants have produced little documentation related to the claims and defenses in this matter. Of the 2289 pages Defendants produced, 1,797 pages had already been produced in the underlying ODC/Commission case. The remaining 492 pages of original documentation relevant to this case had little empirical evidence. Case law in lawyer advertising First Amendment cases makes clear that empirical evidence is important and the outcomes of these cases often depend on empirical evidence. See generally *Ibanez v. Fla. Dep't of Bus. & Prof'l Regulation*, 512 U.S. 136, 114 S. Ct. 2084, 129 L. Ed. 118 (1994); *Peel v. Attorney Registration and Disciplinary Commission of Illinois*, 496 U.S. 91, 110 S. Ct. 2281, 110 L. Ed. 83 (1990); *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 105 S. Ct. 2265, 85 L. Ed. 652 (1985); *Public Citizen, Inc. v. La. Atty. Disciplinary Bd.*, 632 F. 3d 212 (5th Cir. 2011) and *Alexander v. Cahill*, 598 F. 3d 79 (2nd Cir. 2010).

Defendants cannot be compelled to produce documentation they do not have or cannot reasonably obtain. However, the time for document production is past due. Respectfully, the court should not allow Defendants to hide behind a series of spurious, boilerplate objections and only produce documents when it suits them. Therefore, Plaintiffs request an order(s) that compels Defendants to answer the interrogatories asked and to timely produce requested documents or forfeit their right to later supplement their discovery responses with documentation and responses that could and should have already been provided and produced.

7

## **INTERROGATORIES**

Interrogatory 1.

Commercial free speech cases are governed by the four-part standard first articulated in *Central Hudson v. Pub. Serv. Comm.*, 447 U.S. 557, 566, 100 S. Ct. 2343, 2351, 65 L. Ed. 341, 351 (1980).  The second factor articulated by the Court in *Central Hudson* is "whether the asserted governmental interest is substantial…"  "[T]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it."  *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 71 n. 20, 103 S. Ct. 2875, 77 L. Ed. 2d 469 (1983).

Interrogatory No. 1 is directly relevant to the legal standards noted above. It asks Defendants to "State with particularity each and every governmental interest which you claim justifies [Rules 7.1 and 7.2] …"  It is noteworthy that Plaintiffs' Complaint makes facial challenges to these Rules as well as as-applied challenges.

While Defendants have supplemented their response to "see Comment 4 to Rule 7.2" their objection should be overruled by the Court.  Defendants should also be compelled to either fully answer the interrogatory or be limited to the content of Comment 4 to Rule 7.2 under the second factor in *Central Hudson* (i.e. "whether the asserted governmental interest is substantial…").

Interrogatory 2.

Under <u>Central Hudson</u> the court must "determine whether the regulation directly advances the governmental interest asserted…"  The second interrogatory is directly related to this factor. The court should compel Defendants to answer and fully respond to this interrogatory.

Interrogatory 3.

This interrogatory relates to Rule 7.1(e).  Plaintiffs' Complaint makes facial challenges to Rule 7.1(e).  In *Alexander v. Cahill*, 598 F. 3d 79 (2nd Cir. 2010) the Second Circuit held a near

8

identical rule unconstitutional because there was no empirical evidence such as studies, focus groups or research showing that attorney nicknames were an actual problem.  In *Public Citizen, Inc. v. La. Atty. Disciplinary Bd.*, 632 F. 3d 212 (5th Cir. 2011), the Fifth Circuit reached the opposite conclusion about a rule that also mirrors Rule 7.1(e).  The Fifth Circuit distinguished *Alexander* because it found the Louisiana Attorney Disciplinary Board had produced actual empirical evidence showing that attorney nicknames were an actual problem and misled the general public in Louisiana.

While Defendants supplemented their response to identify particular documents, their objections should be overruled.  Defendants should either be compelled to fully answer the interrogatory or be limited going forward to the amended the response they gave.

Interrogatory 4.

This interrogatory relates to the second factor articulated by the Court in *Central Hudson* (i.e. "whether the asserted governmental interest is substantial…").  Defendants objected but supplemented their response "to refer to the First Supplemental/Amended Response to Interrogatory No. 1."  The court should overrule the objection and compel Defendants to fully answer or be limited going forward to the supplemental response they have given.

Interrogatory 5.

Interrogatory 5 is similar to interrogatory 3 discussed above.  In essence, the interrogatory asks for empirical evidence Defendants may have that supports adoption, implementation and enforcement of Rule 7.2(a), RPC.  As with interrogatory 3, Defendants' objections should be overruled.  Alternatively, Defendants should be compelled to fully answer the interrogatory or be limited going forward to the amended response they gave and the documents they identified and produced.

Interrogatory 6.

