IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| John Hawkins and HawkLaw, PA, | ) | C/A No.:3:21-01319-JMC |
| | ) | |
| Plaintiffs, | ) | **PLAINTIFFS' MEMORANDUM OF** |
| | ) | **LAW IN OPPOSITION TO** |
| v. | ) | **DEFENDANTS' MOTION TO DISMISS** |
| | ) | |
| The South Carolina Commission on | ) | |
| Lawyer Conduct and The South Carolina | ) | |
| Office of Disciplinary Counsel, | ) | |
| | ) | |
| Defendants. | ) | |

## NATURE OF CASE

Plaintiffs filed this action pursuant to 42 U.S.C. § 1983 making facial and as applied challenges based on the First and Fourteenth Amendment. More specifically, the Complaint alleges Rules 7.1(c), 7.1(e) and 7.2(a) of the South Carolina Rules of Professional Conduct (hereinafter "RPC") are facially unconstitutional. The Complaint also makes as applied challenges based on Defendants' conduct dating back to 2014 and continuing.

## STATEMENT OF FACTS

John Hawkins is an attorney who practices law in South Carolina. Exhibit 1.[1] Since being admitted to the South Carolina Bar in 1994, he has remained in good standing. Exhibit 1. In 2002 he started his own law firm and now practices under the trade name "HawkLaw." Exhibit 1. Hawklaw, PA is a corporation organized and existing under the laws of South Carolina. Exhibits 1 & 2.

---

[1] The submission of exhibits and affidavits in response to a 12(b)(1) motion to dismiss are proper and do not convert the motion to a summary judgment motion. "The Court may also consider additional particularized allegations of fact submitted by affidavit or exhibit." *Allen, Allen, Allen & Allen v. Williams*, 254 F. Supp. 614 (E.D. Va. 2003) citing *Warth v. Seldin*, 422 U.S. 490, 501, 95. S. Ct. 2197, 45 L.E.2d 343 (1975).

In 2014 Defendant, The South Carolina Office of Disciplinary Counsel (hereinafter "ODC"), received an anonymous complaint alleging that some of Plaintiffs' advertisements violated the RPC.  As a result of the anonymous complaint, ODC opened a formal investigation. Exhibit 3.  Among other things, ODC claimed Plaintiffs' use of the phrase "expect more" in its advertising violated Rule 7.1(c), RPC.  Exhibit 3.  Plaintiffs' Complaint makes facial challenges to Rule 7.1(c) and as applied challenges to Defendants' enforcement related to the phrase "expect more."

The ODC attorney primarily responsible for the 2014 investigation was Kelly Arnold. Exhibit 3.  John Hawkins was represented by Michael Virzi, a professor at the University of South Carolina School of Law and licensed attorney with substantial experience in attorney disciplinary matters.  Exhibit 4.  During the course of ODC's investigation, Ms. Arnold indicated to Mr. Virzi that since "hawk" was part of Mr. Hawkins' legal name ODC would not prosecute him for advertising related to that term or HawkLaw.  Exhibit 4.

The 2014 investigation was extensive and exhausting.  Exhibit 4.  Despite the fact that the anonymous complaint that started the investigation was limited to a handful of ads, ODC required Plaintiffs to produce each and every ad they had run for the last two years.  Exhibit 2. They also demanded they produce ads Plaintiffs had produced but not aired.  Exhibit 4.  Ms. Arnold indicated to Mr. Virzi that if Mr. Hawkins did not comply with the request, ODC would not seek more serious sanctions against Plaintiffs.  Exhibit 4.  To avoid such sanctions and to avoid the cost of litigation associated with defending the matter, Plaintiffs complied.  Exhibit 4.

In 2015, ODC concluded its investigation by issuing a "letter of caution."  Exhibit 5.[2] Under the Rules for Lawyer Disciplinary Enforcement found in Rule 413 to the South Carolina

---

[2]    Plaintiffs and Mr. Virzi have searched their files and cannot find the actual "letter of caution."  Exhibit 5 is the letter offering the letter of caution as opposed to other sanctions up to and including disbarment.  Plaintiffs

Appellate Court Rules, ODC may issue a letter of caution without filing Formal Charges before the Commission on Lawyer Conduct (hereinafter "Commission").  When a letter of caution is issued, it concludes a matter.  Thus, the 2015 letter of caution concluded the 2014 investigation.  Since that time, ODC has taken no other action related to the 2014 anonymous complaint.  Exhibit 1.

A letter of caution is just that:  A letter that cautions attorneys against future conduct that ODC claims violates the RPC.  In this case, the letter of caution warned Plaintiffs against future use of the phrase "expect more" as a violation of Rule 7.1(c), RPC.  Plaintiffs have not used the phrase "expect more" in advertising since 2015.  Exhibit 1.  As noted above, Plaintiffs' Complaint makes facial challenges to Rule 7.1(c) (among other rules) and as applied challenges related to the phrase "expect more."

Despite what Kelly Arnold told Michael Virzi in 2015 about not prosecuting Plaintiffs for use of the "hawk" and "HawkLaw" in advertising, Defendants did just that.  In 2017, a competitor complained to ODC about Plaintiffs' television advertisements.  The specific complaint claimed Plaintiffs violated the RPC by using the nickname "the Hawk" and the trade name "HawkLaw."  ODC opened a formal investigation related to the television ads identified in the 2017 complaint and accused Mr. Hawkins of professional misconduct based solely on the contents of the 2017 ads.  Exhibit 13.

