# Exhibit 4

## Affidavit of Michael Virzi

STATE OF SOUTH CAROLINA    )
                           )    AFFIDAVIT OF MICHAEL VIRZI
COUNTY OF RICHLAND         )

Michael Virzi, being first duly sworn, gives this Affidavit under oath:

1. My name is Michael Virzi. I am over eighteen years old and am fully competent to give this sworn affidavit.

2. I am an attorney licensed to practice law and practicing law in the State of South Carolina. I was admitted to the South Carolina bar in 2000 and have remained in good standing since that time.

3. Since 2003, my practice has been limited to matters of lawyer ethics, discipline, and malpractice, including extensive work in the regulation of lawyer advertising and including three years as an Assistant Disciplinary Counsel. I have been published in South Carolina Lawyer Magazine and quoted in the ABA Journal and South Carolina Lawyers Weekly on the subject of lawyer advertising regulation. I have drafted numerous Ethics Advisory Opinions for the South Carolina Bar regarding lawyer advertising and have been asked several times by the South Carolina Bar to write a South Carolina Lawyer Advertising Manual for publication by the Bar. I have also taught Professional Responsibility at the University of South Carolina School of Law since 2013.

4. In 2010, when the Office of Disciplinary Counsel ("ODC") created the half-day Advertising School CLE as a part of the LEAPP program, I was selected by ODC to co-teach Advertising School. Earlier this year the Disciplinary Counsel, John Nichols, asked me to become the primary presenter of that program and to re-create the CLE presentation from scratch in a new format, which I did starting with the September 14, 2021, session of Advertising School. I have taught Advertising School at ODC's request 17 times, in addition to presenting more than 100 other CLE's and law school guest lectures on matters of lawyer ethics and discipline.

5. During 2014 and 2015, I represented attorney John Hawkins of HawkLaw, PA, in a disciplinary investigation by ODC, Matter No. 14-DE-L-1423, initiated on November 3, 2014, based on an anonymous complaint about Mr. Hawkins' signage and a television advertisement. The investigation was conducted primarily by attorney Kelly Arnold at ODC, and she was my sole point of contact with that office in the Hawkins matter.

6. During the investigation, Ms. Arnold asked Mr. Hawkins to produce not only the advertisements related to the complaint, but all of his advertisements in any form (signage, videos, audio, billboards, web pages, etc.) for the two-year period prior to the complaint.

7. In a further step—unprecedented in my extensive experience both prosecuting and defending lawyer misconduct investigations—Ms. Arnold later asked for all of Mr. Hawkins' advertising materials since the time of the complaint forward to the time of the

1

request in March 2015 and any new advertisements prepared for future use. She stated that she needed the material in order to investigate whether his advertisements since the 2014 complaint were in compliance with the Rules of Professional Conduct (the "Rules") and whether his intended future advertisements would be, despite the absence of any allegation, information, or other suggestion from any source that they were not.

8. Ms. Arnold stated that her review of Mr. Hawkins' post-complaint advertisements and then-future intended advertisements was a condition of concluding Matter No. 14-DE-L-1423 with a Letter of Caution. Ms. Arnold stated to me that she could not or would not conclude the investigation unless and until she determined that his future ads would not violate the Rules, at least to the extent she could so determine from content available at the time.

9. Despite this unprecedented and unwarranted departure from the scope of ODC's authority under Rules for Lawyer Disciplinary Enforcement, 413 SCACR, and from traditional practices by that office, my co-counsel and I produced the requested material on Mr. Hawkins' behalf. Those then-future advertising materials contained extensive use of the name "HawkLaw," the phone number 1-888-HAWK-LAW, images of a hawk, and the screeching sound of a hawk.

10. During the investigation, Ms. Arnold and I had telephone conversations in which she made the above requests and explained to me her theories regarding which specific parts of Mr. Hawkins' advertising content violated which Rules. Based on my extensive experience in this area of ethics, I disagreed with some of her theories. Nevertheless, Mr. Hawkins agreed to discontinue use of certain content in order to avoid the time and expense of protracted disciplinary litigation even though such content did not violate the Rules.

11. One example of such a concession was Mr. Hawkins' discontinuing his use of the tagline "expect more," despite his belief that the phrase does not violate the Rules and an application of the Rules so as to prohibit the phrase would be unconstitutional.

12. During a telephone conversation on March 26, 2015, as Ms. Arnold and I were discussing which details of Mr. Hawkins' advertisements she took issue with, which details she did not, and whether his post-complaint materials were in compliance with the Rules, Ms. Arnold told me that Mr. Hawkins' use of hawks and the word "hawk" did not violate the Rules because it is derivative of his name.

13. After reviewing the submitted post-complaint advertisements, despite all the hawk-related content in them, Ms. Arnold confirmed to me that Mr. Hawkins had made all the changes she deemed necessary to his advertising, that the then-future advertisements did not violate the Rules, and that she would conclude the investigation with a Letter of Caution based in part on those conclusions.

Further affiant sayeth naught

*[signature]*
Michael Virzi

*[signature: Natasha Brenchak]*
Sworn to and subscribed before me
This 23 day of October, 2021

Notary Public for the State of: South Carolina
My Commission Expires: 10/18/2026

3