# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| John Hawkins and HawkLaw, PA,<br><br>    Plaintiffs,<br><br>vs.<br><br>The South Carolina Commission on Lawyer Conduct and The South Carolina Office of Disciplinary Counsel,<br><br>    Defendants. | Civil Action No. 3:21-cv-01319-JMC<br><br>**REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(c) AND/OR MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1), AND MOTION TO HOLD PLAINTIFFS' MOTION TO COMPEL IN ABEYANCE** |

## I. INTRODUCTION

Based on the applicable law and the facts as pled by Plaintiffs, Defendants have demonstrated in their Motion to Dismiss and Memorandum in Support why this Court should enter judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 26, 26-1 (hereinafter, "Motion to Dismiss"). Defendants have shown that this case should be dismissed with prejudice on the abstention grounds articulated in *Younger v. Harris*, 401 U.S. 37, 45 (1971), which captures a "strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).

More specifically, Defendants undisputedly have established that this federal action overlaps with an already ongoing and pending state attorney disciplinary proceeding, which implicates important state interests and provides an adequate forum to raise the constitutional claims advanced here, making abstention not only appropriate but necessary under *Younger*. Defendants also have shown that Plaintiffs have alleged no bad faith, harassment, or other

extraordinary circumstance so as to preclude abstention under *Younger*, as no such extraordinary circumstance exists.

Furthermore, Defendants have shown in their Motion to Dismiss that Plaintiffs lack standing to challenge Rule 7.1(e) as the prosecution pursuant to that Rule has been dismissed with prejudice in the underlying state proceeding, and that HawkLaw, PA, lacks standing as it is neither subject to the South Carolina Rules of Professional Conduct, nor subject to the underlying state proceeding, thereby warranting dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Plaintiffs similarly lack standing to pursue claims related to other disciplinary matters that are not currently pending. Defendants submitted further that this Court also has the discretion under the Declaratory Judgment Act to decline to take this case because the relief sought will not serve a useful purpose, and the state has a strong interest in having the issue decided in state court.

In response, Plaintiffs have filed a Memorandum of Law in Opposition to Defendants' Motion to Dismiss. *See* ECF No. 28 (hereinafter, "Response"). In the Response, Plaintiffs present a series of ambiguous, circular and unavailing arguments not anchored in an accurate reading of the applicable law or facts. Plaintiffs also resort to sheer speculation outside the bounds of the pleadings, which only serves to underscore the inadequacy of the Complaint and why the Motion to Dismiss should granted.[1]

Because of the misstatements of law and fact and other deficiencies in the Response, Defendants reiterate in full the Motion to Dismiss, including its reasoning on abstention and standing, and are constrained to submit this reply.

---

[1] Defendants also ask that the Court grant their request to hold Plaintiffs' motion to compel in abeyance until it has ruled on this motion as the Response does not specifically oppose such relief.

## I.  ARGUMENT

**A.  PLAINTIFFS CANNOT DEFEAT THE MOTION TO DISMISS WITH NEW UNFOUNDED ALLEGATIONS AND SELF-SERVING AFFIDAVITS AND EXHIBITS.**

At the outset, Defendants note that Plaintiffs are improperly trying to circumvent their own pleadings by asserting new and unfounded allegations and by attaching self-serving affidavits and exhibits in an impermissible attempt to overcome Defendants' Rule 12(c) motion.

As this Court is well aware, a motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6). *See Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013).  As such, a motion to dismiss tests the sufficiency of a complaint. *See Butler v. United States*, 702 F.3d 749, 752 (4th Cir. 2012). "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011) (internal quotation marks omitted).

