```
                        IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF SOUTH CAROLINA
                                 COLUMBIA DIVISION


     Hawkins, et al,              )
                                  )
               plaintiffs,        )
                                  )
               -versus-           )    3:21-cv-1319
                                  )    December 9, 2021
     South Carolina Commission    )    Columbia, SC
     on Lawyer Conduct, et al,    )
                                  )
               defendants.        )
     _____)


           BEFORE THE HONORABLE J. MICHELLE CHILDS
           UNITED STATES DISTRICT JUDGE, PRESIDING
                  telephonic status conference


     A P P E A R A N C E S:


     For the Plaintiff:      Robert Dodson, esq.
     via telephone           Robert Dodson Law Offices
                             1722 Main Street, Suite 200
                             Columbia, SC  29201

     For the Defendant:      Angus Macaulay, Jr., esq.
     via telephone           Sara Svedberg, esq.
                             Nexsen Pruet Jacobs and Pollard
                             PO Drawer 2426
                             Columbia, SC  29202

     Court Reporter:         Kathleen Richardson, RMR, CRR
                             United States Court Reporter
                             901 Richland Street
                             Columbia, SC 29201



              STENOTYPE/COMPUTER-AIDED TRANSCRIPTION

                       *** *** *** ***
```

1        *THE COURT:*  Good afternoon, everyone.  I call to
2   action order number, Civil Action Number 3:21-CV-01319, the
3   matter of John Hawkins and Hawk Law, PA, Plaintiffs, versus
4   the South Carolina Commission on Lawyer Conduct and the South
5   Carolina Office of Disciplinary Counsel, Defendants.  And
6   we're here on a status conference.
7      We just mentioned who was representing whom on the
8   record, so I won't go back through that.  But let's go ahead
9   and hear from defense.  And just always please state your
10  name when you're speaking.
11       *MR. MACAULAY:*  Thank you, Your Honor.  This is
12  Angus Macaulay representing the defendant along with my
13  partner, Sara Svedberg.  We requested this status conference
14  to discuss the current status -- excuse me -- the current
15  scheduling order in this matter and also ask that the Court
16  amend the scheduling order to allow the defendants more time
17  to prepare this case for trial.
18      If it's okay, Your Honor, I'd like to go through a brief
19  chronology of the case.
20       *THE COURT:*  Sure.
21       *MR. MACAULAY:*  All right.  Thank you, Your Honor.
22  Plaintiff filed his case on May 4th of 2021.  The defendants
23  filed their answer on June 22nd, 2021.  The Court's initial
24  scheduling order, which was issued on June 22nd, 2021
25  provided several deadlines.  Among them was plaintiff's

1  deadline to name an expert being October 7.  The defendant's
2  deadline to name an expert was November 8th, 2021.  And the
3  discovery deadline in this case was December 8th, 2021, which
4  was yesterday.
5       Mr. Dodson, on behalf of the plaintiff, filed his 26F
6  report in which he said that the Court's current scheduling
7  order was acceptable.  At the same time, defendants filed
8  their 26F report in which we said that we disagreed that the
9  current scheduling order would work for our case and that we
10 wanted another scheduling order.
11      The reason we said that, Your Honor, is specifically
12 because, quite frankly, this is a big case for the
13 defendants.  The plaintiff is asking that Court render
14 unconstitutional several rules of professional conduct.  It
15 has great implications both for the parties, Your Honor, but
16 also on lawyers in South Carolina in general.
17      Therefore, Your Honor, it was the defendant's position
18 that we needed more time for discovery, we needed more time
19 for experts and things such as that.  And what we did is we
20 submitted a proposed scheduling order with several deadlines
21 obviously pushed back.  These included deadline of
22 February 7th, 2022 for the plaintiff to name his expert, the
23 deadline of April 8th, 2022 for the defendants to allow to
24 name their expert.  We had a discovery deadline of May 9th,
25 2022 and, you know, and other schedules on down the line.

