IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| John Hawkins and HawkLaw, PA, | ) | C/A No.:3:21-01319-JMC |
| | ) | |
| Plaintiffs, | ) | **PLAINTIFFS' MEMORANDUM OF** |
| | ) | **LAW OPPOSING DEFENANDS'** |
| v. | ) | **MOTION TO COMPEL** |
| | ) | |
| The South Carolina Commission on | ) | |
| Lawyer Conduct and The South Carolina | ) | |
| Office of Disciplinary Counsel, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## NATURE OF CASE

Plaintiffs filed this action pursuant to 42 U.S.C. § 1983 making facial and as applied challenges based on the First and Fourteenth Amendment. More specifically, the Complaint alleges Rules 7.1(c), 7.1(e) and 7.2(a) of the South Carolina Rules of Professional Conduct (hereinafter "RPC") are facially unconstitutional. The Complaint also makes as applied challenges based on Defendants' advertisements dating back to 2014 and continuing.

## STATEMENT OF FACTS

John Hawkins is an attorney who has been practicing law in South Carolina since 1994. Defendant, the South Carolina Office of Disciplinary Counsel (hereinafter "ODC"), has opened various investigations and filed Formal Charges of professional misconduct against Mr. Hawkins related solely to the content of his advertisements. These investigations and Formal Charges date back to 2014. Among other sanctions, ODC is currently seeking is to disbar Mr. Hawkins for otherwise protected First Amendment Speech.

Plaintiffs brought the current action making facial constitutional challenges to Rules 7.1(c), 7.1(e) and 7.2(a) of the RPC. In short, Plaintiffs' Complaint alleges these rules violate the First

1

Amendment's free speech clause.  As to the facial challenges, none of Defendants' current discovery requests that are the subject of its pending Motion to Compel are relevant to these facial challenges.  More specifically, the content of these three rules speak for themselves and Plaintiffs could not and do not have information or documentation relevant or reasonably calculated to lead to admissible evidence related to the facial constitutional challenges to Rules 7.1(c), 7.1(e) and 7.2(a) of the RPC.

As to Plaintiffs' as applied constitutional challenges and Defendants' pending Motion to Compel, Defendants seek "information about the decision-making process underlying the origination of the advertisements" (Defendants' Motion p. 9), "who and/or what entity produced the television advertisements" (Defendants' Motion p. 10) and "Plaintiffs' knowledge, motivations and possible intentions in drafting the scripts in the way they were drafted…" (Defendants' Motion p. 11).  This information is also not relevant and is not reasonably calculated to lead to discoverable information because the ads in question also speak for themselves.  As outlined and argued more fully below, these discovery requests are also improper because they are extremely burdensome on Plaintiffs and would require Plaintiffs to comb through thousands of documents, emails, etc. to respond and provide documentation.

Defendants' current Motion to Compel also seeks information related to Plaintiffs' allegations that ODC "enforces these rules selectively against Plaintiffs."  Plaintiffs' Complaint, paragraph 35.  As explained and argued more fully below, Defendants' don't need formal discovery for information about these allegations.  Rather, all they have to do is walk a few blocks from the Courthouse or do a google search to see how other attorneys are engaged in the same type of advertising that Defendants' seek to disbar Mr. Hawkins for.  See discussion *infra* pp. 7-9.

Defendants' pending Motion to Compel also complains about what Defendants characterize as "improper general objections." Defendants' Motion, p. 7. These would include objections such as "overly broad and unduly burdensome," "vague and ambiguous," and "not reasonably calculated to lead to admissible evidence." Ironically, in their own discovery responses, Defendants utilized these same objections dozens of times and refused to provide any meaningful responses, information or documentation. However, when Plaintiffs made these objections they went further and generally answered the interrogatories and RFPs by stating "notwithstanding the objections" and then providing responses or documentation. For this reason, it is not clear what additional answers, information or documentation Defendants seek with current Motion to Compel beyond the more specific categories discussed above and below.

## ARGUMENT

## LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Information within the scope of discovery "need not be admissible in evidence to be discoverable." *Fed. R. Civ. P. 26(b)(1)*.

