### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH CAROLINA
### COLUMBIA DIVISION

| | |
|---|---|
| John Hawkins and HawkLaw, PA, ) | Civil Action No.: 3:21-cv-01319-JMC |
| ) | |
| Plaintiffs, ) | |
| ) | **ORDER AND OPINION** |
| v. ) | |
| ) | |
| The South Carolina Commission on ) | |
| Lawyer Conduct and the South Carolina ) | |
| Office of Disciplinary Counsel, ) | |
| ) | |
| Defendants. ) | |

Plaintiffs John Hawkins ("Hawkins") and HawkLaw, PA ("HawkLaw") (together, "Plaintiffs") filed this action against Defendants, the South Carolina Commission on Lawyer Conduct (the "Commission") and the South Carolina Office of Disciplinary Counsel (the "ODC") (collectively, "Defendants"), pursuant to 42 U.S.C. § 1983 challenging the constitutionality of South Carolina's Rules of Professional Conduct for attorneys and requesting declaratory and injunctive relief. (ECF No. 1.)  Plaintiffs, a licensed South Carolina attorney and a law firm organized under the laws of South Carolina, allege that Defendants have implemented and attempted to enforce various rules regulating their commercial speech in violation of the First and Fourteenth Amendments.  (*Id.* at 1.)  Specifically, Plaintiffs aver that South Carolina Rule of Professional Conduct 7.1(e) is facially unconstitutional and unconstitutional as applied to Plaintiffs; that portions of Rule 7.2(a) are facially unconstitutional and unconstitutional as applied to Plaintiffs' television advertisements; Rule 7.1(c) is facially unconstitutional and unconstitutional as applied to Plaintiffs' advertisements; and that Defendants' "selective enforcement" of Rule 7.1 and 7.2 to particular advertisements is unconstitutional.  (ECF No. 1 at 4–12 ¶¶ 20–71.)

1

This matter is before the court on Defendants' Motion to Dismiss and Memorandum in Support. (ECF Nos. 26, 26-1.) Defendants ask the court to dismiss the Complaint based on the abstention doctrine established by *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny and pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(c). (ECF No. 26 at 1.) For the reasons set forth below, the court **GRANTS** Defendants' Motion to Dismiss (ECF No. 26) and **DISMISSES** this action.

## I.     RELEVANT BACKGROUND

This case arises from the Commission and the ODC's disciplinary investigations into Plaintiffs' legal services advertisements. (ECF No. 1 at 4 ¶ 17.) In South Carolina, regulation of the practice of law is entirely within the province of the South Carolina Supreme Court. S.C. Const. art. V, §§ 4, 5; S.C. Code Ann. § 40-5-10 (West 2022). The South Carolina Supreme Court created the Commission to investigate complaints and conduct disciplinary proceedings involving attorneys licensed in South Carolina. Rules 3 & 4, RLDE, Rule 413, SCACR (2020). The ODC has the authority to receive and screen complaints against lawyers, conduct preliminary investigations, make recommendations to an investigative panel of the Commission, and, upon authorization, conduct full investigations. Rule 5, RLDE, Rule 413, SCACR. The ODC also has the authority to file formal charges when directed to do so by an investigative panel, to prosecute formal charges, and to file briefs and other appropriate petitions with the South Carolina Supreme Court. *Id.*

In 2014, Plaintiffs aver that the ODC opened a formal investigation into Hawkins after receiving an anonymous complaint asserting that Plaintiffs' use of the phrase "expect more" in their advertisements violated Rule of Professional Conduct 7, governing lawyer advertising. (ECF No. 28 at 2.) Plaintiffs contend that the ODC required them to produce all advertisements they

had produced during the prior two (2) years, whether such advertisements had aired or not. (*Id.*) During the investigation, the ODC told Hawkins' attorney that the ODC would not prosecute Hawkins for use of the name "HawkLaw" because "Hawk" was part of his legal name. (*Id.*) In 2015, the ODC investigation was concluded with a "letter of caution" to Hawkins warning him against use of the phrase "expect more" in future advertisements. (*Id.* at 2–3; ECF No. 28-1 at 3.)

In 2017, the ODC opened a formal investigation after receiving another complaint about Plaintiffs' 2017 television advertisements, this time looking into Plaintiffs' use of the nickname "the Hawk" and trade name "HawkLaw." (ECF No. 28 at 3.) In 2018, the ODC opened a second formal investigation based on the content of Plaintiffs' 2018 advertisements, which included the sound of a screeching hawk and paid actors dancing while flapping their arms. (*Id.* at 3–4.) In 2019, the ODC opened a third formal investigation based on the content of Plaintiffs' 2019 advertisements. (*Id.* at 4.)

