1

```
1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF SOUTH CAROLINA
2                           COLUMBIA DIVISION

3       _____
                                        )
4       JOHN HAWKINS and HAWKLAW, P.A., )
                                        )
5              Plaintiffs,              )   Docket No. 3:21-cv-01319
                                        )
6              vs.                      )   Columbia, SC
                                        )   January 6, 2022
7       THE SOUTH CAROLINA COMMISSION   )
        ON LAWYER CONDUCT and THE SOUTH )
8       CAROLINA OFFICE OF DISCIPLINARY )
        COUNSEL,                        )
9                                       )
               Defendant.               )
10      _____)

11              BEFORE THE HONORABLE J. MICHELLE CHILDS
                UNITED STATES DISTRICT JUDGE, PRESIDING
12                        MOTION HEARING

13

14      A P P E A R A N C E S:

15      FOR THE PLAINTIFFS:

16      ROBERT DANIEL DODSON and MICHAEL VIRZI
        1722 Main Street
17      Columbia, SC 29201
        803-252-2600
18      rdodson@rdodsonlaw.com

19      FOR THE DEFENDANTS:

20      SARA SOFIA SVEDBERG
        1230 Main Street
21      Columbia, SC 29201
        803-771-8900
22      ssvedberg@nexsenpruet.com

23

24      COURT REPORTER:                 KAREN V. ANDERSEN, RMR, CRR
                                        United States Court Reporter
25                                      901 Richland Street
                                        Columbia, SC  29201
```

2

A P P E A R A N C E S (continued)

ANGUS H. MACAULAY, JR

P.O. Drawer 2426
Columbia, SC 29202
803-253-8279
amacaulay@nexsenpruet.com

BRITTANY NICOLE CLARK
55 Camperdown Way
Greenville, SC 29601
864-282-1167
bclark@nexsenpruet.com

1     THE COURT:  I call to order Civil Action No.

2  3:21-cv-01319, John Hawkins and HawkLaw, PA vs. the South

3  Carolina Commission on Lawyer Conduct and the South Carolina

4  Office of Disciplinary Counsel.  I have here representing

5  plaintiff Robert Dodson -- and who else do you have with you?

6     MR. DODSON:  Michael Virzi.

7     THE COURT:  Thank you and welcome.  And then for the

8  Commission, Sarah Svedberg.  Close enough?

9     MS. SVEDBERG:  Yes.

10     THE COURT:  Go ahead and say it.

11     MS. SVEDBERG:  Thank you.  Perfect.

12     THE COURT:  And then Angus Macaulay and Brittany

13  Clark.  Okay.  Welcome.  Welcome.  Okay.

14     So plaintiff has filed this action against these

15  defendants challenging the constitutionality of the South

16  Carolina Rules of Professional Conduct for attorneys and

17  requesting declaratory and injunctive relief.  And so we are

18  here on defendant's motion to dismiss.  And y'all can argue

19  from counsel table or come to the podium, whichever is more

20  comfortable.  But we are ready to proceed.

21     MS. SVEDBERG:  Thank you, Your Honor.  If it's okay

22  with you, may I approach the podium?

23     THE COURT:  Yes.  And you can take your mask off.

24     MS. SVEDBERG:  May it please the Court.  Thank you

25  for the opportunity to appear before you today.  On behalf of

1    the defendants, the South Carolina Commission on Lawyer

2    Conduct and the South Carolina Office of Disciplinary

3    Counsel, my colleagues and I are here today to ask that this

4    Court grant the defendant's motion for judgment on the

5    pleadings under Rule 12(c), and that this Court dismiss with

6    prejudice the complaint filed by the plaintiffs, John Hawkins

7    and HawkLaw, PA.

8            Your Honor, we've also moved in the alternative

9    under Rule 12(b)(1), which I would address at the end.

10            THE COURT:  Okay.

11            MS. SVEDBERG:  It is the defendant's position, as

12    set out fully in our briefing before this Court, that the

13    plaintiffs' case must be dismissed on the strong policy

14    grounds articulated by the U.S. Supreme Court in *Younger v.*

15    *Harris*, and the Court must abstain.

16            Under *Younger*, a district court must abstain even if

17    jurisdiction exists when there's an ongoing or pending state

18    judicial proceeding that was instituted either before this

19    federal court action or before substantial progress was made

20    in the federal court action that implicates the important

21    state interest and that provides the plaintiff with an

22    adequate opportunity to raise the federal constitutional

23    claims advanced here in the federal court action.

24            This abstention doctrine reflects a strong policy,

25    according to the U.S. Supreme Court, against federal

1    intervention in state judicial proceedings in the absence of

2    a great and imminent irreparable injury to the federal

3    plaintiff.  This same doctrine also recognizes that state

4    courts are fully competent to hear and decide issues of

5    federal law.

6            THE COURT:  And which specific abstention doctrine

7    are you relying on?

8            MS. SVEDBERG:  Abstention under *Younger v. Harris*,

9    Your Honor.

10           THE COURT:  Okay.  Thank you.

11           MS. SVEDBERG:  Looking at this test under *Younger v.*

12   *Harris* and based on the plaintiff's complaint treated as true

13   for purposes of this Rule 12(c) motion, it is clear that

14   abstention is warranted here.  First, elements one and two of

15   the *Younger* test are met because there's both an ongoing

16   state judicial proceeding that was instituted before this

17   federal action and that ongoing proceeding implicates a

18   critical and important state interest.

19           THE COURT:  When we have the ongoing state judicial

20   judicial proceeding, which a lot of the LDC cases obviously

21   go to the Supreme Court, is there any distinction on that

22   part of the case going to the Supreme Court but then this

23   Court keeping the issue with respect to the constitutionality

24   of the --

25           MS. SVEDBERG:   There's no state law or procedural

1    bar for any federal claims brought before the Commission and

2    then going before the State Supreme Court then being

3    petitioned to go to the U.S. Supreme Court.  Same principles

4    apply there.  There's nothing that precludes the federal

5    claims raised here from being raised in the state

6    disciplinary proceedings.  In fact, and I was going to

7    address that in a little bit, there's a requirement under

8    state rules that the South Carolina Supreme Court review the

9    state disciplinary actions at issue here.  And then, of

10   course, there's always the opportunity for a petition for

11   cert to the U.S. Supreme Court.  Does that answer your

12   question, Your Honor?

13          THE COURT:  Yes.

14          MS. SVEDBERG:  With your permission, Your Honor, I

15   would like to address element two first for a variety of

16   reasons.  This is whether there's an important state interest

17   here.  We submit that South Carolina has an obvious and

18   compelling interest in regulating both the practice of law

19   and conducting disciplinary proceedings.  While this is not

20   necessarily disputed here by the opposing party, I needed to

21   speak briefly about the state interest because of the rules

22   and the proceedings in place.  And I think, Your Honor, you

23   just already asked me about that.  So if you want me to, I

24   can skip ahead.