Defendants' Formal Charges against Mr. Hawkins claim that some of his ads are not "predominately informational" in violation of Rule 7.2(a), RPC. Interrogatory 6 asks "what specific criteria, standard or test did Defendants utilize to make these assertions." Defendants objected and stated that they "refer Plaintiffs to the Notice of Filing Formal Charges…" As the court can see, the Formal Charges do not answer this interrogatory. The objection should be overruled and Defendants should be compelled to specifically answer the interrogatory.

Interrogatory 7.

Defendants' Formal Charges against Mr. Hawkins claim that his ads created unjustified expectations about the results he could achieve for clients. Interrogatory 6 asks "what specific criteria, standard or test … Defendants utilized to make this determination…" Defendants objected and said "refer Plaintiffs to the Notice of Filing Formal Charges…" However, the Formal Charges do not answer the interrogatory. Defendants' objection should be overruled and they should be compelled to fully answer the interrogatory.

Interrogatory 8.

Defendants' Formal Charges against Mr. Hawkins and the now pending investigations, relate in part to two ads he ran in 2019. The content of those ads is quoted above at p. 2. ODC claims those ads violated Rule 7.1(c), RPC by comparing his "services with other lawyers' services…" Interrogatory 8 is directly related to the Formal Charges and pending investigation because it asks Defendants to "identify each individual lawyer or law firm you claim Plaintiffs compared themselves to and/or types or groups of lawyers Plaintiffs compared themselves to." Defendants' objection that the "Formal Charges… speak for themselves" is nonresponsive. The

Formal Charges do not answer the interrogatory. Thus, the court should compel Defendants' response.

Interrogatory 9.

Interrogatory 9 is a simple, straight forward interrogatory. "Do Defendants maintain that **any** of Plaintiffs' ads which [they] reviewed which utilize the terms "Hawk Law" or "HawkLaw" violate **any** Rules of Professional Conduct?" Emphasis added. Defendants object to this interrogatory on the ground they dismissed with prejudice the 2017 complaint and therefore they do not have to answer the interrogatory. This objection is without merit because the interrogatory asks whether "**any** of Plaintiffs ads… violate **any** Rules of Professional Conduct." Emphasis added. The interrogatory is directly relevant to Plaintiffs claims in this case. Simply put, Defendants should state unequivocally whether they contend his ads violate the Rules of Professional Conduct and if so which ads and which rules. Defendants have been investigating Mr. Hawkins for four (4) years. They have had ample time to determine whether they believe his ads violate the Rules of Professional and if so, what specific rules. As it stands, ODC is using its considerable power and threat of disbarment as a sword hanging over Ms. Hawkins' head. The court should overrule Defendants' objection and compel a full and complete response.

Interrogatories 10 and 11.

While Defendants did not object to these interrogatories, their answers are incomplete and evasive. In essence, the interrogatories ask for the names of witnesses and a summary of the expected testimony from witnesses. Defendants' responses referred to their initial disclosures. The only witness identified in Defendants' initial disclosures is Michael Virzi. Mr. Virzi represents Mr. Hawkins in the underlying investigations. This case has been pending for over five

(5) months.  Defendants have had ample time to identify witnesses.  They should be compelled to answer these interrogatories and provide the requested information.

## **REQUEST FOR PRODUCTION**

RFP 1.

RFP 1 is a standard RFP and asks Defendants to "Produce copies of any and all documents utilized in answering Plaintiffs' interrogatories or identified in responding to Plaintiffs' interrogatories."  Defendants' boilerplate objections are improper and should be overruled by the Court.

Plaintiffs are not seeking Defense counsel's notes they may have used in preparing discovery responses.  Plaintiffs are not seeking communications between Defense Counsel and Defendants.  However, if other non-privileged documents were utilized or identified those should be produced or Defendants should forfeit their right to later produce documents that could and should have already been produced.  Plaintiffs request that the court issue an order to that effect.

RFPs 2 & 3.

These RFPs pertain to a "secret settlement" between ODC and another law firm that arose out of another First Amendment attorney advertising case in this court, Kirkendall Dwyer, LLP v. ODC.  To understand why the "secret settlement" is relevant in this action and why it should be compelled, it is helpful and useful to understand who Kirkendall Dwyer is and the history of the "Law Tigers" brand in South Carolina.

Kirkendall Dwyer is a national personal injury law firm operating under the trade name "Law Tigers."  It uses various images, depictions and recordings of tigers in its advertising materials.  According to its website, www.lawtigers.com,  it maintains offices in 49 states but not South Carolina.  According to the Amended Complaint in Kirkendall Dwyer, LLP v. ODC, Law

Tigers sought to expand and open an office in South Carolina. In 2019, it hired a South Carolina attorney, Madelyn Dukes, and entered an employment contract with her. However, when Ms. Dukes learned that ODC and the Commission had effectively banned the use of the "Law Tigers" brand and had even sanctioned a lawyer for using the "Law Tigers" brand, she backed out of the contract with Kirkendall Dwyer.