In 2018, another competitor and former associate attorney at "HawkLaw" complained to ODC about different television ads.  Among other complaints, ODC claimed the sound of a screeching hawk and paid actors dancing while flapping their arms like a hawk would flap its wings violates the RPC.  Exhibit 13.  ODC opened a second formal investigation related to these

---

believe Defendants have actual the "letter of caution" which should they have already been produced in discovery. Plaintiffs do not object to the letter of caution being filed with this court as an exhibit.

television ads and accused Mr. Hawkins of professional misconduct based solely on the contents of the 2018 ads.  Exhibit 13.

In 2019, a third attorney wrote to ODC to complain about other television ads.  The complaint centered around paid actors making the following statements:

> Look, I'm going to give it to you straight.  A lot of these attorneys don't keep it real, they are just out to get paid.  But Hawk Law is considerate, compassionate, he's genuine.  He understands his clients and their differences.  So do not fall for the funny money guys in suits who's just talking the talk.  Make the call, 843 HawkLaw;

and

> Look, I'm going to give it you straight.  A lot of these attorneys don't keep it real, they are just out to get paid.  Hawk Law is considerate, compassionate, he's genuine.  He understands his clients and their differences.  Champion in the community defending your dignity and respect.  Doing his best to turn your pain and suffering into a check.  No flex.  From retired Army Major to fighting Supreme Court cases.  Experience you can trust.  So don't fall for the funny money guys in suits who's just talking the talk.  Make the call, 843 HawkLaw.

ODC opened a third formal investigation related to these television ads.  It accused Mr. Hawkins of professional misconduct based solely on the contents of the 2019 ads quoted above.  Exhibit 13.

ODC investigations, in and of themselves, are serious matters.  Failure to cooperate in an investigation is grounds for disbarment.  In this case, Mr. Hawkins received four separate letters from ODC via certified mail indicating ODC was investigating him for professional misconduct that could result in sanctions up to and including disbarment.  Exhibit 1.

The formal investigations proved to be very serious.  On April 20, 2021, ODC filed Formal Charges against Mr. Hawkins based on the 2017, 2018 and 2019 investigations outlined above.  Exhibit 13.  The Formal Charges against Mr. Hawkins did not allege any type of misconduct beyond the content of his ads which is constitutionally protected speech.  Moreover,

the Formal Charges against Mr. Hawkins did not allege that anything in his ads was untruthful or untrue. Rather, ODC sought sanctions against Mr. Hawkins up to and including disbarment based solely on truthful advertisements that ODC and competing lawyers found distasteful and objectionable. The investigations and Formal Charges were related solely to the substance and content of Mr. Hawkins' television ads. There were no allegations of misconduct beyond Constitutionally protected speech.

On May 4, 2021, Plaintiffs filed the current action before this court. The Complaint makes facial challenges to specific advertising rules found in the South Carolina Rules of Professional Conduct, specifically to Rules 7.1(c), 7.1(e) and 7.2(a). In addition, the Complaint alleges that as applied by ODC and the Commission, these Defendants are violating Mr. Hawkins' First and Fourteenth Amendment rights.

After filing the present action, Plaintiffs' Counsel emailed opposing counsel regarding his intension to seek a temporary restraining order and preliminary injunction. Exhibit 6. The parties agreed to stay the underlying ODC/Commission action pending resolution of the issues in this case. Exhibit 7.

After Answering Plaintiffs' Complaint, Defense Counsel contacted Plaintiffs' Counsel about the possibility of settlement. Toward that end, Plaintiffs' Counsel sent a detailed email to Defense Counsel with a settlement offer. Defense counsel did not respond until after filing the pending motion.[3]

On June 22, 2021, this court issued a scheduling order. In compliance with the scheduling order, counsel held a Rule 26(f) conference. Among other things discussed at the

---

[3] This email is not being made an exhibit to this motion because it is a 408 communication. Reference is made to this communication because Defendants' Memorandum makes multiple references to settlement discussions (i.e. "efforts to reach an agreement," "moving toward a resolution" and "Defendants have demonstrated only good faith and have attempted to work toward a resolution short of a hearing…"). Defendants' Memorandum at pp. 4 & 11.

26(f) were the substance and content of Defendants' Initial Disclosures.  More specifically, Plaintiffs' Counsel indicated that Defendants should produce a "secret settlement" and related documents from the Law Tigers case, _Kirkendall Dwyer, LLP v. ODC_.  Exhibit 8.  Plaintiffs' Counsel followed up in separate emails of July 13 and August 22.  Exhibit 8.  When Defendants did not produce these documents in initial disclosure, Plaintiffs requested them in discovery.  See generally, Plaintiffs' pending Motion to Compel, supporting Memorandum of Law and exhibits thereto.

In August 2021, after a four-year investigation that culminated in Formal Charges, Defendants sought to dismiss and withdraw all the pending Formal Charges against John Hawkins.  On August 10, 2021, ODC filed a Notice of Voluntary Dismissal and Motion to Withdraw Formal Charges and a Notice of Dismissal.  Exhibit 9.  The Notice of Voluntary Dismissal dismissed with prejudice the Formal Charges related to the 2017 investigation.  Exhibit 9.  On August 17, 2021, the Commission issued an Order granting ODC's Motion to withdraw the other Formal Charges without prejudice.  Exhibit 10.

The sequence, timing, and pending discovery requests for the Law Tigers' "secret settlement" leaves little doubt about Defendants' true motives behind the dismissal with prejudice:  Use the dismissal with prejudice as a justification for withholding the Law Tigers "secret settlement."  Nonetheless, and in a continued effort to try and resolve all the issues between the parties, Plaintiffs' Counsel wrote to Defense proposing a "formal mediation" or "sit down meeting with the decision makers and their counsel."  Exhibit 11.  Defendants would not agree to sit down meeting or mediation.