Thus, in resolving a motion pursuant to Rule 12(b)(6) or Rule 12(c), a court cannot consider matters outside the pleadings without converting the motion into one for summary judgment. Fed. R. Civ. P. 12(d). A court may, however, consider a "written instrument" attached as an exhibit to a pleading, *see* Fed. R. Civ. P. 10(c), "as well as [documents] attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

In this case, Plaintiffs attached no affidavits or other exhibits to their Complaint and Defendants submitted no exhibits with their Answer and Affirmative Defenses.  *See* ECF Nos. 1

and 16.  Defendants moved to dismiss pursuant to Rule 12(c) because abstention was a meritorious affirmative defense based on the Complaint and was pled in the Answer. *Id.* As such, Defendants attached no affidavits, exhibits or other supporting documentation to the Motion to Dismiss so as to avoid converting it to a motion for summary judgment. *See* ECF Nos. 26, 26-1. In accordance with Rule 12(c), Defendants also cited only to the facts as alleged by Plaintiffs in their Complaint and in their subsequent Motion to Compel filed by Plaintiffs on this Court's docket. Accordingly, not one "written instrument" was attached as an exhibit to a pleading, nor were there any documents attached to a motion to dismiss that could be considered "integral" to the Complaint.

Now, Plaintiffs have attached 13 exhibits to the Response, totaling nearly 70 pages of documents, including affidavits and some selected emails between counsel for the parties. *See* ECF Nos. 28-1 through 28-13. Plaintiffs correctly note that the "submission of exhibits and affidavits in response to a 12(b)(1) motion to dismiss are proper and do not convert the motion to a summary judgment motion." Response at 1, n 1. However, Plaintiffs' opposition to Defendants' jurisdictional challenge under Rule 12(b)(1) motion takes up less than five pages near the end of the 25-page Response.  *See* Response at 19–23.  And *only Exhibit Nos. 1, 4 and 5* are cited on those pages in purported support of Plaintiffs' standing arguments. *Id.*

By contrast, the Statement of Facts, which spans seven pages at the beginning of the Response, contains citations almost exclusively to all 13 exhibits but has *no* specific citation to the Complaint. *See* Response at 1–7.

The rest of the Response contains Plaintiffs' opposition to Defendants' motion for judgment on the pleadings under Rule 12(c). *See* Response at 7–19, 23–24. And despite the well established standards under Rule 12(c), Plaintiffs rely there on the vast majority of the exhibits, including Exhibits No. 4 and 5, to make one-sided arguments in purported opposition.  *See id*. at

4

7, 10, 11, 12, 13, 17, 18. Among the examples, Plaintiffs cite to the exhibits to make unfounded allegations that amount to rank speculation about Defendants' purported motivations and intentions, which is an obvious, yet insufficient, attempt to create the illusion of bad faith. *See id.* at 11–12. As another example, Plaintiffs cite to exhibits that contain some, but not all, emails between counsel, to discuss some, but not all, negotiations and exchanges among the parties, creating a factual narrative that is simply incorrect and misleading, and is yet another improper and unfounded attempt to suggest that there were improper motives. *See id.* at 5–6 and fn 3.

Defendants submit that Plaintiffs' conjecture and reliance on these exhibits only serve to underscore the inadequacy of the Complaint and that Plaintiffs cannot defeat the Motion to Dismiss even if the Court considered the exhibits. However, Defendants nonetheless urge the Court to reject Plaintiffs' improper attempt to circumvent their own pleadings, to disregard all arguments that rely on matters outside the pleadings for Defendants' motion under Rule 12(c), and grant the Motion to Dismiss.

**B.    CIRCULAR ARGUMENTS THAT *YOUNGER* DOES NOT APPLY BECAUSE THERE IS NO ONGOING STATE JUDICIAL PROCEEDING PROVIDING AN ADEQUATE FORUM IGNORE APPLICABLE LAW AND FACTS.**

In the Response, Plaintiffs assert a series of ambiguous and circular arguments in opposition to Defendants' Motion to Dismiss regarding the presence of an ongoing state proceeding that is adequate for their claims, all of which are unavailing as they are not supported by the applicable law or facts. *See* Response at 10–15.