1       Now, as a result of the -- I'll call them the competing
2  scheduling orders, Your Honor, the defendants requested a
3  status conference with the Court in our July 26F report.
4  Since that time, I'd like to kind of go through with you what
5  we have done.  Is that okay, Your Honor?
6           *THE COURT:*  Of course.  Thank you.
7           *MR. MACAULAY:*  Thank you, Your Honor.  In mid-July,
8  July 15th, plaintiff served discovery, interrogatory request
9  for production.  In mid-August, Your Honor, the parties
10 engaged in talks about the possible resolution of this
11 matter.
12    That attempted resolution failed in early September of
13 2021, and at that time the defendants -- on September 10th
14 defendants served their initial responses to their -- to the
15 plaintiff's discovery.  On September 14th defendant served
16 written discovery on the plaintiffs.  Defendants supplemented
17 their discovery responses on the 22nd, September 22nd.  We
18 supplemented again on September 23rd.
19    Defendants have essentially produced about 2,289 pages,
20 many with redactions.  Plaintiffs filed their motion to
21 compel defendant discovery in July -- excuse me --
22 September 28th, 2021.  On October 11th, 2021, Your Honor,
23 defendants filed their 12(C) Motion to Dismiss, and in that
24 motion we asked that the plaintiff's motion to compel be held
25 in abeyance pending the Court's decision on our motion to

1  dismiss.

2       On October 14th, 2021 plaintiffs admitted their

3  responses to defendant discovery.  The result, defendants

4  sent a deficiency letter to plaintiff's counsel about the

5  discovery.  And then on October 22nd defendants filed their

6  motion to stay discovery pending the Court's decision on the

7  motion to dismiss.

8       Plaintiff filed their response to the motion to dismiss

9  on October 25th.  Defendants filed a reply on the motion to

10 dismiss on November 1st, 2021.  And then Your Honor issued a

11 text order denying defendant's motion to stay.  Now --

12 essentially saying discovery need to move forward.

13      So as a result of the Court order denying the motion to

14 stay, defense counsel then contacted plaintiff's counsel

15 about its previous discovery responses in attempt to resolve

16 the issues with regard to plaintiff's responses to advance

17 discovery.

18      Without going into too much detail, Mr. Dodson and I

19 have had several discussions about those discovery responses

20 as recently as yesterday, quite frankly, and Mr. Dodson

21 supplemented his discovery responses [telephone interference]

22 I believe.

23      With regard to Mr. Dodson's motion to compel that he

24 filed on the defendant which we had asked to be held in

25 abeyance, we're ready, file also that motion to compel and

1   can do so today.

2       Essentially we just believe, Your Honor, that this is an
3   important case and that we really feel we need to have more
4   time to defend this case.  We have been in touch with two
5   expert witnesses.  We have spoken to a group to do survey
6   groups and also possibly things such as that to better
7   bolster our defense in this case.

8       Unfortunately, Your Honor, it's our position that the
9   original scheduling order just does not give us that time to
10  do that, to defend this case.  So, that's the real reason why
11  we've asked for this status conference to ask for more time.

12      Now, Mr. Dodson and I -- and I'm sure he can still speak
13  for himself, but, you know, it's always been Mr. Dodson's
14  position that the original scheduling order in this case is
15  efficient, and I verified that with him again this afternoon
16  before I called here today.

17      But again, Your Honor, you know, our position is this is
18  a big case, it has important implications for all lawyers in
19  South Carolina.  We need more time to conduct discovery and
20  move the case forward.  Thank you, Your Honor.

21          *THE COURT:*  Okay.  Before we proceed to plaintiff's
22  counsel, obviously the proposed amended scheduling order that
23  was initially sent was sent some time ago, so I do understand
24  that you would want this extended.  Have you thought about
25  the dates that you would like to substitute in this proposed