## DEFENDANTS' DISOVERY AND MOTION TO COMPEL

As argued more fully below, Defendants' discovery is overly broad because it seeks information that is beyond the scope of the pleadings. More specifically, much of Defendants' Motion to Compel is geared to obtaining draft material that went into producing the ads in question. These discovery requests are overly broad because Plaintiffs' Complaint is limited to ads that were actually used and aired, not drafts of the ads. In addition, such requests are unduly burdensome as

3

they would require Plaintiffs to spend hours providing the requested information that has no relevance and is not reasonably calculated to lead to admissible or discoverable information.

In addition and as also argued more fully below, Defendants' Motion to Compel should be denied because Defendants are attempting to use discovery in this case to gin up additional investigations/charges related to attorney advertising. This is improper because it is beyond the scope of this action.

**I.     Interrogatories 5-9, 11-13, 15 and 17-18 and RFP's 7-10 are overly broad, beyond the scope of the pleadings in this action and are not reasonably calculated to lead to discoverable or admissible evidence.**

Interrogatories 5-9, 11-13, 15 and 17-18 are similar in nature and ask for largely the same type of information related to different ads. These interrogatories ask for the "names and addresses" of companies originating the ideas and scripts for the ads, the names and addresses of those who "produced" the ads and other information related to the drafting, making, editing, approval and final production of the ads in question. As acknowledged in Defendants' Motion, these discovery requests seek "information about the decision-making process underlying the origination of the advertisements" (Defendants' Motion p. 9), "who and/or what entity produced the television advertisements" (Defendants' Memorandum p. 10) and "Plaintiffs' knowledge, motivations and possible intentions in drafting the scripts in the way they were drafted…" (Defendants' Motion p. 11).

One of the reasons these interrogatories are improper and objectionable is because of the nature of this case and the pleadings in this case. As this court is aware, Plaintiffs' Complaint makes First Amendment freedom of speech claims. Because of those claims, what is important and relevant is the content of the ads themselves. In essence the court is being asked to determine whether the ads in question and the ads which are the focus of Interrogatories 5-9, 11-13, 15 and

4

17-18 are constitutionally protected speech. In this regard, the content and substance of the ads speak for themselves. "[I]nformation about the decision-making process underlying the origination of the advertisements" (Defendants' Motion p. 9) has no bearing on whether the ads are constitutionally protected speech. Similarly, "who and/or what entity produced the television advertisements" (Defendants' Memorandum p. 10) is irrelevant and is not reasonably calculated to lead to admissible or discoverable evidence because regardless of "who and/or what entity produced the television advertisements" the ads in question are Plaintiffs' ads. In this case, this court is only tasked with determining whether the ads that were finalized and aired are constitutionally protected speech. "[W]ho and/or what entity produced the advertisements" has no bearing the court's inquiry. Likewise, "Plaintiffs' knowledge, motivations and possible intentions in drafting the scripts in the way they were drafted…" (Defendants' Motion p. 11) is not relevant because regardless of "Plaintiffs' knowledge, motivations and possible intentions..." the only issue before this court is whether the finalized ads at issue are constitutionally protected speech. Plaintiffs' "motivations and possible intentions" play no role in whether the ads in question are constitutionally protected speech because the substance and content of the ads speaks for themselves regardless of "motivations and possible intentions."

In addition, the requested information and particularly RFPs 7-10 are overly broad and unduly burdensome. These RFPs require "communications by and between Plaintiffs" and companies Plaintiffs used to advertise (RFP 7). They also request "all request for proposals and/or solicitation(s) for the creation and/or production" for the ads in question (RFPs 9 and 10). To understand the overly broad and unduly burdensome nature of these requests it is helpful to consider exactly what these requests would require Plaintiffs to produce and how difficult and burdensome it would be to produce these documents and things. As worded, the RFPs would

5

require Plaintiffs to produce every single email, text message, letter or other communication pertaining to over 50 television ads with the company(s) who actually produced the ads. Simply identifying which emails, texts and communications this would include would require Plaintiffs to go back over seven (7) years and comb through old emails, text message and other communications. Even accessing such communications may not be possible given the time period covered and how long the request goes back.