On April 20, 2021, the ODC filed formal charges against Hawkins based on the 2017, 2018, and 2019 investigations alleging violations of South Carolina Rules of Professional Conduct 7.1(a)–(c), (e), and 7.2(a). (ECF Nos. 13, 28.) The relevant provisions of Rule 7.1 provide:

> A lawyer shall not make false, misleading, or deceptive communications about the lawyer or the lawyer's services. A communication violates this rule if it:
> (a) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading;
> (b) is likely to create an unjustified expectation about results the lawyer can achieve, or states or implies that the lawyer can achieve results by means that violate the Rules of Professional Conduct or other law;
> (c) compares the lawyer's services with other lawyers' services, unless the comparison can be factually substantiated;
> . . .
> (e) contains a nickname, moniker, or trade name that implies an ability to obtain results in a matter.

Rule 7.1, RPC, Rule 407, SCACR.

3

>Rule 7.2(a) states that:
>
>Subject to the requirements of this Rule and Rules 7.1 and 7.3, a lawyer may advertise services through written, recorded or electronic communication, including public media. All advertisements shall be predominately informational such that, in both quantity and quality, the communication of factual information rationally related to the need for and selection of a lawyer predominates and the communication includes only a minimal amount of content designed to attract attention to and create interest in the communication.

Rule 7.2(a), RPC, Rule 407, SCACR.

On May 4, 2021, Plaintiffs filed this action pursuant to 42 U.S.C. § 1983 requesting declaratory and injunctive relief. (ECF No. 1.) On June 7, 2021, the chair of the Commission hearing panel granted a motion to stay Hawkins' answer to formal charges in the underlying disciplinary proceedings until the conclusion of this action. (ECF No. 28-7.) On August 17, 2021, the stay was temporarily lifted to allow the ODC to voluntarily dismiss the formal charges related to the 2017 investigation with prejudice and the formal charges related to the 2018 and 2019 investigations without prejudice. (ECF No. 28-10.) On October 11, 2021, the ODC refiled formal charges based on the 2018 and 2019 investigations, alleging violations of Rules of Professional Conduct 7.1(a)–(c) and 7.2(a). (ECF No. 28-12.)

On October 11, 2021, the same day the ODC refiled formal charges against Hawkins, Defendants filed a Motion to Dismiss this case pursuant to Federal Rules of Civil Procedure 12(c) and 12(b)(1). (ECF No. 26.) Defendants contend the court should enter judgment on the pleadings and dismiss this case with prejudice based upon the *Younger* abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971). (ECF No. 26 at 1–2.) Alternatively, Defendants argue the court should dismiss certain claims for lack of subject matter jurisdiction because Plaintiffs lack standing to pursue their claims. (*Id.* at 2.) Finally, Defendants assert that the court should dismiss Plaintiffs' claims seeking declaratory relief under Federal Rule of Civil Procedure 12(c) because

4

no good reason exists to resolve these issues in this court when they would be resolved more efficiently in the pending attorney discipline proceedings. (*Id.*) Because the court grants Defendants' Motion to Dismiss based on *Younger* abstention, the court declines to discuss Defendants' additional grounds for dismissal. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) ("[D]istrict courts do not overstep Article III limits when they . . . abstain under *Younger* [] without deciding whether the parties present a case or controversy.").

## II.     LEGAL STANDARD

*Younger* abstention applies to three (3) "exceptional" categories of cases: (1) "ongoing state criminal prosecutions," (2) "civil enforcement proceedings," and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Comms. v. Jacobs*, 571 U.S. 69, 78 (2013). After the court determines that the underlying proceeding fits into one of these categories, it should then determine (1) whether the state proceeding is judicial in nature, (2) whether the proceeding implicates important state interests, and (3) whether there exists an adequate opportunity in the state proceeding to raise constitutional challenges. *Middlesex Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). If these elements are satisfied, a district court should abstain unless there is a showing of "bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Id.* at 435.

## III.     ANALYSIS

Initially, the court notes that state attorney disciplinary proceedings fall within the domain of *Younger* abstention because they are "akin to a criminal proceeding" where, like the proceedings at issue, a hearing is preceded by an investigation and formal complaint, an agency of the state's supreme court initiates the hearing, and the purpose of the hearing is to determine whether a lawyer

5

should be disciplined for his failure to meet the state's standards of professional conduct. *Sprint*, 571 U.S. at 81 (citing *Middlesex*, 457 U.S. at 433–35); *see also Wilson v. Emond*, 373 F. App'x 98, 100 (2d Cir. 2010); *Konan v. Sengel*, 239 F. App'x 780, 781 (4th Cir. 2007) (per curiam).