25          THE COURT:  That's okay.  If you had anything else

1     to add on that argument, that's fine.

2             MS. SVEDBERG:  No.  I mainly wanted to add that

3     under the State Constitution, the South Carolina Supreme

4     Court has jurisdiction to both regulate the admission of the

5     practice to law and the disciplinary actions that are at

6     issue in the underlying proceedings.  And the fact is that

7     the U.S. Supreme Court pursuant to that authority has adopted

8     the Rules of Professional Conduct which are modeled after the

9     ABA model rules, which are the ones that subject lawyers to

10    discipline based on ethics violations.  And I will submit

11    that here, Your Honor, those Rules of Professional Conduct

12    are the ones that are being challenged.

13            Also I wanted to add that the lawyer discipline that

14    is under the jurisdiction of the U.S. -- or the State Supreme

15    Court, I'm sorry, is administered through the Commission on

16    Lawyer Conduct and the South Carolina Office of Disciplinary

17    Counsel.  And those are the defendants here today.

18            The Commission was created by the Rule 4013 of the

19    South Carolina appellate court rules.  And it consists of 34

20    members of the Bar in South Carolina and 16 members of the

21    public.  And their panels are made up of not just lawyers but

22    also members of the public at all times.

23            The Supreme Court appoints a member of the state bar

24    to become the disciplinary counsel whose office is

25    responsible for both screening -- or receiving the complaints

1    of ethics violations by lawyers in the state, screening them

2    and investigating them.  And if formal charges are brought,

3    the ODC is responsible for prosecuting them as well.

4         With respect to the Commission, our other client,

5    they are responsible for also investigating in panel format

6    and also hearing all complaints before it goes to the State

7    Supreme Court.

8         THE COURT:  The Supreme Court takes this up in the

9    original jurisdiction, these complaints?  So, in other words,

10   these don't circulate at the circuit level and then go to the

11   Court of Appeals, they go directly to the Supreme Court?

12        MS. SVEDBERG:  No.  So under Rule 413, once the

13   Commission -- if after receiving screening and investigating,

14   they determine that the formal charges should be filed and

15   then -- which triggers then further investigations and a

16   hearing before the Commission, all transcripts and the report

17   of recommendations, whether it's recommendations for

18   sanctions, recommendations to dismiss, all of that goes

19   straight from the Commission to the State Supreme Court for

20   review.  And the State Supreme Court decides -- the State

21   Supreme Court can decide to adopt the recommendations by the

22   Commission, they can modify the recommendations, or they can

23   dismiss them.

24        And to your point, Your Honor, in terms of whether

25   this goes then from the State Supreme Court to the U.S.

1    Supreme Court, there are cases in the past where there can be

2    disagreement along the way.  You know, the Commission can

3    decide to dismiss or the Commission can decide to send a

4    recommendation for sanctions or some other issue to the State

5    Supreme Court.

6            And we have cases in the past In re Primus, *In re*

7    *Primus* is one of them, where the State Supreme Court agreed

8    with the Commission to impose sanctions on a lawyer.  And the

9    lawyer petitioned for cert to the U.S. Supreme Court, and the

10   U.S. Supreme Court rejected it, reversed and remanded it.  So

11   this is a well-established process of judicial review

12   post-disciplinary proceedings before the ODC and the

13   Commission.

14           With that as a backdrop, Your Honor, I would like to

15   turn back to the first requirement under *Younger v. Harris*,

16   and that is that there needs to be an ongoing or pending

17   state judicial proceeding.  Here it is clear and really

18   undisputed that there is an ongoing state disciplinary

19   proceeding triggering abstention of *Younger*.  For purposes of

20   the U.S. Supreme Court that has articulated the standards for

21   this abstention, a proceeding should be regarded, and I'm

22   quoting, as ongoing for the purposes of *Younger* abstention

23   until state appellate review is completed.

24           Closer to home in a case before another judge in

25   this district, in *Bieber v. South Carolina Commission on*

1    *Lawyer Conduct*, the district court stated, and I quote as he

2    was dismissing a similar case on abstention grounds, and I

3    quote, disciplinary proceedings begin with screening followed

4    by a preliminary investigation, full investigation, filing of

5    formal charges, discovery hearing, and a review by the South

6    Carolina Supreme Court.

7          Here Mr. Hawkins is an attorney licensed in South

8    Carolina.  Investigations of complaints received by the ODC

9    culminated with formal charges filed against Mr. Hawkins on

10   April 20th, 2021.  The complaints were about TV ads that had

11   been aired by Mr. Hawkins over some time.  As such, the

12   formal allegations or the formal charges alleged violations

13   of Section Rule 7.1 which regulates communications about

14   lawyer services and Rule 7.2, which regulates lawyer

15   advertising.

16         At the time, rather than responding to the formal

17   charges, according to the state proceedings, at that time the

18   lawyer who is subject to the formal charges has 30 days to

19   respond to the formal charges.  For various procedural

20   reasons, rather than to respond to the formal charges at that

21   time, plaintiffs brought this lawsuit on May 4th.  So with

22   that said, we had an ongoing state proceeding at the time

23   that this federal case was brought.

24         In this complaint here, Your Honor, plaintiffs also

25   allege that sections -- well, plaintiffs allege that sections

1   of the rules implicated by the disciplinary proceedings were

2   unconstitutional on their face and as applied to the

3   plaintiffs.  The plaintiffs, as you noted at the beginning of

4   this hearing, plaintiffs have asked this Court for both

5   declaratory and injunctive relief.

6           After the defendants filed the motion to dismiss on

7   October 11th, which is currently before the Court,

8   plaintiffs, or Mr. Hawkins, responded to the formal charges

9   in the disciplinary proceeding.  And the Commission received

10  it on November 11th, 2021.

11          Before I move on, I wanted to just note that so

12  according to the underlying proceedings, the state

13  disciplinary proceedings, at this time, with the formal

14  charges having been filed, a response filed by Mr. Hawkins,

15  the next step is a hearing before the Commission.  And it is

16  set to be held at some point this spring, I believe March of

17  2022.  And after that, according to the rules, once the

18  transcripts are compiled and the hearing is done and the

19  report is made by the Commission, it goes before the State

20  Supreme Court.

21          So for all of these reasons, I would say, before I

22  move on to step three to the *Younger* abstention doctrine, I

23  would say that Elements 1 and 2 have been met, both in

24  ongoing state judicial proceeding and there's an important

25  state interest implicated.

1    With respect to the third requirement under *Younger*

2    *v. Harris*, defendants submit that the Commission and the

3    South Carolina Supreme Court provide an adequate opportunity

4    for the federal constitutional claims raised here to be

5    applied or raised.