      The reason for Ms. Dukes' decision is made clear by a 2012 South Carolina Supreme Court Order that arose out of another ODC/Commission disciplinary proceedings. In that Order the South Carolina Supreme Court sanctioned another South Carolina lawyer for using the "Law Tigers" brand and using depictions, images and recordings of tigers in his ads. While that South Carolina Supreme Court opinion is not a published opinion, the holdings are widely known among members of the South Carolina bar for two reasons. First, staff attorneys at ODC teach an ethics advertising CLE commonly referred to as "advertising school." South Carolina attorneys who run afoul of South Carolina's advertising rules (RPC, Rules 7.1 & 7.2) are sometimes required to attend this CLE as part of a sanction or punishment stemming from an ODC/Commission proceeding. In "advertising school" ODC lawyers teach the holdings of the 2012 Supreme Court Order without identifying the lawyer who was sanctioned. In essence they teach that it is a violation of the Rules of Professional Conduct to use "Law Tigers" or various images and recordings of tigers in advertising materials. The second reason the holding of the 2012 case is widely known is because the lawyer who was the subject of the Order and sanctioned for using the Law Tigers brand made that fact widely known to other members of the bar. His intention in doing so was probably because he had invested heavily in the "Law Tigers" brand and did not want another lawyer horning in on the trade name and brand he had created for himself. Regardless of his reasons, the

holdings from 2012 Supreme Court Order are well known to members of the bar well versed in legal ethics.  In fact, the holdings of that Order are regularly taught by ODC lawyers in CLEs.

Perhaps most interesting is the fact that Kirkendall Dwyer is now advertising in South Carolina using the Law Tigers trade name and using images and pictures of a tiger.  See Exhibit 7.  In initial disclosures, Plaintiffs produced copies of what amounted to a rolling billboard featuring the "Law Tigers" logo and images of a tiger.  As the court can see, the rolling billboard was a car wrap on a large van/camper.  That van/camper has a South Carolina license tag and is regularly parked and garaged in Northeast Columbia.  The photographs were taken in 2021.

With this background in mind, it is easy to see why the "secret settlement" and related documents from Kirkendall Dwyer, LLP v. ODC meet the "liberal" standard of relevance for purposes of discovery.  More specifically, if ODC has reached an agreement that allows Kirkendall Dwyer to use its law tiger brand that includes pictures, depictions and recordings of tigers, it cannot constitutionally investigate and prosecute John Hawkins for using pictures, depictions and recordings of hawks in his advertising.  Afterall, a 400+ pound animal that is known to maul, attack, and eat people implies a greater ability "to obtain results" than does a three-pound bird that eats mice, squirrel, and other small animals.  Such selective enforcement would be relevant to proving parts of Plaintiffs' complaint that ODC's rules are vague and ambiguous. ODC is enforcing those rules in an uneven, unequal, arbitrary and capricious manner rendering enforcement unconstitutional under the First and Fourteenth Amendment.  At a bare minimum, for purposes of discovery, Plaintiffs should be afforded the opportunity to see and review the "secret settlement" so they can flush out the factual background that is relevant to their case.

Defense Counsel has no plausible argument as to why the "secret settlement" and related documents should not be produced.  In their discovery consultations with Plaintiffs' Counsel,

Defense Counsel has suggested that because it dismissed with prejudice the 2017 Formal Charges related to John Hawkins' use of the nickname "The Hawk" and "HawkLaw" that ends the inquiry. As an initial matter, it is not a coincidence that after a four year long investigation that culminated in Formal Charges, ODC only sought to dismiss the Formal Charges after Plaintiffs served discovery. That obvious point aside, Defendants' argument is shallow and weak because ODC has prosecuted John Hawkins and continues its investigation based on more than just the nickname "The Hawk" and the trade name "HawkLaw." It has also prosecuted him and is currently investigating him for ads that utilize what ODC calls a "Hawk Law Screech" and paid actors who flap their arms like a hawk would flap its wings (what ODC describes as "dances in celebration"). It is not just the names "Law Tigers" or "The Hawk" or "HawkLaw" as Defense Counsel suggests. It is also the depiction of tigers through pictures and recordings and the depiction of hawks through screeches and flapping wings.

Defense Counsel's position is illogical and counterintuitive for another reason: Lawyers and attorneys who advertise are entitled to know what the rules are and how those rules will be enforced by ODC. The State of South Carolina posts speed limits, stop signs, and traffic lights so motorists know how fast they can travel and when they must stop. Lawyers and attorneys who advertise should be afforded the same transparency with regard to the rules of the road for advertising. The "secret settlement" ODC, the Commission, and its Counsel seek to hide from the Plaintiffs likely sets forth at least some of the rules of the road in attorney advertising.