One day before Defendants' response to Plaintiffs' Motion to Compel was due, Defendants filed the pending Motion to Dismiss.  That same day, Defendants also refiled Formal

Charges against John Hawkins related to the 2018 and 2019 investigations.  Exhibit 12.  The re-filed Formal Charges are exactly the same as the original charges from April, 2021 except that allegations related to the 2017 investigation were omitted since they were dismissed with prejudice.  Exhibits 12 & 13.  The timing and substance of Defendants' refiled Formal Charges coupled with the timing and substance Defendants' Motion to Dismiss and supporting Memorandum leave no doubt about Defendants true intentions: obstruct discovery, hide the Law Tigers "secret settlement" and force John Hawkins to submit to discipline for constitutionally protected speech.

## **ARGUMENT**

I.      **The _Younger_ abstention doctrine does not apply because there is not an "on going state judicial proceeding" related to most of the claims in Plaintiffs' Complaint.**

The _Younger_ exception to jurisdiction does not apply because there is no "on going state judicial proceeding" related to most of the claims in Plaintiffs' Complaint.  _Nivens v. Gilchrist_, 444 F.3d 237, 241 (4th Cir. 2006).  Plaintiff, HawkLaw, PA, is not and never has been charged or investigated in any underlying ODC/Commission matter.  Because HawkLaw, PA is not and never has been a party to the ODC/Commission charges there is no "on going state judicial proceeding" that would permit application of the _Younger_ abstention doctrine to HawkLaw, PA.

Plaintiffs' facial challenges to Rule 7.1(e) also fall outside an "on going state judicial proceeding" because Defendants are not currently pursuing any charges or investigations of Plaintiffs based on an alleged violation Rule 7.1(e).  The only charges based on Rule 7.1(e) were dismissed with prejudice.  Exhibit 10.

In addition, Plaintiffs' as applied challenges related to the ads containing the phrase "expect more" are not part of ODC's Formal Charges. Defendants issued a "letter of caution" in 2015 which closed out any proceedings. Thus, the as applied challenges to the "expect more" phrase fall outside the _Younger_ abstention doctrine because there is no "on going state judicial proceeding."

As explained more fully below, since none of these matters involve an "on going state judicial proceeding" the _Younger_ exception to jurisdiction is not applicable to any of these claims.

**A. The _Younger_ abstention exception to jurisdiction.**

"[F]ederal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not 'refuse to decide a case in deference to the States." _Sprint Commc'ns, Inc. v. Jacobs_, 134 S. Ct. 584, 588, L. Ed. 2d 505 (2013)(quoting _New Orleans Public Service, Inc. v. Council of City of New Orleans_, 491 U.S. 350, 368, 109 S. Ct. 2566, 105 L.E.2d 298 (1989). "'[O]nly exceptional circumstances,' we reaffirmed, 'justify a federal court's refusal to decide a case in deference to the States." _Sprint Commc'ns, Inc._, 134 S. Ct. at 591 quoting _NOPSI_, 491 at 368.

One of those exceptional circumstances was identified by the Court in _Younger v. Harris_, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). _Younger_ "precluded federal intrusion into ongoing state criminal prosecution." _Sprint Commc'ns, Inc._, 134 S. Ct. at 591. In _Middlesex County Ethics Committee v. Garden State Bar Association_, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) the Court held _Younger_ abstention applied where "noncriminal proceedings bear a close relationship to proceedings criminal in nature."

Under the _Younger_ frame work the appellate courts have identified three factors courts should consider in determining whether to exercise jurisdiction or invoke the _Younger_ abstention doctrine.  Those three factors include whether:

> (1) there is on ongoing state judicial proceeding; that (2) implicates important, substantial or vital state interests and (3) provides adequate opportunity to raise constitutional challenges.

_Nivens v. Gilchrist_, 444 F.3d 237, 241 (4th Cir. 2006)(citations omitted).  However,

> [t]he three _Middlesex_ conditions recited above were not dispositive; they were, instead, _additional_ factors appropriately considered by the federal court before invoking _Younger_. Divorced from their quasi-criminal context, the three _Middlesex_ conditions would extend _Younger_ to virtually all parallel state and federal proceedings, at least where a party could identify a plausible important state interest.  That result is irreconcilable with our dominant instruction that, even the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the exception, not the rule.

_Sprint Commc'ns, Inc._, 134 S. Ct. at 593 (citations omitted).

## B.  HawkLaw, PA is not a party to any "on going state judicial proceeding" and the _Younger_ exception to jurisdiction does not apply to any of its claims.

The _Younger_ exception to jurisdiction does not apply to HawkLaw, PA because none of Defendants' investigations or charges have ever been filed against HawkLaw, PA.  All of Defendants' investigations and charges have been filed against John Hawkins individually. Defendants freely admit this.  In their supporting Memorandum of Law, Defendants write: "The ODC and the Commission have never sought to investigate HawkLaw, PA, the professional association, for any of its advertisements.  Rather, only Mr. Hawkins has been the subject of any investigation."  Defendants' Memorandum in Support of Defendants' Motion to Dismiss, p. 14. Because HawkLaw, PA is not a party to any "on going state judicial proceeding" the _Younger_ abstention doctrine cannot and does not apply to it.  Accordingly, the court is "obliged to decide [the case] within the scope of federal jurisdiction.  Abstention is not in order simply because a pending state-court proceeding involves the same subject matter."  _Sprint Commc'ns, Inc._, 134 S.

Ct. at 588 (citing *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 373, 109 S. Ct. 2566, 105 L.E.2d 298 (1989).