### 1.    Plaintiffs' arguments on whether there is an ongoing state proceeding fail.

In the Response, Plaintiffs suggest that this case should not be dismissed because, in relevant part:

5

(1)     HawkLaw, PA, "is not *and never has been* a party to the ODC/Commission charges" so there is no ongoing state judicial proceeding applying *Younger* abstention to HawkLaw, PA (Response at 7) (emphasis added);

(2)     Plaintiffs' facial challenges to Rule 7.1(e) fall outside an ongoing state judicial proceeding because "Defendants are not currently pursuing any charges or investigations of Plaintiffs based on an alleged violation Rule 7.1(e)" and the "only charges based on Rule 7.1(e) were dismissed *with prejudice*" (Response at 7) (emphasis added); and

(3)     Plaintiffs' as-applied challenges "related to the ads containing the phrase 'expect more'" fall outside an ongoing state judicial proceeding because they "are not part of ODC's Formal Charges." Response at 8. Plaintiffs further submit that Defendants issued a "letter of caution" in 2015 that closed out any proceedings about that phrase. *Id.*

In other words, Plaintiffs concede there is not and never has been a claim against HawkLaw, PA; Plaintiffs further concede that Defendants have dismissed the underlying complaint about Rule 7.1(e) *with prejudice*; and, Plaintiffs further concede that, despite asserting as-applied and facial challenges in their Complaint to Rule 7.1(c) on the basis of the phrase "expect more" (*see* Compl. at ¶¶ 37–48, ECF No. 1), a letter of caution closed out Defendants' investigation. In fact, Plaintiffs submit that, in "the six years that have passed since ODC issued its letter of caution, it has taken no other action related to the 2014 complaint based on the phrase 'expect more.'" Response at 12.[2] Accordingly, Plaintiffs' arguments about whether there is an ongoing state proceeding that is adequate for their claims fail at the outset because there is no standing. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 930 (1975) (reminding that, even if a plaintiff

---

[2] As such, Plaintiffs also thus concede that anything else in their Complaint is squarely subject to an ongoing state proceeding under *Younger*.

is not faced with an ongoing state proceeding, that plaintiff still must satisfy the requirements for federal jurisdiction before he can challenge the constitutionality of a state rule in federal court).

As this Court is well aware, the doctrine of standing asks whether litigants are entitled to have a federal court resolve their grievance. To merit standing, a litigant must demonstrate: (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent"; (2) that the injury is fairly traceable to the defendant's conduct; and (3) that the injury "likely will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). These standing elements must each be established "separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). The inquiry involves "both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

In light of this standard, the claims involving Rule 7.1(c) and 7.1(e) clearly fail based on Plaintiffs' own assertions as to the underlying Rule 7.1(e) complaint has been dismissed with prejudice and there has been no action for six years regarding the "expect more" complaint implicating Rule 7.1(c). *See* Response at 10–15; Motion to Dismiss at 12–14. (The inverse of this is that if the claims still were pending, then Mr. Hawkins has forum in the disciplinary proceeding in which to raise these assertions.) With respect to HawkLaw, PA., the question becomes whether it has standing to raise the rights of Mr. Hawkins, as it is undisputed that only Mr. Hawkins is subject to the state attorney disciplinary proceeding and the South Carolina Rules of Professional Conduct, not HawkLaw, PA. *See id.*; *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999).

The Supreme Court adheres to the rule that a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third

7

parties." *Warth*, 422 U.S. at 499. This rule assumes that the party with the right has the appropriate incentive to challenge government action and to do so with the necessary zeal. *Id*. It represents a concern that, if the claim is brought by someone other than one at whom the constitutional protection is aimed, a court might be "called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights," *Id.* at 500; *see also Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947 (1984).

The Supreme Court has recognized that there might be circumstances where it is necessary to grant a third-party standing to assert the rights of another, but it has limited this exception by requiring two additional showings: First, whether the party asserting the right has a "close" relationship with the person who possesses the right. *Powers v. Ohio*, 499 U.S. 400, 411 (1991). Second, whether there is a "hindrance" to the possessor's ability to protect his own interests. *Id.* It is true that, within the context of the First Amendment, the Supreme Court has articulated other concerns that justify a lessening of prudential limitations on standing, but generally, the Supreme Court has not looked favorably upon third-party standing. *See, e.g., Conn v. Gabbert*, 526 U.S. 286, 292–293 (1999) (rejecting an attorney's attempt to adjudicate the rights of a client).