1  scheduling order?
2          *MR. MACAULAY:* Yes, Your Honor. We would -- about
3  at least two more months or possibly three more months on
4  that proposed scheduling order that we had provided to you.
5          *THE COURT:* Okay. That's a good way to just say
6  potentially move up or back all proposed dates by two to
7  three months. Okay. And that's not asking for a whole lot.
8  Let me hear from plaintiff's counsel.
9          *MR. MACAULAY:* Your Honor, may I just -- and I'm
10 sorry if I wasn't clear, and forgive me. I was referring to
11 specifically to the proposed amended scheduling order that
12 defendants had submitted on July 26th. And so what I was
13 suggesting, and I'm -- if I wasn't clear, forgive me. What I
14 was suggesting is that we add an additional three months to
15 that scheduling order.
16         *THE COURT:* Yeah, that's the one I have in my hand.
17 A proposed amended scheduling order from July of 2021.
18         *MR. MACAULAY:* Yes, ma'am. Thank you, Your Honor.
19         *THE COURT:* Okay. All right. Who is speaking on
20 behalf of plaintiff?
21         *MR. DODSON:* This is Robert Dodson, Your Honor.
22 Good afternoon.
23         *THE COURT:* Good afternoon.
24         *MR. DODSON:* While I agree with Mr. Macaulay that
25 this is an important case, I think the original scheduling

1    order gave more than adequate time for the parties to prepare
2    their case specifically with regard to the issues of
3    discovery and expert witnesses and that type of thing.
4         There's not really a factual dispute in this case.  The
5    rules of -- there are three specific rules of professional
6    conduct which we have alleged from spatially
7    unconstitutional, and the substance and contents of those
8    rules is not in dispute.
9         With regard to the as-applied constitutional challenges,
10   the substance and content of the plaintiff's ad is not in
11   dispute.  And I point that out because it's simply not a lot
12   of information to be discovered.  The rules say what the
13   rules say.  The ads are John Hawkins' ad paid for by Hawk
14   Law, one on behalf of Hawk Law, and there's simply no factual
15   dispute in this case that warrants lengthy discovery.
16        And so, we are prepared to and have been abiding by the
17   original scheduling order.  We're prepared to file a motion
18   for summary judgment on December 22nd.  And, you know, we
19   feel the original scheduling order has given the defendants
20   more than sufficient time.  If they desire to name an expert,
21   they had, you know, five months, four and a half months to do
22   that, and have made apparently no attempts until recently to
23   do that.  So, we're -- you know, we're in favor of keeping
24   the current scheduling order, the deadlines that are in that.
25        And with regard to sort of going back and back-dating

1   the scheduling order, I would end with this.  Recognizing
2   that Your Honor and the court always has the discretion to
3   amend the scheduling order to fit the needs of the case, but
4   I have always been of the opinion that scheduling orders mean
5   something because they are court-ordered.  And when those
6   deadlines pass, discovery deadlines, deadlines to name expert
7   witnesses, the parties have a duty to comply with those
8   deadlines or not.
9       And I would submit to the Court that, you know, if we
10  are going to change any of the deadlines here, we should only
11  change those deadlines that have not passed.  I was agreeable
12  from the beginning of this case to move the deadline for
13  dispositive motions, which are currently due December 22nd,
14  until the end of January so that that would not interfere
15  because there was some concern when we had our 26F conference
16  that that deadline would interfere with the Christmas and New
17  Year holiday.
18      I was agreeable to moving that deadline to well after
19  the holiday so we wouldn't have that conflict.  I'm still
20  agreeable to doing that.  But I do, you know, I do think that
21  the current scheduling order is more than adequate and should
22  not, not be amended other than to change those deadlines for
23  dispositive motions.
24          *THE COURT:*  Okay.  Let me hear from you,
25  Mr. Macaulay, about that issue because it's really then the

1  only one that would be at issue is the required initial
2  disclosure that was a deadline of August 2nd, 2021 even under
3  your proposal.
4        *MS. SVEDBERG:* Well, Your Honor, this is Sara
5  Svedberg. I wasn't sure if I understood the specific
6  question that Your Honor raised just now. May I address a
7  few things that Mr. Dodson just spoke about?
8        *THE COURT:* Yeah. And what I was saying is that
9  under your proposed amended scheduling order, if we were to
10 take plaintiff up on their suggestion, the first thing in
11 your scheduling order is an August 2, 2021 deadline for the
12 required initial disclosures under 26 Federal Rule Civil
13 Procedure 26A1.
14     The next deadline is motion to join other pleadings and
15 amend the pleadings -- oh, I'm sorry, which would have passed
16 in September. And then they essentially say any deadline
17 that has already passed, let that one stay in that regard.
18 So I guess I just want you to address when you're asking for
19 the extension of 60 to 90 days, is there a point at which we
20 start in terms of past deadlines that have already gone by,
21 do we include those?
22       *MS. SVEDBERG:* Yes, Your Honor. I understand. I
23 think that the defendant's submission is at this point --
24 because as Mr. Dodson pointed out, he noted that he has been
25 attempting to follow the proposed initial scheduling order