The requests themselves are so broadly worded that they would require the production of draft scripts, changes to draft scripts, etc. However, regardless of what may be contained in the draft scripts that has no bearing on the final ads themselves and this court is only being asked to determine whether the final ads themselves are constitutionally protected speech. Even if the draft scripts contained patently false and misleading information that the government could ban out under *Central Hudson*, Plaintiffs' Complaint is simply not asking for this court to pass judgment on the drafts of ads that were not aired or run. Rather, Plaintiffs are asking this court to pass constitutional judgment on a limited number of ads they actually aired. Plaintiffs should not be compelled with the burdensome task requested by the RFPs given the pleadings in this case.

To further understand how overly broadly and unduly burdensome these requests are it is also helpful to consider what the applicable Rules of Professional Conduct require of lawyers in South Carolina. South Carolina lawyers are required to "keep a copy or recording of every advertisement or communication for two (2) years after its last dissemination along with a record of when and where it was disseminated." Rule 407, SCACR, Rule 7.2(b), RPC. This information has already been provided and produced. Under the advertising rules, lawyers are not required to keep drafts of ads, are not required keep communications between themselves and the companies that produce and run their ads and they are not required to keep any of the other information

6

requested in RFPs 7-10.  The reason the Rules of Professional Conduct do not require more is because doing so would place an undue burden on lawyers and would not be necessary since what is important and relevant is the content of the ads that are actually run and viewed by the public. Such an analysis does not change in this court under the First Amendment because what is relevant is the final ads that were run and aired and whether those ads are protected commercial speech.

## II.     Defendants are attempting to use interrogatories 22 and 23 for improper purposes.

To understand how and why Defendants are attempting to use interrogatories 22 and 23 for improper purposes it is helpful to understand how ODC begins an investigation and to examine the current Formal Charges against Mr. Hawkins.

Pursuant to its rule making authority granted to it by the South Carolina Constitution, the South Carolina Supreme Court created the ODC and provides specific rules about "powers and duties" of ODC.  See South Carolina Appellate Court Rules, Rule 413 and specifically Rule 5(b) thereto.  Under Rule 5(b)(1) ODC is empowered to "receive and screen complaints, dismiss complaints, issue letters of caution, refer complaints to other agencies when appropriate…"  In short, ODC's "powers and duties" begin when it receives a complaint about a lawyer's conduct. See Rule 5(b).  ODC does not, *sua sponte*, open investigations.  Under Rule 5 to Rule 413, it is simply not vested with the power or authority to unilaterally open an investigation.  Rather, it only opens an investigation based on an outside complaint from another entity or person.  See generally, Rule 5(b) and Exhibit 6 to Defendant's Motion to Compel, page 3 of 4, fourth full paragraph beginning "I also disagree…"

In this case and as it relates to interrogatories 22 and 23, ODC opened an investigation into Mr. Hawkins based on a complaint it received from one of Mr. Hawkins' former associates at Hawk Law.  That investigation led ODC to file a Formal Charges against Mr. Hawkins.  In the

7

Formal Charges, ODC alleges Mr. Hawkins violated the RPC when he advertised prior settlements without "include[ing] any details of the severity of the accident forming the basis for the settlement[s]…" The problem for ODC is that several other personal injury lawyers and law firms do the same thing – they advertise large and impressive prior settlements without "include[ing] any details of the severity of the accident forming the basis for the settlement[s]…" A quick google search reveals several South Carolina law firm websites doing the same thing. However, ODC only accuses John Hawkins of professional misconduct and seeks to disbar him for this conduct. In fact, one billboard a few blocks from the Matthew J. Perry, Jr. Courthouse does exactly that – it boasts about a prior verdict without "include[ing] any details of the severity of the accident forming the basis for the settlement[s]…" Even Richard Smith, who is the former Hawk Law associate who filed the complaint giving rise to the current Formal Charges boasts in a video on his website: "I have settled hundreds if not thousands of cases ranging anywhere from a few thousand dollars to over two million dollars." See https://www.smithinjurylawyerspa.com/settlements/. However, like countless other lawyers and law firms including Plaintiffs to this action, Mr. Smith didn't "include any details of the severity of the accident forming the basis for the [over two million dollars] settlement." Based on this uneven and unequal treatment, Plaintiffs' Complaint makes specific allegations giving rise to interrogatories 22 and 23. See generally, Plaintiffs' Complaint, paragraph 35.