Turning to the considerations set forth in *Middlesex*, the court finds that the underlying disciplinary proceedings in this case are judicial in nature, implicate important state interests, and provide adequate opportunity for Plaintiffs to raise constitutional challenges. First, the court finds that South Carolina attorney disciplinary proceedings are judicial in nature. In assessing the judicial nature of a proceeding, courts "examine the nature and effect of the proceeding and not the form of it." *Allstate Ins. Co. v. W. Va. State Bar*, 233 F.3d 813, 817 (4th Cir. 2000) (quoting *District of Columbia Ct. App. v. Feldman*, 460 U.S. 462, 478 (1983)). "A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." *Id.* (citing *Feldman*, 460 U.S. at 477). In South Carolina, disciplinary proceedings begin with screening, followed by a preliminary investigation, full investigation, filing of formal charges, discovery, hearing, and a review by the South Carolina Supreme Court. *See* Rules 19, 22, 23, 25, 26, 27, RPC, Rule 413, SCACR. Accordingly, South Carolina's attorney disciplinary proceedings are judicial in nature.

Second, the court notes that regulating the conduct of attorneys licensed in the state implicates a vital state interest, and states have traditionally exercised extensive control over the professional conduct of attorneys. *Middlesex*, 457 U.S. at 434. The United States Supreme Court has explicitly recognized that states "have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions." *Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975).

Further, "[t]he interest of the [s]tates in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.'" *Id.* (citations omitted). Because regulation of attorney conduct implicates a vital state interest, this factor weighs in favor of abstention.

Third, Plaintiffs have the opportunity to raise their constitutional claims in the disciplinary hearing and on appeal to the South Carolina Supreme Court, further supporting this court's abstention. *See Bieber v. S.C. Comm'n on Lawyer Conduct*, No. 6:08-cv-002215, 2008 WL 4442629, at *3 (D.S.C. Sept. 24, 2008) ("Nothing in the disciplinary rules bars Plaintiff from raising his First Amendment challenges."). Plaintiffs bear the burden of showing that a clear state-law bar prevents them from raising their constitutional claims in the state proceedings, *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987), and Plaintiffs have not set forth any law or other obstruction to their ability to raise these claims. *See Middlesex*, 457 U.S. at 436; *Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 78 (2d Cir. 2003); *Ohio Civ. Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 629 (1986). Although Plaintiffs contend that "neither the ODC nor the Commission on Lawyer Conduct is vested with the authority to 'Issue an Order(s) declaring Rules 7.1(c), 7.1(e) and 7.2(a) of the South Carolina Rules of Professional Conduct facially unconstitutional as written[,]'" (ECF No. 28 at 14), nothing in the disciplinary rules prohibits Plaintiffs from raising their constitutional claims before these entities. Additionally, even if the Commission and the ODC did not have the authority to hear such claims, the South Carolina Supreme Court certainly has such authority. *See e.g.*, *In re Anonymous Member of S.C. Bar*, 709 S.E.2d 633, 637–38 (S.C. 2011) (resolving a First Amendment challenge to a provision of the South Carolina disciplinary rules raised during Supreme Court review of attorney disciplinary proceedings); *see also Ohio Civ. Rights Comm'n*, 477 U.S. at 629 (finding that the

7

opportunity to raise constitutional claims in state-court judicial review of an administrative proceeding is sufficient under *Middlesex*). Where, as here, vital state interests are involved, a federal court should abstain "unless state law clearly bars the interposition of the constitutional claims." *Middlesex*, 457 U.S. at 432 (citing *Moore v. Sims*, 442 U.S. 415, 426 (1979)). Accordingly, Plaintiffs have failed to show any state-law impediment to posing their federal claims that would counsel against abstention in this case.

Plaintiffs assert that *Younger* abstention is not appropriate because there are no pending state court proceedings in which HawkLaw is a party. (ECF No. 28 at 9.) In certain circumstances, however, "*Younger* may apply to the claims of third-parties who are not directly involved in any pending state proceeding." *Spargo*, 351 F.3d at 82. In *Spargo*, the United States Court of Appeals for the Second Circuit analyzed the application of *Younger* abstention to the constitutional challenges of a state judge and two (2) of his political supporters to certain state rules of judicial conduct in New York. First, the court determined that *Younger* abstention applied to the state judge plaintiff's claims. *Id.* at 75–81. Next, the court considered whether the claims of the political supporter plaintiffs were "sufficiently intertwined" with those of the state judge to make abstention applicable to all of the claims. *Id.* at 81–82. Ultimately, the court concluded that, because the judicial conduct rules did not apply to the political supporter plaintiffs, their claims were "entirely derivative" of the state judge plaintiff's claims. *Id.* at 83. As such, the court found that "the legal analysis of the plaintiffs' claims [was] unavoidably intertwined and inseparable[,]" and the case presented "one of the narrow circumstances in which *Younger* may properly extend to bar claims of third-parties who are not directly involved in the pending state action." *Id.* at 84. Like the political supporter plaintiffs in *Spargo*, HawkLaw is not subject to the Rules of Professional Conduct, which apply only to attorneys licensed in the state, and, therefore, its claims are "entirely