6    The U.S. Supreme Court, and I want to quote some of

7    the language from the U.S. Supreme Court on this issue, in

8    the *Younger* abstention context, the federal court should not

9    exert jurisdiction if the plaintiffs had an opportunity, I'm

10   quoting, had an opportunity to present their federal claims

11   in the state proceedings.  The pertinent issue, the Court

12   said, is whether plaintiff's constitutional claims could have

13   raised -- been raised in the pending state proceedings.

14   In the *Bieber* case in this district the district

15   court recognized that stating nothing in the disciplinary

16   rules bars plaintiff from raising his First Amendment

17   challenges to hold that the state proceedings are inadequate

18   for resolving federal claims would erode the well-established

19   presumption that state courts will safeguard federal

20   constitutional rights.

21   Here I also want to note, Your Honor, that it is the

22   plaintiffs' burden to show under *Younger* that there's no

23   adequate opportunity to raise the federal claims asserted

24   here in the state proceeding.  There has been no such

25   showing, I submit, and cannot be.  For one, as I noted

1    already, Rule 413 requires judicial review of the ongoing

2    state disciplinary matter.  Second, nothing in the state's

3    procedural laws prevents presenting federal claims in the

4    state forum.

5         And to that point, Your Honor, Mr. Hawkins has

6    already asserted constitutional challenges in his response to

7    the formal charges in the underlying state disciplinary

8    proceedings.  Like in the complaint before this Court, Mr.

9    Hawkins makes both facial and as-applied challenges to

10   portions of Rule 7.1 and 7.2.  And as I noted, the claims in

11   the disciplinary proceedings are rapidly moving towards a

12   hearing and ultimate review by the State Supreme Court.

13        THE COURT:  Does any -- you said that's coming up in

14   May?

15        MS. SVEDBERG:  The last we heard from our clients is

16   that in March or April --

17        THE COURT:  March or April?

18        MS. SVEDBERG:  -- there will be further proceedings

19   in the disciplinary action.

20        THE COURT:  Okay.

21        MS. SVEDBERG:  I think that they are fairly booked.

22   So they are trying to plug in hearing times for the

23   Commission as soon as possible.  And I believe that's as soon

24   as as March or April 2022.

25        THE COURT:  How do the proceedings themselves affect

1  this case at all other than the fact that they are occurring?

2          MS. SVEDBERG:  Well, that is our point of being

3  here.  We would say that having these proceedings go on at

4  the same time as the underlying proceedings --

5          THE COURT:  I understand that.  But there's no

6  outcome of the proceedings that affects this case.  It's just

7  the abstention doctrine argument with respect to the

8  proceedings?

9          MS. SVEDBERG:  Yes, Your Honor.

10          THE COURT:  Okay.

11          MS. SVEDBERG:  There's no procedural effect, Your

12  Honor, you are right.

13          If all three elements of *Younger v. Harris*

14  abstention have been met, as we submit they have been here, a

15  district court must abstain unless there are narrow

16  exceptions.  Those narrow exceptions is a showing by the

17  plaintiffs that there has been bad faith, harassment, or some

18  other extraordinary circumstance.  It is clear that *Younger*

19  *v. Harris* and cases that came after it state that the

20  exception is considered to be narrow and should be used

21  sparingly.  Here, looking at the allegations of the

22  complaint, it shows beyond any doubt, the defendants submit,

23  that this is not a case for the application of such a narrow

24  exception.

25          The closest plaintiffs get in their complaint is

1    that they allege that the rules have been interpreted in an

2    arbitrary and capricious manner that have led defendants to

3    selectively enforce the rules against plaintiffs.  We submit

4    that such an allegation, conclusory allegation, does not rise

5    to the level of bad faith or harassment.  I will mention too,

6    Your Honor, that some of the other extraordinary

7    circumstances have been found to be if a rule or a statute

8    challenged is flagrantly and patently unconstitutional with

9    respect to every word, every clause, and every sentence,

10   according to the U.S. Supreme Court.  So this is a high bar.

11            Here, I would say the opposite is true.  The

12   procedural posture of this underlying state disciplinary

13   proceeding as well as our actions here show that there has

14   been nothing but good faith on behalf of the defendants.  In

15   fact, throughout the months since this federal action was

16   filed, in an effort to work towards resolutions, one of the

17   portions of the formal charges was dismissed with prejudice.

18   These are all authorized under the state rules for the ODC to

19   try to work out a resolution with a lawyer who is subject to

20   the discipline or the subject to the charges or the

21   investigation.  And so as to avoid triggering the hearing

22   before the Commission, the ODC requested and the ODC for a

23   time granted the formal charges to be withdrawn without

24   prejudice, just for a time, so that the parties could have an

25   opportunity to resolve the case without it becoming a hearing

1    before the Commission triggering a resolution by the State

2    Supreme Court.

3        When it was clear that there was no resolution to be

4    had, those formal charges were reinstated, coinciding with

5    motion to dismiss and ultimate response by Mr. Hawkins in the

6    underlying proceedings.

7        I also would submit the fact there has been no

8    delay, the fact that the defendants have moved rapidly to try

9    to bring to a resolution the state disciplinary matter is

10   another factor that shows that there's no bad faith, in fact,

11   good faith in the underlying proceedings.  For that reason I

12   would say that there's no exception that applies.  And we

13   submit that the *Younger v. Harris* abstention applies here,

14   and the case must be dismissed with prejudice.

15       If I may, before I conclude, there are some

16   questions that I anticipate might arise based on the response

17   by the plaintiffs and some other arguments made before this

18   Court, and if I may, I might address those here to perhaps

19   answer some questions.

20       THE COURT:  Okay.

21       MS. SVEDBERG:  In the response to the motion to

22   dismiss, the plaintiffs suggest that *Younger* does not apply

23   to HawkLaw, PA.  They say that for purposes of HawkLaw, PA,

24   there's no ongoing state judicial proceeding because the

25   judicial proceedings or the formal charges are levied against

1    Mr. Hawkins.  I wanted to submit to the Court that that's not

2    an accurate conclusion based on the law and on the facts of

3    this case.  To the contrary, there's actually a long line of

4    cases that say that when a nonparty, like HawkLaw, PA, to the

5    state proceedings, does, in fact, fall under the abstention

6    doctrine when their claims are entirely derivative of the

7    claims brought by the party before the state proceedings.

8         Other terms used by not just courts in this district

9    but throughout the jurisdictions have been if there's a close

10   nexus between the nonparty and the party to the state

11   proceedings or if their rights and claims are inextricably

12   intertwined.  In fact, most of the cases, Your Honor, that

13   have been decided have been parties that are much father

14   apart and they still have come down on *Younger* abstention

15   applying.

16        Here we have Mr. Hawkins who is the lawyer in

17   HawkLaw, PA, ownership, finances, everything is combined,

18   although we do know that, of course, HawkLaw, PA is an

19   organization existing independent of Mr. Hawkins, they are so

20   close in nexus, they are inextricably intertwined.  And

21   HawkLaw, PA indisputably is raising claims that are entirely

22   derivative of the claims brought before Mr. Hawkins.