Defendants attempts to hide the secret settlement from Kirkendall Dwyer, LLP v. ODC is contrary to the South Carolina Constitution. In relevant part, Article I, § 9 of the South Carolina Constitution provides: "All courts **shall** be public…" Emphasis added. ODC and the Commission are part of the South Carolina court system, specifically the South Carolina Supreme Court. The

South Carolina Supreme Court has generally frowned on secret settlements and a lack of judicial transparency.  See generally, <u>Rule 41.1, South Carolina Rules of Civil Procedure</u>.  For purposes of discovery, Defendants should be compelled to be transparent and produce the "secret settlement" and related documents which are directly relevant to this action.

<u>RFP 4.</u>

The RFP asks for complaints made to ODC about Mr. Hawkins' ads.  As outlined above, all three investigations stemmed from complaints made by other lawyers, not members of the general public.  However, in its Formal Charges and through its investigations, ODC has alleged that some of Mr. Hawkins' ads could be misleading to members of the general public.  Under <u>Central Hudson</u> the government may be able to regulate and even ban commercial speech that is misleading.  The requested documents are directly related to this.  If Defendants have actual consumer complaints showing members of the public are actually misled by Mr. Hawkins' ads, they should be compelled to produce those documents.  If they do not have such evidence, they should be compelled to respond to the RFP that they do not have such complaints and that the only complaints they have are from other lawyers, two of which are competing personal injury lawyers.  One of the competing lawyers is a disgruntled former employee of HawkLaw who Mr. Hawkins terminated.

<u>RFPs 5, 6 & 7.</u>

Like RFP 4, these RFPs seek evidence ODC may have that Mr. Hawkins ads are false or misleading.  Under <u>Central Hudson</u> the government may prohibit false or untrue commercial speech.  These RFPs seek evidence Defendants have that Mr. Hawkins' ads are in fact false and misleading.  To date, Defendants have not produced any evidence that Mr. Hawkins' ads are false or misleading, beyond their own subjective opinions.  Defendants should be compelled to respond

and produce such documentation and if they have no documentation supporting their opinions, they should be compelled to affirmatively state that as opposed to offering boilerplate objections.

RFPs 9 through 19.

ODC has made several specific accusations against Mr. Hawkins. These accusations are found in the Formal Charges it filed against him but are also related to its pending investigations. These RFPs request documents which ODC claims supports its accusations of misconduct. For example, if ODC has specific information that Mr. Hawkins' ads are false, misleading, etc. it needs to produce that information or disclose that it has no specific information beyond its own subjective opinions. See generally *Central Hudson*. Subsequent case law related to attorney advertising under the *Central Hudson* framework makes clear that empirical evidence is important in the court's First Amendment analysis. See generally *Ibanez v. Fla. Dep't of Bus. & Prof'l Regulation*, 512 U.S. 136, 114 S. Ct. 2084, 129 L. Ed. 118 (1994); *Peel v. Attorney Registration and Disciplinary Commission of Illinois*, 496 U.S. 91, 110 S. Ct. 2281, 110 L. Ed. 83 (1990); *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 105 S. Ct. 2265, 85 L. Ed. 652 (1985); *Public Citizen, Inc. v. La. Atty. Disciplinary Bd.*, 632 F. 3d 212 (5th Cir. 2011) and *Alexander v. Cahill*, 598 F. 3d 79 (2nd Cir. 2010).

To be clear, Defendants have not produced a single page responsive to these RFPs. Of the 2289 pages of documents produced, 1,797 are simply copies of ODC's files which Plaintiffs already had. Of the other 492 pages, nothing is specific to these RFPs. Defendants cannot be compelled to produce what does not exist or what they do not have or cannot reasonably obtain. However, if Defendants do not have documents responsive to these RFPs, they should be compelled to state that fact in response to the RFPs as opposed to hiding behind meritless, boilerplate objections.

17

## **CONCLUSION**

For the foregoing reasons, Plaintiffs seek an order(s) from the court compelling Defendants to respond to Interrogatories 1-11 and RFPs 1-19. Plaintiffs also request that the court tax Defendants with costs and attorney's fees related to this discovery motion.

Respectfully submitted,

s/ Robert D. Dodson
Robert D. Dodson
Federal I.D. Number 7249
Law Offices of Robert Dodson, P.A.
1722 Main Street, Suite 200
Columbia, SC  29201
Telephone (803) 252-2600
Facsimile (803) 310-2545
Email: rdodson@rdodsonlaw.com

Columbia, South Carolina
September 28, 2021