Like the Plaintiff in *Sprint Commc'ns, Inc.*, "A private corporation, [HawkLaw, PA] initiated the action.  No state authority conducted an investigation into [HawkLaw's] activities, and no state actor lodged a formal complaint against [HawkLaw, PA]."  *Sprint Commc'ns, Inc.*, 134 S. Ct. at 593.  Moreover, and according to the Plaintiffs' Complaint, the ads in question are "from HawkLaw, PA" and are therefore run for the benefit of HawkLaw, PA.  See Plaintiffs' Complaint, Paragraph 16.  Thus, as a law firm that advertises, HawkLaw, PA may pursue its claims without being subject to the *Younger* abstention doctrine.  "Where, as here, parallel state proceedings might be 'thrwart[ed] or 'knock[ed] out' by the federal relief sought simply because it would eliminate the need to seek that same relief through a state process, *Younger* abstention is not warranted."  *McPherson v. Lamont*, 457 F. Supp. 3d 67, 84 (D. Conn. 2020) (citations omitted).

### C. Plaintiffs' challenges to Rule 7.1(e) fall outside an "on going state judicial proceeding" because charges brought under that rule were dismissed with prejudice.

Plaintiffs' Complaint makes challenges to the constitutionality of Rule 7.1(e).  See Plaintiffs' Complaint, paragraphs 20-26.  Plaintiffs' facial challenges are well grounded in recent case law because the Second Circuit has already held an identical rule facially unconstitutional. *Alexander v. Cahill*, 598 F. 3d 79 (2nd Cir. 2010).  The saliant point related to the current Motion to Dismiss is the fact that the pending charges against Mr. Hawkins do not allege any violations of Rule 7.1(e).  Exhibit 12.  Thus, there is no "on going state judicial proceeding" pertaining to Rule 7.1(e), and thus no reason to invoke the *Younger* abstention doctrine as to any of Plaintiffs claims related to Rule 7.1(e).

A brief review of the procedural history of the underlying ODC/Commission action demonstrates more fully the legal flaws in Defendants' arguments attempting to invoke the *Younger* abstention doctrine. When Plaintiffs' filed this action there were Formal Charges pending pertaining to separate investigations started in 2017, 2018 and 2019. The only Formal Charges where Defendants' claimed Plaintiffs' violated Rule 7.1(e) related to the 2017 matter. Exhibit 13 Plaintiffs' pending Motion to Compel. Defendants' Formal Charges related to that matter claimed John Hawkins violated Rule 7.1(e) by using the nickname "the hawk" and the trade name "HawkLaw." However, in August 2021, Defendants' dismissed that charge with prejudice. Therefore, there is no current "on going state judicial proceeding" and the *Younger* abstention doctrine does not apply to those claims now before this Court.

In their Memorandum of Law Defendants have mischaracterized the dismissal of the 2017 charges as a magnanimous effort to resolve all the pending legal issues between the parties. Nothing could be further from the truth. A history of this case illustrates Defendants true motivations in dismissing the 2017 matter - To conceal from the Plaintiffs and the public a "secret settlement" Defendants reached with another law firm related to Rule 7.1(e) and related to that law firm's use of the tradename "Law Tigers." See generally, Plaintiffs' pending Motion to Compel, Supporting Memorandum of Law and Exhibits thereto.

Plaintiffs' Counsel had been asking for the "secret settlement" from the outset of this case. Exhibit 8. He asked for it during the parties 26(f) conference. Exhibit 8. He asked for to be made available during initial disclosures. Exhibit 8. Defendants refused. Exhibit 8. So, Plaintiffs' Counsel made discovery requests for the "secret settlement." In an effort to keep the "secret settlement" hidden from scrutiny, Defendants dismissed the 2017 charge. This fact is evidenced by Defendants' discovery responses and in their consultation letters related to the

pending Motion to Compel.  See Plaintiffs' Supporting Memorandum of Law to Motion to

Compel, Exhibit 2, pp. 12-13; Exhibit 4, p. 3; Exhibit 5, pp. 5-6.  Defendants thought they could

dismiss the 2017 and continue to shield the "secret settlement."  That was the true intention of

dismissing the 2017 charge.

    Regardless of what Defendants might write in response to their motivation, the

documentation speaks for itself.  More importantly and for purposes of the pending Motion to

Dismiss, one fact remains uncontested:  Defendants have no pending charges against Plaintiffs

charging them with a violation of Rule 7.1(e).  Without such pending charges, Defendants have

no plausible argument that there is an "on going state judicial proceeding" relating to Rule

7.1(e).  For this reason, Defendants' Motion to Compel must fail as to these claims.

**D.  Plaintiffs' constitutional challenges to ads containing the phrase "expect more" were concluded in 2015 with a letter of caution and therefore there is no "on going state judicial proceeding."**

    In 2014, ODC opened an investigation based on an anonymous complaint.  Among other

parts of the anonymous complaint were ads containing the phrase "expect more."   The

anonymous complaint claimed this violated Rule 7.1(c).  ODC opened a formal investigation

based on the anonymous complaint.  In 2015, Defendants concluded that matter by issuing a

"letter of caution."  Exhibit 5.  The letter of caution ended that matter.  In the six years that have

passed since ODC issued its letter of caution, it has taken no other action related to the 2014

complaint based on the phrase "expect more."