Here, Plaintiffs argue that HawkLaw, PA, meets a "somewhat relaxed" standard for standing. *See* Response at 20–23. However, even under a more relaxed standard, the argument fails as there is no "hindrance" whatsoever for Mr. Hawkins' advancing his own constitutional rights. Mr. Hawkins has an adequate forum to assert his constitutional claims, first before the Commission and then before the South Carolina Supreme Court. As such, there is no special circumstance that makes it necessary to grant third-party standing to HawkLaw, PA. Additionally,

HawkLaw, PA., at most, is an agent of Mr. Hawkins, and, as such, its rights will also be addressed in the underlying state forum.

Ultimately, this Court should allow the state process to take its course. "[F]ederal and state courts are complementary systems for administering justice in our Nation. Cooperation and comity, not competition and conflict, are essential to the federal design." *Ruhrgas AG*, 526 U.S. at 586. The *Younger* doctrine reinforces this federal scheme by preventing a state defendant from asserting ancillary challenges to ongoing state procedures in federal court. And, the Supreme Court's unwillingness to allow the *Younger* principle to be thus circumvented is an additional reason to deny third-party standing.

Accordingly, Plaintiffs' arguments regarding the presence of an ongoing state proceeding must be rejected and the Motion to Dismiss granted.

### 2.     **Plaintiffs' arguments on whether there is an adequate state proceeding fail.**

Plaintiffs also suggest that the underlying attorney disciplinary proceeding does not provide an "adequate" forum for Plaintiffs to raise their facial challenges. *See* Response at 13–15. This argument ignores the law as set by the courts and misapprehends Supreme Court precedent.

For one, it is well established that the S.C. Supreme Court is an adequate and appropriate forum to address First Amendment challenges to the enforcement of the South Carolina Rules of Professional Conduct. *See* Mot. to Dismiss at 9–10. Further, were Plaintiffs not to prevail first before the Commission and then the state's Supreme Court—all of which is *yet to be decided*—Plaintiffs also may seek review by petitioning for a *writ of certiorari* from the United States Supreme Court. *See, e.g., In re Primus*, 436 U.S. 412 (1978) (S.C. Supreme Court affirmed a finding of misconduct, and lawyer challenged application of disciplinary rules to her conduct; U.S. Supreme Court granted review and reversed.); *see also In re Anonymous Member*, 684 S.E.2d 560

9

(S.C. 2009) (ODC brought formal charges against lawyer for alleged advertising rule violations; following a hearing, Commission recommended dismissal and ODC sought review; state Supreme Court applied First Amendment jurisprudence and dismissed all charges against lawyer.). As such, Plaintiffs should exhaust state court review before any federal court involvement.

Second, Plaintiffs also fail to address the other jurisprudence set out in Defendants' Motion to Dismiss, including at least one court in this District that has addressed this precise issue. *See Bieber v. S.C. Comm'n on Law. Conduct*, Case No. 6:08-2215-HMH, 2008 WL 4442629 (D.S.C. Sept. 24, 2008). In *Bieber*, the court squarely found that the Commission and the South Carolina Supreme Court provided an adequate forum for as-applied and facial First Amendment challenges. *Id.* at *2–3 (dismissing federal case on abstention grounds); *see also Gilbert v. N. Carolina State Bar*, 660 F. Supp. 2d 636, 643 (E.D. N.C. 2009) (holding a state disciplinary proceeding satisfies *Younger*'s third prong) (citing *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 629 (1986)). To hold otherwise, the district court in *Bieber* held, "would erode the well-established presumption that state courts will safeguard federal constitutional rights." *Bieber*, Civil Action No. 6:08-2215-HMH, 2008 WL 4442629, at *2–3. As such, the court in *Bieber* also expressed no concerns that the state's Supreme Court "be the constitutional arbiter of its own rules" as Plaintiffs argue. *See id.*; *see also In re Anonymous Member of S.C. Bar*, 709 S.E.2d 633, 638 (S.C. 2011).