1   that was sent out originally, as have we, and our decision
2   mainly with respect to the discovery deadlines, Your Honor,
3   meaning expert disclosures as well as end of discovery in
4   general and then moving forward from there.
5       Does that answer your question, Your Honor?
6           *THE COURT:* Yes.
7           *MS. SVEDBERG:* And if I may, I wanted to note, too,
8   as I'm sure it's clear to the Court that this does not just
9   involve an implied challenge to these rules, not only is it
10  suggested to their original complaint but also in subsequent
11  filing by Mr. Dodson and motion to compel, this is also a
12  spacial challenge to rules that were adopted by the South
13  Carolina Supreme Court.
14      And these -- the plaintiff is asking that Your Honor
15  take -- make a decision that will invalidate these rules
16  under [telephone interference]. It's not just under
17  [telephone interference] as applied to Mr. Hawkins. And that
18  is reason why we ask that we have more time to conduct expert
19  discovery and to focus groups and the things that
20  Mr. Macaulay has already mentioned.
21      There's just a lot at stake here. And we don't think
22  that it's sufficient for us to be [telephone interference]
23  it's not sufficient time for us to defend our case.
24          *THE COURT:* Okay. A couple of questions before I
25  go back to Mr. Dodson. This case obviously is filed in

1  federal court, but you're talking about the South Carolina
2  Professional Rules of Conduct.
3       Is there a reason why -- and obviously plaintiff is the
4  master of the complaint, but is there a reason why this case
5  is here instead of before the South Carolina Supreme Court?
6       *MS. SVEDBERG:*  Well, it is our position that --
7  well, Your Honor, I hesitate [telephone interference] but we
8  had filed a motion to dismiss.  It is our position that in
9  your -- your decision and our position that this case should
10 move forward in the underlying matter.
11      *THE COURT:*  Okay.  And that's what I was going to
12 ask you next.  What is the status of underlying matters?
13      *UNIDENTIFIED SPEAKER:*  Your Honor, the status of
14 the underlying matter is that there is initial formal charges
15 were filed believe in -- just in April.  When the parties
16 entered into -- attempted to resolve the matter initially
17 back in I believe September, the formal charges that were
18 pending to the charge that were dismissed without prejudice,
19 one of the charges with regard to the -- was dismissed with
20 prejudice.
21      And it -- the parties were unable to get the case
22 resolved, the formal charges with regard to two of the issues
23 with regard to plaintiff's conduct re-filed on October 11th,
24 2021.  So that case is moving forward.  Believe Mr. Dodson is
25 representing Mr. Hawkins in those formal charges.

13

1         *THE COURT:* Okay. All right. So Mr. Dodson, you
2 want to respond? And then also when you respond about the
3 scheduling order, the proposed one has that the amended
4 pleadings would have passed by September of 2021. Was there
5 an intention on your part to file any amended pleadings?
6         *UNIDENTIFIED SPEAKER:* No, Your Honor, there was
7 not at this time.
8         *THE COURT:* Okay. So at least under the proposal,
9 the past deadlines would be okay, they would remain in
10 effect. Okay. So you want to speak to the status of the
11 underlying case, and without -- I mean, obviously I'll have
12 to rule on the motion to dismiss, but any information you can
13 give light to as to why this case would be here instead of in
14 the South Carolina Supreme Court as the ultimate arbiter of
15 the case.
16         *UNIDENTIFIED SPEAKER:* Yes, Your Honor. Thank you
17 for the question because we filed the case here in federal
18 court because the rules, the three rules that we challenge,
19 in fact all of the rules of professional conduct, are
20 ultimately passed by the South Carolina Supreme Court. They
21 are South Carolina Supreme Court rules. And the South
22 Carolina Supreme Court cannot arbitrate, cannot decide,
23 should not be allowed to decide the federal constitutionality
24 of the very rules that it passed.
25         *THE COURT:* Okay.