The problem with these specific interrogatories and with Defendants' pending Motion to Compel related to these interrogatories is that Defendants don't need discovery for the information they now seek. As noted above, a quick stroll from the Matthew J. Perry, Jr. Courthouse or a google search would give them the information they are seeking. Rather, Defendants are asking these interrogatories so they can use Plaintiffs' responses as a complaint against other attorneys

and law firms. In short, they are attempting to use discovery in this case to start formal investigations they could not otherwise start. Defendants true intentions are clear because Plaintiffs' Counsel offered to supplement his interrogatory responses and identify other lawyers and law firm who advertise using prior settlements or verdicts but who don't "include any details of the severity of the accident forming the basis for the … settlement." See Exhibit 6 to Defendant's Motion to Compel, page 3 of 4, Fourth full paragraph beginning "I also disagree…" Specifically, Plaintiffs' Counsel wrote: "If ODC will agree that supplemental discovery responses to these interrogatories will not be the basis for ODC opening investigations of other lawyers or attorneys, Plaintiffs will also supplement their responses to these interrogatories in the next ten days." Defendants refused this offer outright. See Exhibit 1 hereto. In an email dated December 13, 2021 at 11:23 a.m. Defense Counsel wrote: "about your clients' responses to interrogatories 22-23, we do not believe that your responses should be contingent upon some type of assurance from ODC as you require." Exhibit 1, second full paragraph.

There is simply no reason for Defendants to refuse this request unless they were attempting to use interrogatory responses for exactly the purpose described above. This point is abundantly clear for at least two reasons. First, the information requested in interrogatories 22 and 23 is already available to Defendants. Second, Defendants have no other plausible reason for refusing Plaintiffs' Counsel's request.

Defendants Motion to Compel as to these interrogatories should be denied. Information responsive to these interrogatories is equally available to Defendants and Defense Counsel as it is to Plaintiffs and Plaintiffs' Counsel. Just as importantly, the Court shouldn't compel Plaintiffs to bear false witness against other members of the bar who Plaintiffs firmly believe did not violate

the RPC by advertising prior settlements and verdicts without "include[ing] any details of the severity of the accident forming the basis for the … settlement [or verdict]."

### III. The remainder of Defendants' Motion to Compel lacks merit and should be denied.

The remainder of Defendants' Motion to Compel lacks merit and should be denied. Defendants complain about Plaintiffs' general objections that include objections based on being "overly broad and unduly burdensome," "vague and ambiguous," and "not reasonably calculated to lead to admissible evidence." As an initial matter, the irony of Defendants' arguments should not be lost on the court. Defendants' own discovery responses, which are the subject of a Motion to Compel, are littered with the same objection. More importantly, even after giving these objections, Plaintiffs actually answered discovery. In general, when making these general objections, Plaintiffs would often follow the objection with "[n]otwithstanding the objection" and would then proceed to answer the specific interrogatory or RFP. In their own discovery responses, Defendants simply hid behind these objections without providing any meaningful information to the discovery that was asked.

Most importantly, it is not clear what information or documentation Defendants are seeking in asking the court to overrule the general objections. Aside from the general categories of discovery addressed above, Defendants' Motion to Compel as it relates to general objections does not seem to seek any further information or documentation.

Indeed, it is unclear what additional information could possibly be needed. For example, Plaintiffs make facial challenges to RPC, Rules 7.1(c), 7.1(e) and portions of 7.2(a). These rules stand on their own and given the framework outlined in *Central Hudson* there is no information or documents Plaintiffs would have that would be relevant to a First Amendment analysis. Even with the as applied challenges, the substance and content of the ads themselves are not in question.

10

The ads are Plaintiffs ads. They say what they say. They are either constitutionally protected speech or they are not. There is little, if any, information or documentation Plaintiffs could supply that would be relevant to this court's First Amendment analysis.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel should be denied. Plaintiffs also request that the court tax Defendants with costs and attorney's fees related to this discovery motion.

Respectfully submitted,


s/ Robert D. Dodson
Robert D. Dodson
Federal I.D. Number 7249
Law Offices of Robert Dodson, P.A.
1722 Main Street, Suite 200
Columbia, SC  29201
Telephone (803) 252-2600
Facsimile (803) 310-2545
Email: rdodson@rdodsonlaw.com

Columbia, South Carolina
January 11, 2022