derivative" of Hawkins' claims. As such, Plaintiffs' claims are "unavoidably intertwined and inseparable" and this case fits into one of the narrow circumstances where it is appropriate to extend *Younger* abstention to all of Plaintiffs' claims.

Plaintiffs also argue that abstention is not appropriate because their claims regarding provisions (c) and (e) of Rule of Professional Conduct 7.1 are not at issue in any state court proceeding as a result of Defendants' dismissal of the charges against Hawkins based upon those provisions. (ECF No. 28 at 10.) However, this argument does not negate the existence of parallel state proceedings involving these parties and issues. First, the relevant inquiry is whether the state proceeding was pending at the time the federal action was instituted, *see Pennzoil*, 481 U.S. at 17 (considering application of *Younger* based on the situation that existed on the day the case was filed in federal court), and the charges brought under Rule of Professional Conduct 7.1(c) were pending at the time this action was filed. Second, "[u]nder [the] *Younger*-abstention doctrine, interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been *or could be presented* in ongoing state judicial proceedings that concern important state interests." *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 237–38 (1984) (emphasis added) (citing *Middlesex*, 457 U.S. at 432–37). Defendants' dismissal of the charges against Hawkins premised upon some of the challenged provisions of the Rules of Professional Conduct does not nullify the existence of parallel state proceedings in which their federal claims could be presented.

Plaintiffs further assert that abstention is not appropriate because the federal litigation has moved past the "embryonic stage." (ECF No. 28 at 15–16.) This argument misses the mark. Courts have held that "[i]f there have been proceedings of substance and the federal litigation thus has moved beyond the embryonic stage *before the state action commences*, the Supreme Court has

9

made it clear that federal courts do not have the discretion to abstain from exercising jurisdiction." *See, e.g.*, *For Your Eyes Alone, Inc. v. City of Columbus, Ga.*, 281 F.3d 1209, 1217 (11th Cir. 2002) (emphasis added).  However, in such cases, determination of whether the federal litigation had moved beyond the "embryonic stage" was only necessary because the federal litigation began before the state proceedings, which is not the case here.  *See, e.g.*, *Tokyo Gwinnett, LLC v. Gwinnett Cty., Ga.*, 940 F.3d 1254, 1271 (11th Cir. 2019); *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 728 (9th Cir. 2017).

Finally, Plaintiffs have not made any showing of bad faith, harassment, or other extraordinary circumstance that would make abstention inappropriate in this case.  Although Plaintiffs have not directly asserted that the charges brought by Defendants are the result of bias or harassment, they suggest that the Supreme Court and the Commission will not find the rules drafted by the Supreme Court unconstitutional.  (ECF No. 28 at 15.)  The court has no reason to believe that the members of the Commission, many of whom are lawyers, or the justices of the South Carolina Supreme Court would refuse to consider a claim that the rules they are enforcing violate federal constitutional guarantees.  *See Middlesex*, 457 U.S. at 435.  Even "[m]inimal respect for the state processes, of course, precludes any *presumption* that state courts will not safeguard federal rights." *Id.* at 431 (emphasis original).  Making no such presumption, the court rejects this argument.

For the above-mentioned reasons, the court finds that the state attorney disciplinary proceedings at issue fall with the province of the *Younger* abstention doctrine and the proceedings are judicial in nature, implicate important state interests, and provide adequate opportunity for Plaintiffs to raise their constitutional challenges.  As such, principles of comity and federalism counsel the court's abstention from this matter.

## IV.     CONCLUSION

Based upon the foregoing, the court **GRANTS** Defendants' Motion to Dismiss (ECF No. 26) based on the *Younger* abstention doctrine and **DISMISSES** this action.  As a result, Plaintiffs' Motion to Compel (ECF No. 25) and Defendants' Motion to Compel (ECF No. 47) are moot.

**IT IS SO ORDERED**.

*J. Michelle Childs*
United States District Judge

February 17, 2022
Columbia, South Carolina

11