23        And I will note too, Your Honor, that if we look at

24   the complaint brought by the plaintiffs here, taking as true

25   for the purpose of this motion, in that complaint, it says

1  that plaintiffs, plural, are being investigated, are subject

2  to this discipline of the formal charges in the underlying

3  proceedings.

4  I would also like to mention that the plaintiffs

5  suggest that *Younger* abstention is inapplicable to the

6  portion of Rule 7.1 that was dismissed with prejudice in the

7  state disciplinary proceedings.  The defendants submit that's

8  not an accurate statement of the test under *Younger*.  There's

9  nothing in the case law following -- there's nothing in

10  *Younger* and nothing in the case law following *Younger* that

11  states or that claims that the federal constitutional claims

12  should be parsed that way.  It has the three tests.  Is there

13  an ongoing state proceeding?  Was there an adequate

14  opportunity for those federal constitutional claims to have

15  been raised there?  And we submit that there was.

16  Finally, Your Honor, I would be remiss if I did not

17  mention and correct some statements made during the December

18  9th telephonic hearing before the Court.  In that hearing,

19  when asked -- when both sides were asked the grounds for --

20  briefly asked the grounds for why this case should be or

21  should not be before this Court, and opposing parties

22  suggested that the reason this case should not be before this

23  Court is because of the bias of the State Supreme Court.  I'm

24  paraphrasing here, although I do have the transcript.

25  I would say that basically the argument was that

1    because the State Supreme Court implements the rules that are

2    at issue.  They cannot rule on the constitutionality of it.

3    And I am constrained to submit to the Court that there is no

4    such bias.  And also allegations of bias without any proof

5    should be rejected.  And I would also note that it's

6    well-established that there's a presumption of honesty and

7    integrity of the judiciary.  And to suggest that there's an

8    inability of the Court to adjudicate is a very high bar.  And

9    that is not present here, Your Honor.

10        I also would note that as I'm sure the Court is

11   aware, Rules of Professional Conduct are implemented and

12   amended over the course of many years.  The makeup of the

13   court changes.  And also, so if we bring it to its logical

14   conclusion, we don't know who necessarily drafted or

15   implemented something way back versus who is looking at it

16   now in terms of the justices of the State Supreme Court.  I

17   don't think that's a necessary analysis because I think that

18   we can assume here that the State Supreme Court is perfectly

19   capable to adjudicate the constitutionality of claims, of

20   rules under here.

21        I would like to conclude that the defendants contend

22   that all of the elements of a *Younger* abstention test have

23   been met.  We would like for this Court to dismiss this case

24   with prejudice and allow the administrative proceedings and

25   their judicial review contemplated by the State Supreme Court

1    and their rules implemented thereunder to proceed without

2    interference.

3            THE COURT:  Just a couple of questions.  You argued

4    that plaintiffs do not have standing to challenge the rule of

5    professional conduct 7.1E because the related disciplinary

6    procedures have been dismissed with prejudice.

7            MS. SVEDBERG:  Right.

8            THE COURT:  Do you still stand by that?  Because

9    their injury is not the actual discipline based on the rules

10   but the threat of discipline resulted in chilled speech.

11           MS. SVEDBERG:  Okay.  So I'm going to try to answer

12   the question.  So the abstention analysis operates

13   independent of a standing analysis.  If we look at standing,

14   the same principles of standing apply in this court and in an

15   underlying court.

16           Here, if I jump to and just address briefly the fact

17   that we have also moved to dismiss alternatively under Rule

18   12(b)(1) because certain portions before this Court lack

19   standing, we would say that -- well, for one, we would argue

20   that Rule 7.1E, Mr. Hawkins or HawkLaw, PA do not have

21   standing as applied as a third-party facial-- we would --

22   because for one, that has been dismissed with prejudice;

23   second, we would suggest that the plaintiffs here when

24   arguing -- which is their burden to prove -- when they argue

25   standing, they have not argued that there's an overbreadth of

1    the rules.  They have argued chill.

2           So, Your Honor, I would submit when it comes to Rule

3    7.1E, there's probably -- basically every lawyer in this room

4    suffer from more of a chill than Mr. Hawkins and his law

5    firm, because the actual tradenames at issue for Mr. Hawkins

6    and HawkLaw, PA have been dismissed by prejudice.  It's not

7    likely that those are going to come up again.

8           THE COURT:  Okay.

9           MS. SVEDBERG:  And the 7.1E, Your Honor, is trade

10   name moniker, issues of tradenames and whether they

11   impermissibly imply an ability to obtain results.

12          THE COURT:  Okay.  Thank you.

13          MS. SVEDBERG:  Your Honor, unless you have any other

14   questions --

15          THE COURT:  I don't.

16          MS. SVEDBERG:  -- I'm going to yield the floor.  I

17   submit --

18          THE COURT:  And you will have a chance to reply to

19   them too.

20          MS. SVEDBERG:  Thank you, Your Honor.

21          THE COURT:  All right.

22          MR. DODSON:  Your Honor, if I may, I would like to

23   use the same podium, because I agree with my colleague, I

24   kind of like the way that this is kind of tilted back a

25   little bit.  As I get older, I can't see.  So this is going

1    to help me see my notes.

2          Your Honor, before addressing the specific arguments

3    on abstention and standing, I would like to point out an

4    overriding flaw in defendant's arguments here.  And it's

5    this, their arguments set up this impermissible Catch-22 that

6    is really contrary to well-established be case law.  It's

7    contrary to common sense, and it's really contrary to just

8    general motions of fair play.

9          The Catch-22 is essentially a heads we win/tails you

10   lose proposition.  And this is why.  The heads we win is if

11   we wait and we file our federal action, our federal

12   complaint, after there's an investigation or after there are

13   formal charges filed, then they say this case has to be

14   dismissed on *Younger* abstention grounds.  The tails we lose

15   proposition is on the standing, because if we wait and if we

16   file our action before there are formal charges, or if our

17   complaint comes after the charges are all resolved, the

18   investigations are all resolved, then they say and they argue

19   and they wrote to the Court, there's not an injury in fact,

20   there's not a case in controversy, so you don't have

21   standing.

22          And then they go a step farther.  I didn't hear it

23   here this morning.  But then they say, well, in the

24   alternative, the Court should just not hear the whole case

25   all together, just make a discretionary ruling that you are

1    not going to hear the case, Your Honor.  So there's

2    essentially this impenetrable maze that they've tried to

3    create here.

4         And as I will demonstrate in a moment, both the

5    defendants' arguments are flawed and wrong because the

6    limited abstention exception to general jurisdiction does not

7    apply here.  And the plaintiffs clearly have standing to

8    bring this action.  And I would like to actually begin my

9    arguments and spending a few minutes on the standing issues

10   directly.