    Plaintiffs' Complaint in the pending matter before this Court makes specific allegations

that Defendants' application of Rule 7.1(c) to the phrase "expect more" violates Plaintiffs'

constitutional rights.  Complaint, paragraphs 42-44.  As with the 7.1(e) matters noted in the

preceding subsection of this Memorandum, the fact the 2014 investigation ended with a "letter of

caution" negates Defendants' Motion to Dismiss as to these matters.  For the _Younger_ abstention

doctrine to apply there must be an "on going state judicial proceeding."  As to Plaintiffs' claims

related to the "expect more" phrase there is not an "on going state judicial proceeding" because

Defendants' closed that matter in 2015 with a letter of caution.  Exhibit 5.  Thus, Defendants'

Motion to Dismiss fails as a matter of law.

**II.**     **The _Younger_ abstention doctrine does not apply to any of Plaintiffs' facial challenges because "there is [no] ongoing state judicial proceeding; that… provides adequate opportunity to raise constitutional challenges."**

As explained by the Fourth Circuit in _Nivens v. Gilchrist_, 444 F.3d 237, 241 (4th Cir.

2006) any _Younger_ abstention analysis must determine whether an "on going state judicial

proceeding…provides adequate opportunity to raise constitutional challenges."  While _Nivens_

predated the Supreme Court's holding in _Sprint Commc'ns, Inc. v. Jacobs_, 134 S. Ct. 584, 588,

L. Ed. 2d 505 (2013) its core holding is consistent with the Supreme Court's teaching that these

factors "are _additional_ factors appropriately considered by the federal court before invoking

_Younger_."  _Sprint Commc'ns, Inc._, 134 S. Ct. at 593 (citations omitted).  In the case now before

this court, those "additional factors" are not satisfied with regard to Plaintiffs' facial challenges

to Rules 7.1(c), 7.1(e) and 7.2(a).  As explained more fully below, neither ODC nor the

Commission on Lawyer Conduct is vested with the authority to "Issue an Order(s) declaring

Rules 7.1(c), 7.1(e) and 7.2(a) of the South Carolina Rules of Professional Conduct facially

unconstitutional as written."  Plaintiffs' Complaint, Prayer for Relief, paragraph A.  Thus, there

is no "on going state judicial proceeding [that] provides adequate opportunity to raise [facial]

constitutional challenges."

ODC and the Commission were created by South Carolina Supreme Court as part of the

South Carolina Supreme Court's rule making authority granted to it under the state Constitution.

Rule 413 of the South Carolina Appellate Court Rules provides the "Rules of Lawyer Disciplinary Enforcement." Rules 3-5 of Rule 413 set forth the "Organization and Structure" for both the Commission and ODC. These Rules also set forth the "Powers and Duties" of the Commission and ODC. Rule 4(e)-(g) and Rule 5(b). Absent from these "Powers and Duties" is the ability to "Issue an Order(s) declaring Rules 7.1(c), 7.1(e) and 7.2(a) of the South Carolina Rules of Professional Conduct facially unconstitutional as written." Plaintiffs' Complaint, Prayer for Relief, paragraph A.

In the most general terms, both ODC and the Commission have the power and duty to investigate and charge attorneys with professional misconduct. The Commission may also hold hearings related to charges of attorney misconduct and make recommendations to the South Carolina Supreme Court about appropriate sanctions for attorney misconduct. Ultimately, however, in most cases sanctions are determined solely by the South Carolina Supreme Court irrespective of the recommendations of the Commission. Under the applicable rules and procedures, the Commission and ODC simply aren't vested with the authority to "Issue an Order(s) declaring Rules 7.1(c), 7.1(e) and 7.2(a) of the South Carolina Rules of Professional Conduct facially unconstitutional as written." Plaintiffs' Complaint, Prayer for Relief, paragraph A.

At most, John Hawkins could argue Rules 7.1(c), 7.1(e) and 7.2(a) of the South Carolina Rules of Professional Conduct are facially unconstitutional as written and that he should not be sanctioned because of this. However, such an argument would be hollow and meaningless given the scope of authority assigned to the Commission. The Commission is only empowered to decide allegations of rule violations by specific lawyers. It has no power and authority to declare entire rules or portions of rules unconstitutional.

There are at least two other reasons why such a scenario is unlikely and does not provide an "adequate opportunity to raise constitutional challenges." First, the Commission is under the direct supervision and control the South Carolina Supreme Court. As a practical matter, it is unlikely to make a finding that the Rules of Professional Conduct, which the South Carolina Court drafted, adopted and implemented pursuant to that court's rule making authority, violate the United States Constitution.

Another reason the state court actions do not present an "adequate opportunity to raise [facial] constitutional challenge" is that any finding made by the Commission would be subject to review by the South Carolina Supreme Court. In essence, the South Carolina Supreme Court would be sitting in judgment about the constitutionality of the Rules of Professional Conduct which it drafted, adopted and implemented pursuant to its rule making authority under the state Constitution. Quite obviously the South Carolina Supreme Court would not have drafted, adopted and implemented rules it believed violated the United States Constitution. With all due respect to the South Carolina Supreme Court and its members, asking the South Carolina Supreme Court to be the constitutional arbiter of its own rules does not provide an "adequate opportunity to raise constitutional challenges."

For these reasons, Defendants' Motion to Dismiss Plaintiffs' facial challenges fail as a matter of law.

### III.    This case has moved beyond its "embryonic stage" making the application of the *Younger* abstention doctrine improper and inappropriate.

An exception to the *Younger* abstention doctrine exists when a federal case has moved beyond its "embryonic stage." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed. 648 (1975). That exception applies here making application of the *Younger* abstention doctrine improper and inappropriate.