Finally, Plaintiffs' reliance on *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), is misplaced. *Sprint* involved a private company's challenge to a state's ratemaking decision regarding telecommunications and stands for the proposition that *Younger* jurisprudence has been extended to three distinct categories:

> First, *Younger* precluded federal intrusion into ongoing state criminal prosecutions. *See ibid*. Second, certain "civil enforcement proceedings" warranted abstention. *Ibid.* (citing, *e.g., Huffman*, 420 U.S., at 604[]). Finally, federal courts refrained from interfering with pending "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial

> functions." 491 U.S., at 368[] (citing *Juidice v. Vail*, 430 U.S. 327, 336, n. 12[] (1977), and *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 13[] (1987)). We have not applied *Younger* outside these three "exceptional" categories, and today hold. . . . that they define *Younger's* scope.

*Id.* at 77–78. In other words, the Supreme Court held that *Younger* is implicated only (1) where there is a parallel state criminal prosecution, (2) in certain civil enforcement proceedings, and (3) in civil proceedings involving certain orders in furtherance of a state court's ability to perform its judicial functions. *Id.* The Supreme Court held that its "decisions applying *Younger* to instances of civil enforcement have generally concerned state proceedings 'akin to a criminal prosecution' in 'important respects.'" *Id.* at 79 (citing, among others, *Middlesex*, 457 U.S. at 433–434 (holding that state-initiated disciplinary proceeding against lawyer for violation of state ethics rules falls within a *Younger* abstention category)). The Supreme Court found the state proceedings in *Sprint* did not fall within any of those categories, and *Younger* abstention was not warranted. *Id.* at 82.

For all of these reasons, Plaintiffs' arguments are unavailing, and Defendants respectfully ask the Court to grant their Motion to Dismiss.

**C.    PLAINTIFFS' RELIANCE ON *DORAN* AND ITS PROGENY TO ARGUE THAT ABSTENTION IS IMPROPER BECAUSE THIS CASE HAS PROGRESSED BEYOND "EMBRYONIC STAGE" IS A MISSTATEMENT OF THE LAW AND COMPLETELY MISPLACED.**

Plaintiffs also make the argument in the Response that abstention purportedly is "improper and inappropriate" based on the Supreme Court's opinion in *Doran v. Salem Inn, Inc*., 422 U.S. 922 (1975), and a series of appellate cases that followed many years later. *See* Response at 15–16. More specifically, Plaintiffs contend that:

> An exception to the <u>Younger</u> abstention doctrine exists when a federal case has moved beyond its "embryonic stage." <u>Doran v. Salem Inn, Inc</u>., 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed. 648 (1975). That exception applies here making application of the <u>Younger</u> abstention doctrine improper and inappropriate. . . . In <u>Doran</u> the Supreme Court first recognized that when significant litigation had already occurred in the underlying federal case moving the case beyond its 'embryonic

11

> stage' courts should decline application of Younger abstention. . . . Since *Doran*, the federal courts have held that if "proceedings of substance on the merits have occurred in federal court, abstention is inappropriate…" because the case is beyond its "embryonic stage." . . .
>
> Since *Doran*, the federal courts have held that if "proceedings of substance on the merits have occurred in federal court, abstention is inappropriate…" because the case is beyond its "embryonic stage." *Nationwide Biweekly Admin., Inc v. Owen*, 873 F.3d 716, 728 (9th Cir. 2017). *See also Tokyo Gwinnett, LLC v. Gwinnett County, Georgia*, 940 F.3d 1254 (11th Cir. 2019); *For Your Eyes Alone, Inc. v. City of Columbia, Ga.*, 281 F.3d (11th Cir. 2002). While there are "some bright-line rules regarding what proceedings are 'substantial' and 'on the merits' *Younger* purposes" those "bright-line rules" are not applicable to the matter now before this court. *Nationwide Biweekly Admin., Inc.*, 873 F.3d at 728.

Response at 15–16 (emphasis and second to last ellipsis in original).