1  *UNIDENTIFIED SPEAKER:*  With all due respect to the
2  members of the South Carolina Supreme Court, they should not
3  be allowed to draft rules, implement those rules, and then be
4  asked to stand in judgment on the constitutionality of the
5  very rules that they pass.
6    I mean, quite obviously the South Carolina Supreme Court
7  would not have passed rules that they thought or felt were
8  unconstitutional.  And so, the only forum, only unbiased
9  forum to have the constitutionality of those rules decided is
10 this court.
11     *THE COURT:*  Okay.
12     *UNIDENTIFIED SPEAKER:*  Does that answer your
13 question, Your Honor?
14     *THE COURT:*  Yes.  And then, did you have anything
15 else to say in response to comments by either of defense
16 counsel?
17     *UNIDENTIFIED SPEAKER:*  So absent the underlying
18 charges -- you asked me to address that earlier, too.
19     *THE COURT:*  Yes.
20     *UNIDENTIFIED SPEAKER:*  There were initially three
21 charges that were filed, formal charges that were filed
22 against Mr. Hawkins.  The first of those formal charges
23 related to some ads that were run in 2017 where he used the
24 term Hawk Law because that's the name of his law firm and
25 also includes his name and the nickname, The Hawk, because

1  that's just a nickname he's gone by for many years and it's
2  also part of his name.
3      Those charges were dropped, essentially.  Those were
4  dismissed with prejudice after this federal lawsuit was
5  filed.  There were two other charges that are still pending
6  related to investigations in 2018 and then a second
7  investigation in 2019.
8      The 2018 charges relate to some ads that he ran.  And
9  the allegations, among other allegations, is that there is a
10 Hawk Law screech or the sound of a hawk, a screech of a hawk,
11 and that that is -- that violates rules of professional
12 conduct.
13     There are other allegations that because Mr. Hawkins had
14 used paid actors and actresses that are of different races
15 and genders, that that violates the rules of professional
16 conduct.  And there are some other allegations.
17     That 2017 matter relates to an investigation that was
18 initiated by a former associate attorney at Hawk Law.  In
19 other words, Mr. Hawkins fired that attorney, and that
20 attorney started his own law firm.  One of the first things
21 that he did was he filed a grievance against Mr. Hawkins with
22 the Office of Disciplinary Counsel and they started this
23 entire investigation which culminated in formal charges in
24 2021.
25     And then the final charge, the 2019 charge that related

1    to some ads where he used the term, you know, funny-money
2    lawyer, and there's an allegation in those charges that that
3    violates rules of professional conduct when he said, you
4    know, don't fall for guys in suits, the funny-money guys in
5    suits, that that violates rules of professional conduct.  And
6    that charge is still also pending before the Commission on
7    Lawyer Conduct.
8         Does that answer the question as to that?
9              *THE COURT:*  Yes, yes.  Okay.  And then obviously
10   the bigger issue is that even with regard to how I deal with
11   the scheduling order, then we will put this on a priority
12   that no later than the first week of January but hopefully
13   this month.  I got a lot of cases I'm trying to catch up on
14   now that we don't have trials this month, and so this will be
15   one that I will put on as a priority to get dealt with
16   because I think that will then send you all on to whatever
17   your next steps are.
18        So, I know that you didn't mention that, but I know that
19   that would be very helpful to you, so I will definitely get
20   that done.
21        So, the two issues that I have before me obviously is to
22   get the motion to dismiss done and then to deal with the
23   scheduling order.  Is there anything else outstanding that
24   you all need to bring to my attention?
25              *MR. DODSON:*  Yes, Your Honor.  This is Robert