11        At the outset, let me note just how implausible

12   their argument on standing is to begin with.  Because their

13   argument boils down to a couple of things.  It boils down to

14   a lawyer and his law firm don't have standing under the First

15   Amendment to bring challenges to the Bar's rules on what

16   would otherwise be protected commercial speech.

17        And then going along with that, they make the very

18   implausible argument that once those rules are actually

19   enforced against the same lawyer and law firm, that he

20   doesn't have standing to make as-applied challenges.  And so

21   I would direct the Court to the defendant's own brief on

22   this.  Because in their brief, they don't cite one case to

23   this Court.  There are a bunch of lawyer advertising cases

24   out there that have gone all the way to the Supreme Court.

25   And these same standing arguments have been made time and

1    time again.  And they don't cite this Court with a single

2    case where these standing arguments that they made in their

3    briefs and that they argued here this morning were accepted.

4         Now take a look at our brief.  We cited this Court

5    with multiple examples both from different circuit courts --

6         THE COURT:  Just to stop you there for a second.  I

7    don't hear the defendants really pushing a standing argument.

8    I hear them pushing abstention.

9         MR. DODSON:  If they are abandoning their standing

10   argument, I will jump straight into the abstention.  But I

11   thought I heard them saying they were essentially going back

12   to the --

13        THE COURT:  I think kind of more in response to my

14   question about the standing, but I think their true argument

15   is on abstention.  Obviously, I will have to make a standing

16   finding, but I think their issue is abstention.

17        MR. DODSON:   Yes, Your Honor.  Let me move on then.

18   Thank you.

19        Turning to the abstention doctrine, the abstention

20   doctrine is a very narrow exception to federal court

21   jurisdiction.  To quote from the Supreme Court, our dominant

22   instruction is that even in the presence of parallel state

23   proceedings, abstention from the exercise of federal

24   jurisdiction is the exception, not the rule.  That comes out

25   of the Sprint Communication case that I cited multiple times

1    in our brief.  The Sprint court went further.  Abstention is

2    not in order assembly because a pending state-court

3    proceeding involves the same subject matter.  Direct quote

4    from the Supreme Court.

5         Well, that's exactly what you have now.  You have a

6    state-court proceeding involving a similar subject matter.

7    But Sprint teaches that does not mean abstention necessarily

8    applies.  And it doesn't apply here because a number of the

9    majority of plaintiff's complaint in this action is not

10   subject to the state-court proceeding.  Let me start with

11   HawkLaw, PA.  HawkLaw, PA is not a party to the state-court

12   proceeding.  It has never been a party to the state-court

13   proceeding.

14        By the very nature of the abstention doctrine, that

15   being that a federal court should not interfere in pending

16   state-court matter.  The doctrine simply cannot apply because

17   there is not and never has been an action against HawkLaw, PA

18   in the state-court system.  To be clear, all of HawkLaw's

19   claims fall squarely outside this *Younger* abstention

20   exception to jurisdiction.

21        Abstention could not apply to other parts of

22   plaintiff's complaint relating to John Hawkins individually

23   for the same reason.  Parts of his individual claims fall

24   outside the state-court proceedings.  In other words, there

25   is not a state-court proceedings.

1          So let me start with the phrase "expect more."  Back

2    in 2014, there was an anonymous complaint to the Bar saying

3    John Hawkins is violating the Rules of Professional Conduct

4    by using the phrase "expect more."  That was concluded in

5    2015 or '16 with a letter of caution, a letter of caution

6    being exactly what it sounds like:  Do it again, you are

7    cautioned, you are warned, do it again and you are in

8    trouble.  That ended the proceedings.

9          Now, with that case, there weren't even formal

10   charges.  There was simply the investigation.  And under the

11   rules, ODC can simply issue a letter of caution without

12   having to go through the Commission of Lawyer Conduct, which

13   is exactly what happened here.  And I think under that, those

14   circumstances, the Supreme Court on a letter of caution like

15   that doesn't even review anything.  All of that is not real

16   important here today.

17         What's important here today is this.  That matter

18   was resolved.  That matter was concluded.  But John Hawkins

19   and HawkLaw, PA are not using that phrase "expect more"

20   anymore in their advertising because of that letter of

21   caution.  That falls outside the *Younger* abstention doctrine.

22         Your Honor, a similar thing is true as to the facial

23   challenges in Rule 7.1E, E as in echo, which is the nickname

24   or moniker rule.  All of the charges against John Hawkins

25   were dismissed.  Those formal charges are done.  So that part

1    of the complaint is simply untouched by the abstention

2    doctrine.

3           Now, all of the facial challenges are untouched --

4    the other facial challenges, because there were two other

5    rules that we made challenges to, there was Rule 7.1C,

6    Charlie, and 7.2A, apple, that we challenged too.  Those

7    facial challenges, where we have said those rules on their

8    face are unconstitutional, those challenges also don't fall

9    under the abstention doctrine.  And there's really kind of

10   two reasons for this.  One is a procedural reason and the

11   other is a more substantive reason.

12          The procedural reason is this.  ODC and the

13   Commission on Lawyer Conduct -- ODC is the entity that brings

14   the formal charges and said you've done wrong and we are

15   prosecuting you.  They are essentially the prosecutor's

16   office.  The Commission on Lawyer Conduct is essentially the

17   trial court.  The Commission on Lawyer Conduct under the

18   rules that created it -- don't take my word for it.  It's the

19   South Carolina appellate rules 413.  But under those rules,

20   the Commission on Lawyer Conduct is not vested with the power

21   or authority to make declarations that the Rules of

22   Professional Conduct are unconstitutional.  It simply can't

23   do that under the rules that the South Carolina Supreme Court

24   wrote and drafted to implement the Rules of Professional

25   Conduct.  And when you think about it, how could it?  Because

1    as defense counsel has pointed out, ultimately, decisions

2    that come out of the Commission on Lawyer Conduct go directly

3    to the South Carolina Supreme Court.  And it's the South

4    Carolina Supreme Court that drafted these three rules that

5    we've challenged.  And, obviously, the South Carolina Supreme

6    Court can't be the arbitrator regarding the constitutionality

7    of the very rules that it drafted.

8         And this leads me kind of directly back into the

9    Spirit Communications case and the Fourth Circuit law.  We

10   know from the *Nivens v. Gilchrist* Fourth Circuit case that

11   for abstention to apply, there has to be -- and I'm

12   quoting -- ongoing state judicial proceeding that provides an

13   adequate opportunity to raise constitutional challenges.  And

14   we know from the teachings in the Sprint case that these are

15   additional factors the Court should consider in these

16   abstention argument motions.