In _Doran_ the Supreme Court first recognized that when significant litigation had already occurred in the underlying federal case moving the case beyond its "embryonic stage" courts should decline application of _Younger_ abstention.  _Doran_, like the case now before this court, had multiple plaintiffs.  In applying the _Younger_ abstention doctrine to certain plaintiffs but not other plaintiffs the Court recognized the different procedural postures of each plaintiff's case and noted that some plaintiffs in that case had litigated there claims beyond the "embryonic stage" making application of _Younger_ abstention doctrine inapplicable to them.

Since _Doran_, the federal courts have held that if "proceedings of substance on the merits have occurred in federal court, abstention is inappropriate…"  because the case is beyond its "embryonic stage." _Nationwide Biweekly Admin., Inc v. Owen_, 873 F.3d 716, 728 (9th Cir. 2017). See also _Tokyo Gwinnett, LLC v. Gwinnett County, Georgia_, 940 F.3d 1254 (11th Cir. 2019); _For Your Eyes Alone, Inc. v. City of Columbia, Ga._, 281 F.3d (11th Cir. 2002).  While there are "some bright-line rules regarding what proceedings are 'substantial' and 'on the merits' _Younger_ purposes" those "bright-line rules" are not applicable to the matter now before this court.[4] _Nationwide Biweekly Admin., Inc._, 873 F.3d at 728.  As with most situations the court must perform a "fact-specific inquiry" to determine whether "substantial" litigation has occurred taking the case beyond its "embryonic stage."  Id.

In conducting a "fact-specific inquiry" federal courts have specifically "considered in detail the history of the specific case" _Nationwide Biweekly Admin., Inc._, 873 F.3d at 728; "The amount of time the federal case[] had been pending prior to the state case being filed"; _Nationwide Biweekly Admin., Inc._, 873 F.3d at 730; "[T]he costs of abstention in a suit where the

---

[4]    For example and as noted by the Ninth Circuit: "denial of a temporary restraining order is not a proceeding of substance on the merits" and "the grant of a preliminary injunction is always a proceeding of substance on the merits."  _Nationwide Biweekly Admin., Inc._, 873 F.3d at 728. (citations omitted).

plaintiff brings a facial or as-applied challenge to a state statute on First Amendment free speech grounds" *Your Eyes Alone, Inc. v. City of Columbia, Ga.*, 281 F.3d at 1219; The "risk [of] creating an expansive 'reverse removal power'" Id.; "any discovery" *Tokyo Gwinnett, LLC*, 940 F.3d at 1272; "the filing of motions, even if the district court did not rule on the motion" Id. *Tokyo Gwinnett, LLC*, 940 F.3d at 1272 and "any change in the parties position as a result of the federal litigation." Id. When these factors are considered in this case it is clear Defendants' Motion to Dismiss fails as a matter of law.

Considering "the history of the specific case" in this matter is instructive. *Nationwide Biweekly Admin., Inc.*, 873 F.3d at 728. After filing this action, Defendants agreed to stay the underlying ODC/Commission charges until this court decided this case on the merits. Exhibit 7. This was a logical and reasoned choice for all parties because it allowed this court to decide the constitutional questions first. Once this court finally decided those issues, all parties could litigate or settle the underlying ODC/Commission charges in accordance with a final order from this court on the constitutionality issues.

Toward that end, John Hawkins filed appropriate documentation in the ODC/Commission to stay the action. Defendants did not oppose staying action and the Commission issued an order granting the stay which is what the parties agreed to. In August 2021, Defendants sought to lift the stay in order to dismiss entirely all the pending Formal Charges related to the 2017 investigation including charges related to the nickname "the hawk" and tradename "HawkLaw." Exhibits 9 & 10. The Formal Charges related to the 2018 and 2019 matters were dismissed without prejudice. As a matter of procedure, the dismissal without prejudice sent the 2018 and 2019 matters back to the investigative stage even though no further investigation was needed since the facts were not in dispute.

In their Memorandum of Law, Defendants have mischaracterized this action as a generous and magnanimous offer to resolve all the issues between the parties. It is not. Rather, dismissing the 2017 charges simply memorializes what one of ODC's attorneys previously told Mr. Hawkins' attorney years ago – that ODC did not intend to prosecute John Hawkins related to the "hawk" or "HawkLaw" because those terms are part of his legal name. Exhibit 4. In addition and as explained more fully at pages 5-6 in this Memorandum of Law, Defendants were simply trying to avoid legitimate discovery requests which would have compelled them to produce a "secret settlement" with another law firm using the "Law Tigers" tradename and images and depictions of tigers in its ads in South Carolina. See generally, Plaintiffs' pending Motion to Compel and Supporting Memorandum of Law.

Defendants own Memorandum of Law makes this very point to the court. Indeed, Defendants' intention with the current Motion to Dismiss is precisely that – avoid answering discovery. On this point, Defendants Memorandum of Law is clear: [I]n light of this Motion seeking a dismissal on abstention grounds, Defendants ask that this Court hold the motion to compel in abeyance until it has ruled on this Motion." As this court is aware, nothing in the FRCP or Local Rules stays discovery because of a pending Motion to Dismiss.

Prior to Plaintiffs filing the Motion to Compel, Defendants were all too happy to litigate in this forum. They agreed to do so. In fact, they did so by answering Plaintiffs' Complaint, engaging in a 26(f) conference, formulating a discovery plan, making initial disclosures, asking the court to amend its scheduling order, making discovery requests to Plaintiffs, and answering Plaintiffs' discovery (albeit wholly insufficiently). The "risk [of] creating an expansive 'reverse removal power'" that the Eleventh Circuit warned against in _Your Eyes Alone, Inc. v. City of Columbia, Ga._, 281 F.3d at 1219 is even more pronounced here because Defendants are

essentially trying to use the abstention doctrine as a doubled edged sword against Plaintiffs: (1) to deprive them of meaningful discovery responses they are entitled to and (2) to venue and forum shop when the present venue no longer suits them.