However, this is a misstatement of the law as articulated by the Supreme Court and must be disregarded. What is not in the Response is that this exception articulated by the Supreme Court first in *Hicks v. Miranda*, 422 U.S. 332 (1975), and subsequently in *Doran*, comes into play **_only_** if the federal court action was commenced **_before_** the initiation of the state proceeding, and it is actually a way to *still abstain*. *Id.* at 349 (holding that, where state proceedings "are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force*"*); *see also Doran*, 422 U.S. at 929 (finding the federal litigation was in an "embryonic stage and no contested matter had been decided" when state criminal summonses subsequently were issued against the parties, thereby still making *Younger* appropriate and applicable).[3]

---

[3] Plaintiffs also misstate the actual posture of *Doran*. The Response states that "some plaintiffs in that case had litigated there [*sic*] claims beyond the 'embryonic stage' making application of *Younger* abstention doctrine **_inapplicable_** to them." Response at 16. (first emphasis in original). In actuality, the term "embryonic stage" of the federal litigation in *Doran* is *only* used by the Supreme Court in reference to the plaintiff who was facing state criminal summonses issued *after the federal case was filed*, but where the "federal litigation was in an embryonic stage and no contested matter had been decided" making the *Younger* abstention "squarely" **_applicable_** to that plaintiff. *Doran*

In other words, it refers to whether a federal court case is "in an embryonic stage" before any state proceeding has been started so as to still make the underlying state proceeding "ongoing"—and thereby *satisfying* the *Younger* test *even* if the state proceeding began after the federal litigation. The Fourth Circuit Court of Appeals explained this principle as follows:

> The determination of whether a proceeding is "ongoing" is normally fact-specific and, as we view the circumstances here, the district court properly concluded that the Maryland action was "ongoing." In *Hicks v. Miranda*, 422 U.S. 332 (1975), and *Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975), the Court explained that "ongoing" includes a state proceeding brought after a federal action, so long as "proceedings are begun [in state court] ... after the federal complaint is filed but before any proceedings of substance on the merits have taken place," *Hicks*, 422 U.S. at 349, or "the federal litigation was in an embryonic stage and no contested matter had been decided," *Doran*, 422 U.S. at 929.

*2020C W. St., Inc. v. Anne Arundel Cty. of Maryland*, 985 F.2d 554 (4th Cir. 1993) (alterations and omissions in original). To that point, the appellate court cases cited by Plaintiffs are equally misconstrued. *See* Response at 16–17. In reality, these cases comport with the *Doran* analysis set out above:

- In *Nationwide Biweekly Administration, Inc. v. Owen*, 873 F.3d 716 (9th Cir. 2017), involving a First Amendment case and a Dormant Commerce Clause case pending in federal court, the state suit was filed about seven months after Nationwide filed the first case in federal court and almost six months after Nationwide filed the second case in federal court. *Id*. at 726–27.
- In *Tokyo Gwinnett, LLC v. Gwinnett County, Georgia*, 940 F.3d 1254 (11th Cir. 2019), involving a Section 1983 federal court case seeking injunctive and declaratory relief, the County filed the state-court action on July 8, 2016, nearly a year after Tokyo Gwinnet filed its federal action July 22, 2015. *Id.* at 1270.
- In *For Your Eyes Alone, Inc. v. City of Columbus, Georgia*, 281 F.3d 1209 (11th Cir. 2002), involving a Section 1983 case challenging the constitutionality of a city ordinance, the criminal prosecutions were not pending until after May 5, 1998, but the federal action had commenced in April 1998. *Id.* at 1213–16.

---

at 929. The term was *not* used in reference to any other plaintiffs in that case as Plaintiffs here suggest. As such, those erroneous assertions also should be disregarded.

In other words, as is clear from all of these cases, but not from the Response, the questions of whether "any proceedings of substance on the merits have taken place in the federal court" (*Hicks*) or whether a federal litigation is in an "embryonic stage" (*Doran*) only arise if the federal litigation was filed before the state court proceedings. Because that is not what is articulated in the Response, any arguments in the Response relying on this line of cases must be disregarded.