1   Dodson again.  You know, we do have a motion to compel --
2              *THE COURT:*  Yes.
3              *MR. DODSON:*  -- that we -- that we filed prior to
4   the motion to dismiss.
5              *THE COURT:*  Okay.  And then I know defense counsel
6   was mentioning that they recently did some document exchange,
7   so you're still not satisfied with whatever the status is at
8   this point; is that correct?
9              *UNIDENTIFIED SPEAKER:*  That's correct, Your Honor.
10             *THE COURT:*  Okay.  So I'll get the motion to compel
11  dealt with as well.  Okay.
12             *MR. MACAULAY:*  Your Honor?  Your Honor?
13             *THE COURT:*  Yes.
14             *MR. MACAULAY:*  This is Angus Macaulay on behalf of
15  the defendants.  Mr. Dodson -- I agree with Mr. Dodson, there
16  is his pending motion to compel.  I think, as I stated
17  earlier, we -- we are prepared and will file today our
18  response to Mr. Dodson's motion to compel.  We will file that
19  today within the hour.
20             *THE COURT:*  Okay.  That's fine.  And so the motion
21  to compel, I can guarantee that we will get that out by next
22  week.
23             *MR. MACAULAY:*  And Your Honor?
24             *THE COURT:*  Okay.
25             *MR. MACAULAY:*  I -- and then now, Mr. Dodson and I,

1  as I said earlier, we have had several discussions, ongoing
2  discussions, about the status of his discovery response
3  [telephone interference] and those discussions been going on
4  up until yesterday.
5      And so it's our plan, we reached an impasse on some
6  specific issues as of yesterday, so it's -- our plan is to
7  file a motion to compel on Mr. Dodson, and we can file that
8  motion within the next several days.
9          *THE COURT:* Okay. All right. Then at least we'll
10 have a status as to where your discovery will be. Okay.
11 Anything else for the good of the order?
12         *MS. SVEDBERG:* Your Honor, this is Sara Svedberg.
13 I just wanted to tell you I appreciate the opportunity for us
14 to talk to you today and also that you're going to try to
15 address the motion to dismiss in the next month or so. Like
16 you mentioned, we look forward to it, to the extent possible,
17 getting a resolution on that.
18         *THE COURT:* Okay. Thank you. And I totally
19 understand that. So we will try to get you caught up in the
20 case so that you all can proceed along because there are big
21 ramifications obviously in the case for both sides. So,
22 okay. Well, thank you all and have safe and happy holidays.
23         *MS. SVEDBERG:* Happy holidays. Thank you.
24         *MR. MACAULAY:* Thank you.
25         *MR. DODSON:* Thank you, Your Honor.

1              *THE COURT:*  Oh, by the way, I'm not sure if I'll
2     need to have a hearing on the motion to dismiss or not, but
3     can you all kind of give me some idea about your schedules
4     for the remainder of December or first week of January?  If
5     anybody -- I guess I just need to know if anybody's got any
6     days that they are not available.
7              *UNIDENTIFIED SPEAKER:*  Can we call Mrs. Snipes?
8     Would that be convenient?
9              *THE COURT:*  Yeah, that's fine.  That's fine.
10             *UNIDENTIFIED SPEAKER:*  How about we call Mrs.
11    Snipes?
12             *THE COURT:*  Okay.  That's fine.  Well, let me ask
13    it this way.  Are you all wanting a hearing?  Because if
14    you're not, then we don't have to worry about that.
15             *UNIDENTIFIED SPEAKER:*  It's up -- whatever you --
16    whatever is -- whatever would help you out, Your Honor.
17             *THE COURT:*  Okay.  All right.  Well, why don't you
18    just give her some available dates in the event that I decide
19    that I would like a hearing from now through -- from now
20    through the first week of January because we would hold the
21    hearing no later than the first week of January so that I can
22    get a ruling out.
23        Of course, we'd be writing along the way, but you have a
24    hearing no later than the first week of January.
25             *UNIDENTIFIED SPEAKER:*  All right, Your Honor.  We

```
 1   will do that.
 2              MS. SVEDBERG:  Thank you very much, Your Honor.
 3              UNIDENTIFIED SPEAKER:  Thank you, Your Honor.
 4              THE COURT:  Okay.  Bye.
 5              UNIDENTIFIED SPEAKER:  Thank you, Your Honor.
 6        (Hearing concluded.)
 7                              ***
 8        I certify that the foregoing is a correct transcript
 9   from the record of proceedings in the above-entitled matter.
10
11        s/Kathleen Richardson
12        _____    December 17, 2021
13        Kathleen Richardson, RMR, CRR
14
15
16
17
18
19
20
21
22
23
24
25
```