17        But here, what defense counsel is asking you to do

18   is to decline jurisdiction and allow the South Carolina

19   Supreme Court to be the final arbiter on the

20   constitutionality of the very rules that it drafted, wrote

21   and implemented.  And it's not a matter of bias.  It's not a

22   matter of me thinking that the numbers of the Supreme Court

23   have some sort of nefarious purpose.  It's a simple

24   principle.  Our Supreme Court would have never passed rules

25   to begin with that it thought were unconstitutional.  And

1    maybe Your Honor hears those claims.  And maybe Your Honor

2    agrees that I'm wrong and they are right and the rules on

3    their face are constitutional.  That may well be.  God knows,

4    in my 23 years of practicing law, I've had so many judges

5    tell me I'm wrong on the merits of my argument, that you may

6    come to that conclusion too.  But that's my point, Your

7    Honor, is that there ought to be an independent review of

8    this.

9         And I want to address the arguments that were raised

10   in the brief here this morning and that were -- or were

11   raised in the briefs and then addressed here -- that if we

12   don't like what the South Carolina Supreme Court does with

13   it, well, we can just appeal that to the U.S. Supreme Court.

14   We can just petition for certiori to the U.S. Supreme Court.

15   And I am not going to make any bones about it.  That argument

16   is weak, it's hollow, and it is meritless.  And this is why.

17   Because less than 1 percent of petitions for writ of certiori

18   to the Supreme Court are actually granted and heard.  That is

19   not meaningful judicial review.  That is putting your law

20   license on the line on a wing and a prayer that your petition

21   for writ of certiori will be heard.

22         And I also want to clarify something else.

23   Certainly, the South Carolina Supreme Court can hear

24   as-applied challenges.  They have done that before.  Defense

25   counsel is quite correct when they point to cases where the

1    South Carolina Supreme Court has said -- you know,

2    essentially ruled against ODC, Office of Disciplinary

3    Counsel, and said, no, we are not going to do this because

4    there are First Amendment constitutional issues here.  But

5    those have all been not on facial challenges, but on

6    as-applied challenges.

7         And what I've been going on here about for several

8    minutes now isn't necessarily the as-applied but the facial

9    challenges that we have made to Rule 7.1C, 7.1E and 7.2A.  So

10   when you follow the holdings of the *Sprint* court, the only

11   parts of the complaint that could possibly be touched by this

12   abstention doctrine are the as-applied challenges where there

13   are two pending charges over at the Commission on Lawyer

14   Conduct that we do expect will be heard in the spring.  Let's

15   just call it April-ish because maybe it's May.  You know how

16   that goes.  So we will just call it April-ish.  But those are

17   the only parts that could possibly fall under this abstention

18   doctrine.

19        But the reasons that this Court shouldn't dismiss

20   those claims is this.  In essence, the defendants have

21   stalled and delayed in bringing this motion to the Court.

22   Because there is appellate case law that I cited in my brief,

23   including U.S. Supreme Court case law, that holds once this

24   case, once this federal action goes beyond its embryonic

25   stage, abstention is no longer appropriate.  And that

1    embryonic stage language is straight from the U.S. Supreme

2    Court's case *Doran v. Salem Inn*, which I cited in my brief.

3            And it was the defendants that let this case go

4    beyond its embryonic stage.  I mean, they litigated this

5    case.  They participated in crafting a discovery plan.  They

6    asked the Court to modify and change the original scheduling

7    order.  They asked and answered discovery.  They filed and

8    responded to motions to compel.  And, really, that's

9    exactly -- that's exactly why we are here today, because they

10   don't like the way I litigate.  And when I pushed them --

11   from day one on this case, I have been asking them for that

12   Law Tigers secret settlement from the *Kirkendall* case that

13   was before Your Honor a few years ago.  And recognizing you

14   didn't have a lot of involvement.  It was kind of filed.  It

15   was settled under secret terms, or we believe it was settled

16   under secret terms with no court intervention at all.  And

17   when I started saying, you, governmental agency, give me the

18   secret settlement that allows a truck to be driving around

19   with a car wrap with a big tiger that says Law Tigers on it

20   that has a South Carolina tag on it and is garaged up in

21   northeast Columbia, and I want the secret settlement, because

22   if you are going to tell me that John Hawkins can't use the

23   hawk, John Hawkins can't have hawk screeches on his ads, John

24   Hawkins can't have paid actors flapping their wings like a

25   hawk, then I want the secret settlement that would

1    purportedly show why an outside law firm can have tigers

2    plastered all over it in sort of the name image and likeness

3    of tigers.

4         And in response to that motion to compel, this

5    pending motion was what was filed.  They didn't even respond

6    to the motion to compel until several months after I filed it

7    or, well, a couple -- several months -- several weeks, it

8    wasn't several months.  That's an overstatement.  They just

9    filed this motion to dismiss.  What they are doing, Your

10   Honor, is they are venue shopping.

11        They were more than happy to be in this court to

12   begin with because when we filed the initial action, I

13   reached out to defense counsel and I said, I'm likely to file

14   a motion for preliminary injunction, why don't you just stay

15   the proceedings in the state court action, let's resolve this

16   federal court action first, and then we can go back and

17   litigate all of that.  They agreed to that.  They actually

18   filed -- we filed documents over at the Commission on Lawyer

19   Conduct that dismissed without prejudice all of the formal

20   charges and proceeded with litigating this case.

21        But then I started turning the heat up in the

22   kitchen on the Law Tigers and other discovery issues.  And

23   that's when the current motion to dismiss got filed.  So our

24   argument is that they are the ones responsible for this case

25   going beyond its embryonic stages of development and using

1   this motion to dismiss essentially as a venue in forum

2   shopping matter.

3           THE COURT:  Let me do this.  I've got a call with a

4   judge.  So let's just take about a 10- to 15-minute break and

5   then we will come back.

6           MR. DODSON:  Thank you, Your Honor.

7           (Whereupon, recess transpired.)

8           THE COURT:  You can continue.

9           MR. DODSON:  Thank you, Your Honor.  I brought Mr.

10  Virzi.  He was supposed to bring a hook with him, but the

11  marshals wouldn't let him in with the hook to pull me back.

12          THE COURT:  Okay.  That's fine.

13          MR. DODSON:  He told me when we met that I needed to

14  be brief.

15          THE COURT:  No. No. No.  It was okay.  Every once in

16  a while, you got an appointment of some sort.  And I didn't

17  want to mess up someone's schedule.  So I took a call real

18  quick.

19          MR. DODSON:  I only have four very quick points to

20  make.  One I wanted to correct something that I said before,

21  because when I was talking about staying the state court

22  action, I think I incorrectly kind of described how that came

23  about.  How it came about is I indicated that I was going to

24  move for a preliminary injunction and would they consent to

25  the preliminary injunction.  And the response was

1    essentially, no, you need to go to the state court action,

2    and if you move to have that stayed in the state court

3    action, we won't oppose that.  So that's what we did.  It

4    wasn't -- and they did consent to the stay in the state court

5    action.  And the charges in the state court action were

6    dismissed without prejudice.  Just to clarify, because I

7    don't want to be accused of misrepresenting anything to the

8    Court on how that transpired.

9            THE COURT:  Sure.

10           MR. DODSON:  Another point that I wanted to make was

11   this, because I told you earlier, there were sort of two

12   components to this argument that the facial challenges

13   shouldn't be dismissed.  There was the procedural and then

14   there was the substantive.  And I don't know that I was as

15   clear as I would like to be on that.  So I wanted to clarify

16   that.