Simply put, this case is well beyond its "embryonic stage" making _Younger_ abstention improper.  In fact, as of this Memorandum of Law, the dispositive motions are due in less than three months.  Given the nature of this case and largely undisputed facts, dispositive motions will almost certainly resolve this case on the merits.  As this court is aware, _Younger_ abstention is premised on principles of federalism and comity.  Defendants Motion to Dismiss is not based on either principle.  Rather, Defendant's Motion to Dismiss is premised on a desire to avoid legitimate discovery and delay resolution on the merits.  Respectfully, the court should not allow _Younger_ abstention to be used for either of these purposes.

**IV.     Plaintiffs have standing to bring First Amendment claims.**

**A.  Standing requirements in First Amendment cases.**

There are three requirements for standing.

First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectured or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

_Lujan v. Defendants of Wildlife_, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

"The injury-in-fact requirement is somewhat relaxed in First Amendment cases." _Kramer v. Grossman_, 2014 U.S. Dist. Lexis 30346* citing _Secretary of State of Md. v. Joseph H. Munson Co., Inc._, 467 U.S. 947, 956, 104 S. Ct. 2839, 81 L. Ed. 2d 786 (1984); _Cooksey v. Futrell_, 721 F.3d 226, 235 (4th Cir. 2013)("The leniency of First Amendment standing manifests itself most commonly in the doctrine's first element: injury-in-fact."); _Human_

*Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010) ("[W]hen a challenged

statute risks chilling the exercise of First Amendment rights, the Supreme Court has dispensed

with rigid standing requirements."  See also *Allen, Allen, Allen & Allen v. Williams*, 254

F.Supp.2d 614 (E.D. Va. 2003)("In the context of First Amendment claims, however, standing

requirements are often relaxed.")(citations omitted).

###   B.  Plaintiffs meet the "somewhat relaxed" standard for standing in First Amendment cases.

John Hawkins and HawkLaw meet the "somewhat relaxed" standard for standing in First

Amendment cases.  In response to the 2014 investigation, Plaintiffs stopped using the phrase

"expect more."  Exhibit 1.  HawkLaw paid for the advertisements using this phrase.  Exhibit 1.

Defendants issued a letter of caution related to the phrase "expect more."  Exhibit 5.  In response

to the letter of caution, Plaintiffs have not used the phrase "expect more" in advertisements.

Exhibit 1.  In essence, Defendants' letter of caution had its intended result – it chilled free

speech.  "The injury here is not actual discipline, but rather chill caused by the threat of

discipline."  *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012).  A letter of caution is precisely

that – a threat of discipline if the lawyer doesn't comply.  See e.g. *In re Mitchell*, 364 S.C. 606,

606-607, 614 S.E.2d 614 S.E.2d 634, 635 (2005)(publicly reprimanding attorney for use of the

name "Mitchell & Associates" after receiving a letter of caution for doing so when he had no

associates in his firm).

In connection with the 2014 investigation, Kelly Arnold told Michael Virzi that ODC

would not prosecute John Hawkins for use of the tradename HawkLaw since hawk was part of

John Hawkins' legal name.  Exhibit 4.   She also indicated ODC would not prosecute John

Hawkins for images and likenesses of hawk birds in connection with advertising for the same

reason.  However, despite these representations, Defendants opened the 2017 formal

investigation that culminated in Formal Charges in 2021. While Defendants have now dismissed those charges with prejudice, nothing prohibits them from filing new charges related to different ads.

Plaintiffs have also withheld other ads from the public fearing Defendants will prosecute them under Rules 7.1(c), 7.1(e) and 7.2(a). See Exhibit 1. Plaintiffs' Complaint makes facial challenges to each of these rules. Plaintiffs' fears are not "conjectural or subjective." Instead, they are grounded in Defendants' dogmatic pursuit of disciplinary action against them for their advertising. An examination of Defendants' conduct toward Plaintiff and the current Formal Charges demonstrates this.

The 2018 and 2019 investigations also demonstrate an unreasonable and overly aggressive pursuant of John Hawkins for his law firm's advertising. For example, one of the things ODC complains of in its Formal Charges stemming from the 2018 investigation is that the advertisements use actors of different genders and races. Defendants contend this "had the potential to lead viewers to believe mistakenly [Plaintiff's] firm achieved the same results in multiple cases." However, Defendants produced no evidence to support this claim, either in the ODC/Commission matter or in discovery in this case.

As another example, Defendants' claim that Plaintiffs' commercials touting several large/seven figure settlements "do not include any details of the severity of the accident that formed the basis" for the settlements. However, the Rules of Professional conduct do not require that "any details of the severity of the accident that formed the basis" for settlements be included. Nor did ODC require such information for similar testimonials it reviewed related to the 2014 investigation. Exhibit 4. Just as importantly, Defendants have no evidence to support their claim that these ads were misleading or untruthful. Indeed, the complaints giving rise to all of ODC's

investigations and charges were from other lawyers, not members of the general public who claimed they were misled.

Nonetheless, Plaintiffs have pulled all of the ads giving rise to any of ODC's charges. Exhibit 1. These illustrations demonstrate a real, objective fear that Defendants would prosecute Plaintiffs for advertising content they find objectionable.