Even if Plaintiffs had properly articulated the *Hicks* and *Doran* exception, which comes into play only if the federal case is filed before the state court proceedings, that is undisputedly not the case here. In their own Complaint, Plaintiffs pled that "Defendants are currently prosecuting Plaintiffs because they allege Plaintiffs violated the [South Carolina Rules of Professional Conduct] in various advertisements and communications with prospective clients." Compl. ¶ 18. In a subsequent filing on the docket by Plaintiffs on September 28, 2021, the first line of the submission states that "Plaintiffs filed this action after the South Carolina Office of Disciplinary Counsel (hereinafter 'ODC') filed 'Formal Charges' against them." Motion to Compel, at 1, ECF No. 25. "On April 20, 2021, ODC filed Formal Charges against Mr. Hawkins . . . ." *Id.* at 3. "On May 4, 2021, Plaintiffs filed the current action before this court." *Id.*

Furthermore, while Plaintiffs submit that this Court consider "'the history of the specific case'" (Response at 17) (quoting *Nationwide Biweekly Administration, Inc. v. Owen*, 873 F.3d 716 (9th Cir. 2017)), it only serves to solidify why *Younger* abstention is appropriate. Unlike here, the *Nationwide Biweekly* decision involved two federal court cases, as noted above, filed six months and seven months respectively <u>before</u> the state action had begun. *Nationwide Biweekly Admin.*, 873 F.3d at 726–27. The Ninth Circuit Court of Appeals held:

> The relevant inquiry, in examining the history of the case, is the extent of the district court's involvement in the merits. Among the factors that we have considered in this fact-specific inquiry are the time that the district court has spent considering

> the case, any motions ruled on, any discovery, the number of conferences held, and any change in the parties' positions as a result of the federal litigation. . . .

Id. at 728–29. In light of that standard, the Ninth Circuit found *Younger* abstention inappropriate because, "before the date that the state case was filed, the district court had already conducted proceedings of substance on the merits." *Id.* at 729. More specifically, the Ninth Circuit held,

> First, and most important, the district court spent a substantial amount of time evaluating the merits of the cases in considering and denying (in a detailed and reasoned order) Nationwide's motions for preliminary injunctions. Rather than denying the motions on a non-merits ground . . . the district court devoted a substantial part of its reasoning to the likelihood of Nationwide's success on the merits. The district court issued a twenty-nine page order denying the preliminary injunction in the First Amendment case (thirteen pages of which were devoted to the legal discussion of the merits) and a twenty-page order in the Dormant Commerce Clause case (eight pages of which were devoted to the legal discussion of the merits). In addition, the district court considered the allegations and evidence submitted in each case and discussed the facts relevant to the merits of the claims.

*Id.* As this Court is well aware, even if this federal action had been filed before the state court proceedings, triggering such an analysis, any proceedings of substance on the merits have not occurred in this case. While the parties have exchanged discovery, the Court has not had to rule on any motions, there have been no conferences held, and there has been no change in the parties' positions as a result of the federal litigation as contemplated by *Nationwide Biweekly*.

For all of these reasons, Plaintiffs' reliance on *Doran* and similar cases to argue that *Younger* abstention is "improper and inappropriate" should be disregarded. Accordingly, Defendants respectfully ask the Court to grant their Motion to Dismiss.

### III.  CONCLUSION

For all of these reasons, Defendants, the South Carolina Commission on Lawyer Conduct and the South Carolina Office of Disciplinary Counsel, respectfully ask that the Court dismiss this case with prejudice.

Respectfully submitted,

s/ Angus H. Macaulay
Susi P. McWilliams, Fed. ID No. 3351
smcwilliams@nexsenpruet.com
Angus H. Macaulay, Fed. ID No. 5248
amacaulay@nexsenpruet.com
Sara S. Svedberg, Fed. ID No. 11928
ssvedberg@nexsenpruet.com
Brittany N. Clark, Fed. ID No. 12981
bclark@nexsenpruet.com
NEXSEN PRUET, LLC
1230 Main Street, Suite 700 (29201)
Post Office Drawer 2426
Columbia, SC  29202
PHONE:  803.771.8900
FACSIMILE:  803.727.1435

*Counsel for Defendants, the South Carolina Commission on Lawyer Conduct and the South Carolina Office of Disciplinary Counsel*

November 1, 2021
Columbia, South Carolina