17           THE COURT:  Okay.

18           MR. DODSON:  It is procedurally impossible for the

19   Commission on Lawyer Conduct to invalidate rules facially.

20   Just that's not in the rules.

21           But, second, even if that were procedurally

22   possible, that goes to the South Carolina Supreme Court.  And

23   this is where I get into the substantive part of it.  The law

24   is that that has to provide an adequate opportunity to raise

25   constitutional challenges.  And my position on that, just to

1    be clear, is that that has to mean more than you can petition

2    the U.S. Supreme Court for a writ of certiorari that probably

3    won't be granted.  That language is important language in

4    that case law.  And my position is that means that a federal

5    court should decide issues of federal constitutional law, not

6    just hear those in its discretion, which is what essentially

7    you are doing when you petition the U.S. Supreme Court for

8    certiorari.

9         The third thing I wanted to do is, they, in their

10   brief and then again here today, they've talked fairly

11   extensively about this unpublished district court opinion

12   from several years ago.  I think it was *Bieber*.  It's in

13   their brief.  They pound on that drum pretty hard in their

14   brief and here today.  There's really three primary reasons

15   that case is different than what is before you now.  First,

16   you know, you can see this from the filings, there were no

17   facial challenges to the rules themselves in that case, none.

18   It was only as-applied challenges.  And that's an important

19   distinction for the reasons that we've discussed today.

20        Another distinction is this.  That case was decided

21   pre-*Sprint* case, which was the *Sprint* case was decided by the

22   U.S. Supreme Court in 2013.  And the reason that that's

23   important is that *Sprint* case really pretty fundamentally

24   challenged the landscapes with the breadth and scope of this

25   *Younger* abstention.  You know, when you read kind of all

1    these cases, you read *Younger* and then you read the *Middlesex*

2    case, and you read sort of these lines of cases, what really

3    happened is you sort of started to see circuit courts and

4    district courts pushing and pulling and kind of expanding the

5    use of this *Younger* abstention.

6         And then in 1989, the Supreme Court, you know,

7    issued an opinion in New Orleans.  I think it was New Orleans

8    Public Service, Inc.  And they had some pretty strong

9    language in that 1999 case.  But it's like that language kind

10   of didn't get picked up a whole a lot by the circuit courts

11   and district courts.

12        So then in 2013, when the *Sprint* case came out, I

13   mean, they used really strong language in that *Sprint* case

14   that I quoted some of that language, sort of tightening up

15   and reining in the overuse of this *Young* abstention doctrine.

16   So that district court case -- I think it was Judge Herlong's

17   case, but I maybe mistaken on that -- that was pre-*Sprint*.

18   So that's sort of the second distinguishing factor.

19        And the third is this, if you look at the filings in

20   that case, right out of the gate in that case, the defendants

21   filed a motion to dismiss.  There was no discovery.  There

22   was no this.  It was in response to the complaint they filed

23   a motion to dismiss.  And there wasn't -- the case had not

24   gone beyond any embryonic stage in develop.  There hadn't

25   been participation in discovery and all that there has here.

1    And then the final sort of -- the final point that I

2 will make here, and then I will shut my pie hole and sit

3 down, is this, if you do dismiss the parts of the case that

4 deal where the Commission on Lawyer Conduct was hearing that

5 part of the complaint, which is those two formal charges,

6 because that's really, I think, what we are talking about

7 here today, if you do dismiss those two -- and we don't think

8 you should, but if you do, any dismissal should be without

9 prejudice, because the Court wouldn't have reached the merits

10 of the case.  It shouldn't be with prejudice.  And I think

11 that's a pretty obvious point to make.

12    Thank you, Your Honor.  Unless you have any

13 questions, I will sit down now.  Thank you for your time this

14 morning.

15    THE COURT:  Thank you very much.  Okay.  Reply?

16    MS. SVEDBERG:  May I offer a brief reply, please.

17 Let me get my ducks in a row here for a second.  Thank you.

18    Your Honor, I think that we have addressed some of

19 the issues raised by opposing parties in our brief.

20    THE COURT:  Sure.

21    MS. SVEDBERG:  I wanted to make a few points.  It

22 seems that they insist on conflating the standing and

23 abstention doctrine principles.  And I think we set that out

24 in the brief.

25    And also, in terms of the argument that state

1    judiciaries should not be allowed to hear federal law

2    challenges, just stands the whole principle of federalism and

3    comity on its head.  And I submit that that is not something

4    that should happen.

5         Specifically, I have to point out that the *Sprint*

6    *Communications* case does not stand for the proposition that

7    *Younger* abstention is a narrow exception to jurisdiction.

8    *Sprint Communications* and the discussion therein -- and I'm

9    sure that the Court already has cites to this, but I'm happy

10   to provide it.  *Sprint Communications* stands for the

11   proposition that there are certain state-court proceedings,

12   certain categories of state-court proceedings that are not

13   appropriate for *Younger* abstention.  It does not stand for

14   the proposition that within the categories of state-court

15   proceedings that fall within that *Younger* abstention

16   doctrine, that there should be a narrow use of that

17   abstention.

18        If we look at what -- how the case law evolved and

19   how the doctrine evolved, it started with criminal

20   proceedings.  And then the U.S. Supreme Court has stated that

21   there are certain state-court proceedings other than criminal

22   proceedings, civil proceedings, that are coercive, judicial

23   in nature, so as to extend the *Younger* abstention to such.

24   It is absolutely undisputed that legal disciplinary actions

25   fall under the *Younger* abstention.  That is not in question

1    here.  So it is an incorrect argument to submit that *Sprint*

2    *Communications* somehow or another reins in the application of

3    this extension.

4         *Sprint* does not fall under *Younger* because it was a

5    rate-making issue.  It was whether charges -- interstate

6    charges for telecommunication company and the regulation

7    thereof was a type of civil state proceeding that would fall

8    under these categories that had evolved from *Younger v.*

9    *Harris*.

10         So in that regard, any argument or any suggestions

11   that *Sprint*, as opposing party has suggested here today and

12   in the brief, somehow or the other reins this in is

13   inaccurate.  In fact, a quote from another case that opposing

14   party has cited *Doran v. Salem Inn*, we hold the principle

15   underlying *Younger* is that state courts are fully competent

16   to adjudicate constitutional claims.  And, therefore, a

17   federal court should in all but the most exceptional

18   circumstances refuse to interfere with an ongoing state

19   criminal proceeding.  As we know, it has since evolved to

20   include other proceedings.