These examples are consistent with federal case law in lawyer advertising First Amendment cases. In _Allen, Allen, Allen & Allen v. Williams_, 254 F. Supp. 614 (E.D. Va. 2003) the District Court found a law firm had standing to pursue claims against the bar. In that case, the bar issued a letter asking the law firm to "correct" their ads and that "failure to respond to these requests could result in the matter being referred as a disciplinary complaint." Plaintiffs in this case present an even stronger case for standing because they have been prosecuted multiple times based solely on the contents of their ads. Plaintiffs in this case pulled each of the ads Defendants find objectionable. Exhibit 1.

The Sixth Circuit reached a similar decision in _Berry v. Schmitt_, 688 F.3d 290, 297 (6th 2012). In _Berry_, the Circuit Court held a mere warning from the bar was sufficient for standing. The court wrote: "This warning alone more than subjectively chilled Berry's speech."

In another case, _Kramer v. Grossman_, 2014 U.S. Dist. Lexis 30346* (2014), the District Court reached an identical result. As with _Berry_, the Plaintiff in _Kramer_ faced only the threat of prosecution. In this case, however, Defendants have actively prosecuted Plaintiffs. Plaintiffs have every reason to fear future prosecution. Thus, they have standing to pursue both facial challenges to Rules 7.1(c), 7.1(e) and 7.2(a) but they also have standing to pursue as applied challenges.

In its Memorandum of Law Defendants claim, HawkLaw, PA, is not subject to the South Carolina Rules of Professional Conduct and, therefore, lacks standing…"  This argument misses the mark and misconstrues the "injury in fact" requirement for standing.  Even a cursory examination of the applicable Rules of Professional Conduct demonstrates the flaws in Defendants' argument.

The Rules of Professional Conduct mandate that any advertisement "shall include the name and office address of at least one lawyer responsible for its content." RPC, Rule 7.2(d).  In compliance with that rule, John Hawkins is the "lawyer responsible for [the] content" of HawkLaw ads.  Exhibit 1.  However, compliance with this RPC does not defeat HawkLaw's standing.  HawkLaw, not John Hawkins, pays for the ads.  Exhibit 1.  Phone calls and leads go to HawkLaw not John Hawkins individually.  Exhibit 1.  John Hawkins' representation of clients generated from the ads is through his law firm.  Exhibit 1.  He does not represent any clients individually outside his law firm.  Exhibit 1.  His legal representation of clients is all through his law firm, HawkLaw.  Exhibit 1.  Similarly, the other attorneys employed by HawkLaw all represent clients solely through their employment with HawkLaw.  Exhibit 1.  The chilling effects of Defendants' facially unconstitutional rules and unconstitutional enforcement create an "injury in fact" that is more than sufficient to meet the "somewhat relaxed" relaxed standard in First Amendment cases.  See also  *Jacobs v. The Florida Bar*, 50 F.3d 901 (11th Cir. 1995)(holding law firm had standing to pursue First Amendment challenges related to lawyer advertising); *Rubenstein v. Fla. Bar*, 69 F. Supp. 3d (S.D. Fla. 2014)(holding attorney and his law firm had standing to pursue First Amendment claims related to attorney advertising).

**V.     Defendants' claim that the Court should "decline to take this case under the Declaratory Judgment Act" is without merit and contradictory to well established precedent.**

In its Memorandum of Law Defendants contend this court should "decline to take this case and should do so because the relief sought will not serve a useful purpose…" Defendants' Memorandum of Law, p. 15. Defendants' argument lacks merit, lacks logic and is wholly contradictory to well established precedent going back over a hundred years. In _New Orleans Public Service, Inc. v. Council of City of New Orleans_, 491 U.S. 350, 358-359, 109 S.Ct. 2506, 105 L.Ed. 298 (1989) the Supreme Court wrote:

> Our cases have long supported the proposition that federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred. For example, "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution." _Cohens v. Virginia_, 6 Wheat. 264, 404, 5 L.Ed. 257 (1821)." "'[T]he courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction.'" _Chicot County v. Sherwood_, 148 U.S. 529, 534, 13 S.Ct. 695, 697, 37 L.Ed. 546 (1983)(citations omitted). "When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction… The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied." _Wilcox v. Consolidated Gas Co._, 212 U.S. 19, 40, 29 S.Ct. 192, 195, 53 L.Ed. 382 (1909)(citations omitted). Underlying these assertions is the undisputed constitutional principle that Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds. _Kline v. Burk Construction Co._, 260 U.S. 226, 234, 43 S.Ct. 79, 83, 67 L.Ed. 226 (1922).

More recently, the Supreme Court reiterated and reaffirmed these black letter principles of law concerning federal jurisdiction. "[F]ederal courts are obliged to decide cases within the scope of federal jurisdiction." _Sprint Commc'ns, Inc._, 134 S. Ct. at 588. Defendants' arguments to the contrary are spurious and lack merit. Accordingly, this Court should deny Defendants' Motion to Dismiss.

## CONCLUSION

For the reasons outlined above, Defendants' Motion to Dismiss should be denied in its entirety. Plaintiffs have standing to bring this case, the court should not "decline to take this case" and the _Younger_ abstention exception to jurisdiction does not apply to any of Plaintiffs' claims.

In the alternative, any claims that are dismissed under the *Younger* abstention doctrine should only be dismissed without prejudice. Those claims would be limited to only the 2018 and 2019 matters against John Hawkins individually where formal charges are currently pending against him.

Respectfully submitted,

s/ Robert D. Dodson
Robert D. Dodson
Federal I.D. Number 7249
Law Offices of Robert Dodson, P.A.
1722 Main Street, Suite 200
Columbia, SC  29201
Telephone (803) 252-2600
Facsimile (803) 310-2545
Email: rdodson@rdodsonlaw.com

Columbia, South Carolina
October 25, 2021