21         In the absence of such proceeding, however, we

22   recognize plaintiff may challenge -- in the absence of such

23   proceeding, of course, a plaintiff may challenge it here.

24         There are a few more things to unpack.  Opposing

25   party makes the argument that HawkLaw, PA is not subject to

1    the ongoing state proceedings.  Again, I have submitted that

2    there's a whole line of cases that submit that when a

3    nonparty to the state proceedings claims are entirely

4    derivative of the state party, then *Younger* abstention

5    applies equally.

6          And I have a citation, if you want it.  I also made

7    some copies.  I have one case from the 6th Circuit Court of

8    Appeals.  And the reason I bring that one up is because it

9    actually has a really instructive discussion.

10          THE COURT:  Just go ahead and cite it into the

11    record.

12          MS. SVEDBERG:  Yes, Your Honor.  It's *Citizens for

13    Strong Ohio v. Marsh*, 123 Federal Apx, 630.  And that's from

14    2005.  And I'm happy to hand one up.

15          THE COURT:  Sure.  That's fine.

16          MS. SVEDBERG:  There's also cases in this district

17    that have addressed the exact same issue, where they haven't

18    used necessarily the entirely derivative language, but close

19    nexus.

20          In terms of the argument that expect more, again, I

21    submit that I believe the opposing party is somehow or the

22    other conflating the standing principles with the abstention

23    principles.  The fact that nothing has occurred and they

24    expect more advertisement mentioned is really irrelevant

25    here, because the rule implicated by that is Rule 7.1C.  And

1    in fact, Rule 7.1C is implicated in the formal charges.  And

2    to that point, in the response -- and I have to note, Your

3    Honor, that 30 days, under the rules, state rules, 30 days

4    after either a response has been filed to the formal charges

5    or the deadline -- 30 days after the deadline to accept a

6    response, these matters become public record.  So I would

7    like perhaps for the Court to take judicial notice of that.

8         In the response to the formal charges -- this

9    addresses a lot of points made by opposing party -- Mr.

10   Hawkins makes both as-applied and facial challenges to

11   sections of Rule 7.1 and 7.2.  And also, sort of along the

12   lines of the argument with respect to *Sprint*

13   *Telecommunication* being a case outside of this, their

14   argument that somehow or the other facial challenges cannot

15   be brought before the state judiciary are just not right.

16   They are not correct.

17        It might be that in certain administrative

18   proceedings, whether it's the Public Service Commission or

19   other rate-making authorities in this state and other states,

20   where there might not be procedural rules or other to allow

21   for certain constitutional challenges.  That's just not the

22   case here.  It is absolutely clear that Mr. Hawkins can make

23   both applied and facial challenges.  And he has.  And those

24   will be subject to review by the State Supreme Court, by

25   their state rules they are required.  And, of course, that

1    can also be petitioned to the U.S. Supreme Court.

2    I also will submit in that regard that the fact that

3    the ODC or the Commission cannot on their own overturn or

4    deem unconstitutional a state rule, that is not the test

5    under *Younger*. Adequate opportunity means there is judicial

6    review. And that is also plainly clear from the case law.

7    So the fact that post-hearing -- I mean, here in this case,

8    Mr. Hawkins has asserted facial and as-applied. So

9    post-hearing of the formal charges of the Commission, it goes

10   before the State Supreme Court.

11   I will try to be brief. I wanted to point out too

12   that there's a suggestion of bias by the State Supreme Court

13   that keeps getting floated. And I have to object. There's

14   no evidence of such a thing. And on behalf of my clients, I

15   would submit that such allegations need to be just rejected.

16   In terms of abstention, to the extent that you look

17   at bias as an exception to the *Younger* abstention, that's a

18   tough road to try to argue. The one case that I know where

19   the Supreme Court has found such bias so that to make the

20   abstention not apply, it was not in a legal disciplinary

21   proceeding case, not one that goes before a state Supreme

22   Court like here. It was a board of optometrists in *Gibson v.*

23   *Berryhill*, where the board of optometrists who were all in

24   private practice, who were in charge of revoking the licenses

25   of other optometrists, basically they all had a financial

1    stake in the outcome of those proceedings.  And in that case

2    from long ago, the U.S. Supreme Court said that perhaps

3    there's a bias here.

4         I also wanted to finally address the issue of delay.

5    I have already -- we have already set out in the briefs that

6    the term "embryonic stage" is misapplied here.  It is a set

7    of cases that apply or were decided only when the state court

8    action was filed after the federal court action.  In fact,

9    the embryonic stage cases and the ones that followed *Doran*

10   and *Miranda v. Hicks*, this issue is a way to actually still

11   apply to *Younger* abstention.

12        What they said is, all right, so you file your state

13   proceeding and it's pending and in the federal court action,

14   okay, fine, first test met.  But in the case where perhaps a

15   federal action is filed first, they will still apply the

16   *Younger* abstention as long as the state court action has been

17   subsequently filed before it's outside of embryonic stage.

18   So I would say, again, that is just misapplication of that

19   case.

20        And I also will say finally that Rule 12(c)

21   contemplates a motion to dismiss, motion for judgment on the

22   pleadings, just like the one we have here.  This case was

23   filed on May 4th.  We filed our motion to dismiss.  And under

24   Rule 12(c), well, as I'm sure the attorneys here and everyone

25   else is aware, sometimes you have to research the case law,

1   look at the facts, so you are not prepared to write a rule or

2   file a Rule 12(b)(6) immediately, so you answer.  And in our

3   case, we were working in the underlying proceedings trying to

4   resolve that case.  We took some actions.  We dismissed

5   something.  We temporarily withdrew without prejudice so that

6   we could avoid a hearing, again, towards moving -- finding a

7   resolution on the underlying state matter.  But when it

8   became clear that there was no resolution, and based on our

9   research, development of the facts, it became obvious to us

10  that we needed to move.  So we did.

11          Rule 12(c) contemplates that you can rule -- move

12  for judgment on the pleadings after you answer as long as you

13  are not doing it in a way that delays trial.  And we are not

14  there today.  So with that, I'm finished.  Thank you.

15          THE COURT:  Thank you all.

16          MR. DODSON:  Thank you, Your Honor.

17          THE COURT:  All right.  We will get you an order.

18  Great to see everyone.

19          (Whereupon, proceedings are adjourned.)

20

21

22

23

24

25

1        CERTIFICATE OF REPORTER

2

3        I, Karen V. Andersen, Registered Merit Reporter,

4    Certified Realtime Reporter for the State of South Carolina

5    at Large, do hereby certify that the foregoing transcript is

6    a true, accurate and complete Transcript of Record of the

7    proceedings.

8        I further certify that I am neither related to nor

9    counsel for any party to the cause pending or interested in

10    the events thereof.

11

12

13

14

15    Karen V. Andersen
      Registered Merit Reporter
16    Certified Realtime Reporter

17

18

19

20

21

22

23

24

25